**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO.** |
| **DR. MARTHA STORRIE,** | § § | **4:17-CV-614-ALM** |
| **Intervenor,** | § § § | |
| **v.** | § § | |
| **DENTON COUNTY,** | § § | |
| **Defendant.** | § § § | |

<u>**EEOC'S MOTION FOR SUMMARY JUDGMENT**</u>
<u>**AND BRIEF IN SUPPORT THEREOF**</u>

Respectfully submitted,

JAMES LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

<u>/s/Suzanne M. Anderson</u>
SUZANNE M. ANDERSON
Supervisory Trial Attorney
Texas Bar No. 14009470

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, Texas 75202
Tel No. (214) 253-2743
Fax No. (214) 253-2749

## TABLE OF CONTENTS

I.      LEGAL STANDARD ..............................................................................................1

II. STATEMENT OF THE ISSUES ..................................................................................2

III. STATEMENT OF UNDISPUTED FACTS ...................................................................2

IV.     EEOC IS ENTITLED TO SUMMARY JUDGMENT ON ITS EQUAL PAY ACT
        CLAIMS BROUGHT ON BEHALF OF DR. STORRIE ......................................7

        A.  EEOC CAN PROVE A *PRIMA FACIE* CLAIM ..............................................7

        B.  DEFENDANT IS NOT ENTITLED TO AN EXCEPTION
            UNDER THE ACT .....................................................................................9

V.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE
        DEFENDANT'S AFFIRMATIVE DEFENSES IN
        PARAGRAPHS II AND III OF ITS ANSWER....................................................17

        A.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
                PARAGRAPH II, 1 and 3: .......................................................................17

        B.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
                PARAGRAPH II, 7 .................................................................................18

        C.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON
                PARAGRAPH III DEFENSE OF UNCLEAN HANDS ..........................19

# TABLE OF AUTHORITIES
## FEDERAL CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986) ............................................................. 1

*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) ..................................................................... 18

*Belfi v. Prendergast*, 191 F.3d 129, 135 (2d. Cir. 1999) ........................................................ 8

*Brinkley-Obu v. Hughes Training Inc.,* 36 F.3d 336, 344 (4th Cir. 1994) ................................ 10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................................ 2

*Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) ..................................................... 8, 9

*Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) .......................................... 7, 9, 17

*County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) ...................... 19

*E.E.O.C. v. Prod. Fabricators, Inc.,* 873 F. Supp. 2d 1093, 1101 (D. Minn. 2012)................................. 20

*E.E.O.C. v. Hibbing Taconite Co.,* 266 F.R.D. 260, 270, (D. Minn. 2009) ................................. 20

*EEOC v. Maryland Insurance Administration,* 879 F.3d 114, 121-122 (4th Cir. 2018) ............................ 16

*EEOC v. TXI Operations, L.P.*, 394 F.Supp.2d 868, 879 & n. 11 (N.D. Tex.2005)................................. 10

*Fields v. Stephen F. Austin State Univ.*, 611 Fed.Appx. 830, 831–32 (5th Cir. 2015)................................. 8

*Fowler v. Land Mgmt. Groupe, Inc.,*  978 F.2d 158, 161 (4th Cir. 1992) ..................................................... 17

*Hodgson v. Fairmont Supply Co.,* 454 F.2d 490, 493 (4th Cir.1972) ........................................................ 8

*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir. 1982) ........................................... 19

*Jones v. Flagship Intern.*, 793 F.2d 714, 722 (5th Cir. 1986) ................................................................ 8

*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) ................................................................ 2

*LTV Educational Systems, Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir. 1989)  ............................................ 1

*Mansfield v. U.S.,* 71 Fed. Cl. 687 (2006) ................................................................................ 9

*Matsushita Electrical Industries Co. v. Zenith Radio Corp,* 475 U.S. 574, 586 (1986)  ............................ 2

*Ososky v. Wick,* 704 F.2d 1264, 1265 (D.C.Cir.1983) ................................................................ 19

*Pan-American Petroleum & Transp. Co. v. U.S.,* 273 U.S. 456, 506 (1927)  ........................................ 20

*Pouncy v. Prudential Ins. Co.,* 668 F.2d 795, 802–03 (5th Cir.1982) ................................................ 10

*Republic of Iraq v. ABB AG*, 768 F.3d 145, 179 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015)..... 20

*Salazar v. Marathon Oil Co.,* 502 F. Supp. 631, 636  (S.D.Tex. 1980) ..................................................... 15

*Saucedo v. Unv. Of Texas at Brownsville*, 958 F.Supp. 761, 779 (S.D. Tex. 2013) ................................... 9

*Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir.1970) ................................................................. 8

*Sierra Club v. Hickel,* 467 F.2d 1048, 1052 (6th Cir. 1972) ...................................................... 20

*United States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir. 1974) ................... 20

*United States v. Sutton*, 795 F.2d 1040, 1062 (Temp. Emer. Ct. App. 1986) ........................................ 19

*United States v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982) ...................................................... 19

*Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) ......................................................... 18

## WESTLAW CASES

*Barsch v. Nueces County*, 2016 WL 4785169, *7 (S.D.Tex. 2016) ...................................................... 13

*EEOC v. Collegeville/Imagineering*, 2007 WL 2051448 at *4 (D.Ariz., July 16, 2007) .......................... 20

*Lyons v. Burlington Coat Factory Warehouse*, No. 3:02–CV–0426–K, 2004
    WL 515585, at *6, 2004 U.S. Dist. LEXIS 3575, at *16–*17 (N.D. Tex. Jan. 30, 2004) ................ 10

*SEC v. Hayes,* No. CA 3-90-1054-T, 1991 WL 236846, at *2 (N.D. Tex. July 25, 1991) ...................... 20

*Willins v. Credit Sol of America* 2010 WL 624899 (ND Tex 2010) ...................................................... 18

## FEDERAL STATUTES

29 U.S.C. Section 206(d)(1) ............................................................................................... 1, 8

Fed. R. Civ. Pro. 56 ................................................................................................................ 1

## OTHER AUTHORITIES

EEOC Compliance Manual §10: Compensation Discrimination
§10-IV.F.2 ("Factor Other Than Sex") (Dec. 5, 2000) ........................................................... 15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION,** | § | |
| | § | **CIVIL ACTION NO.** |
| **Plaintiff,** | § | |
| | § | **4:17-CV-614** |
| **DR. MARTHA STORRIE,** | § | |
| | § | |
| **Intervenor,** | § | |
| **v.** | § | |
| | § | |
| **DENTON COUNTY,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**EEOC'S MOTION FOR SUMMARY JUDGMENT**
**AND BRIEF IN SUPPORT THEREOF**

COMES NOW, the Plaintiff U.S. Equal Employment Opportunity Commission (hereafter "EEOC" or "the Commission") and pursuant to Court's Scheduling Order, Local Rule CV-7 and Fed. R. Civ. Pro. 56, files this Motion for Summary Judgment and Brief in Support thereof. The Commission asserts that it is entitled to summary judgment on the EEOC's claims under the Equal Pay Act ("EPA") brought on behalf of Dr. Martha Storrie.  In the alternative, EEOC seeks partial summary judgment on Defendant's affirmative defenses in paragraph II and III of it's Answer.

## I. <u>LEGAL STANDARD</u>

An order of summary judgment is appropriate when there is no genuine issue of a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *LTV Educational Systems, Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir. 1989).  The proper inquiry is whether there are any genuine factual issues that properly can be resolved only by a trial of the matter because they may reasonably be resolved in favor of either party.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 250 (1986). Where the movant makes a proper showing of the absence of genuine issue for trial, the burden of proof shifts to the non-movant to come forward with evidence showing a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industries Co. v. Zenith Radio Corp,* 475 U.S. 574, 586 (1986). Once summary judgment is made, the non-movant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## II.       STATEMENT OF THE ISSUES

1.       Whether EEOC is entitled to summary judgment on its claims that the Defendant violated the Equal Pay Act by paying Dr. Martha Storrie unequal wages based upon her sex (female).

2.       Whether the EEOC is entitled to partial summary judgment on the Defendant's Affirmative Defenses II 1, 3, 7 and III of its Answer.

## III. STATEMENT OF UNDISPUTED FACTS

1.       Dr. Martha Cecile Storrie is a physician, with Texas Medical License #H1415 and Oklahoma Medical License #15754.  Dr. Storrie also is a Registered Pharmacist in the State of Texas #24592. (Storrie resume, Attachment 1; Appendix 001-002)

2.       Dr. Storrie was hired by Denton County to work as a part-time Primary Care Clinician on October 29, 2008. (Defendant's Responses to EEOC's Requests for Admission, Response No. 2, Attachment 2; Appendix 004).

3.      Dr. Storrie's starting salary as a part-time Primary Care Clinician was $56, 265.

(Defendant's Responses to EEOC's Requests for Admission, Response No. 3, Attachment 2;

Appendix 004).

4.      On December 1, 2009, Dr. Storrie was hired by Denton County to work as a full-

time Primary Care Clinician. (Defendant's Responses to EEOC's Requests for Admission,

Response No. 2, Attachment 2; Appendix 004).

5.      As a full-time Primary Care Clinician, Dr. Storrie's starting salary was $120,000.

(Defendant's Responses to EEOC's Requests for Admission, Response No. 4, Attachment 2).

6.       Denton County has a job description for the position of Primary Care Clinician.

The job description attached as Attachment 3 is the job description that was effective when Dr.

Storrie was moved to the fulltime Primary Care Clinician position (PCC Job Description,

Attachment 3; Appendix 009).

7.      The Job Description attached as Attachment 3 states the following "Education,

Experience and Licenses" required for the position:

> *Bachelor's degree in related field for this position.*
>
> *Minimum three to five years of experience in a related field required; or an equivalent combination of education and related experience.*
>
> <u>*Physician*</u>
>
> *Licensed to practice medicine by the Texas Board of Medical Examiners.*

8.      According to Bing Burton, Medical Director for Denton County from 1992-2014,

this job description (effective October 2009) applied to all Primary Care Clinicians who worked

for Denton County during this time period.  (Deposition of Bing Burton, Attachment 10, pp. 26,

115; Appendix 0049, 0059).

9.      At Denton County, the Director of Public Health has the discretion to recommend starting salary for Primary Care Clinicians which is approved by commissioner's court. (Denton County's Respone to EEOC's Request for Information. (Appendix 0017) All other job titles at Denton County, except primary care clinicians, county attorneys and department heads are paid starting salaries based upon the County's Salary Structure. (Deposition of Amy Phillips, Attachment 12, p. 21-24; Appendix 0072-0075).

10.     In Defendant Denton County's Answer, Affirmative Defenses and Jury Demand (Dkt. 12), para. 14, Defendant admits that Dr. Storrie performed work for Denton County in a position requiring equal skill, effort and responsibility under similar working conditions and, for most of the time, at the same Denton County facilities as the male Primary Care Clinician. (Denton County's Answer, Affirmative Defenses and Jury Demand, Attachment 6; Appendix 0019).

11.     On August 5, 2015, the Defendant hired Dr. Marty Buchanan to perform the job of Primary Care Clinician for Denton County. (Defendant's Responses to EEOC's Requests for Admission, Response No. 5, Attachment 2; Appendix 004).

12.     As a full-time Primary Care Clinician, Dr. Buchanan's starting salary was $170,000. (Defendant's Responses to EEOC's Requests for Admission, Response No. 6, Attachment 2; Appendix 004), See also Buchanan's Denton County Salary History, Attachment 28; Appendix 00169).

13.     At the time of Dr. Buchanan's hiring, Dr. Storrie had more than 7 years of experience in the job of Denton County Primary Care Clinician, and was paid $135,695. (Storrie Denton County Salary History, Attachment 8; Appendix 0040).

14.     On or about August 2015, Dr. Storrie complained to her supervisor, Matt Richardson, about the disparity between her pay and that of Dr. Buchanan. (Deposition of Matt Richardson, Attachment 13, pp. 79, 80; Appendix 0084-0085). Dr. Storrie showed Richardson a Denton Record Chronicle newspaper article, dated August 12, 2015 that listed Dr. Buchanan's pay at $170,000 and Dr. Storrie's at $135,695. (Denton Record Chronicle Newspaper article, Attachment 4; Appendix 0012).

15.     On July 30, 2014, Dr. Javed Akram (male) was hired to perform the job of Primary Care Clinician.   (Defendant's Responses to EEOC's Requests for Admission, Response No. 13, Attachment 2; Appendix 004).

16.     As a part-time Primary Care Clinician, Dr. Akram's starting salary was $63,000. (Defendant's Responses to EEOC's Requests for Admission, Response No. 14, Attachment 2; Appendix 006).

17.     Dr. Akram was moved to the position of full-time Primary Care Clinician from October 1, 2014 until November 11, 2014 with a salary of $142,800. He returned to the position of part-time Primary Care Clinician Nov. 12, 2014 with the salary of $71,400. (Defendant's Responses to EEOC's Requests for Admission, Response No. 14, Attachment 2; Appendix 006).

18.     Victor Alvarez (male) was hired as a part-time Primary Care Clinician on August 4, 2010 at the starting salary of $78,000. (Defendant's Responses to EEOC's Requests for Admission, Response Nos. 17, 18, Attachment 2; Appendix 006).

19.     Dr. Benjamin Beall (male) was hired by Denton County as a full-time Primary Care Clinician on January 13, 2010. His starting salary was $120,000. (Defendant's Responses to EEOC's Requests for Admission, Response Nos. 11, 12, Attachment 2; Appendix 005).

20.     Dr. Buchanan was, at one time, board certified in Internal Medicine by the Diplomate American Board of Internal Medicine in approximately 1996. (Deposition of Marty Buchanan, Attachment 11, p. 51; Appendix 0066).

21.     Dr. Buchanan testified that he is not currently board certified in Internal Medicine. (Deposition of Marty Buchanan, Attachment 11, page 98; Appendix 0067). He decided not to take the recertification exam in 2016, so he is no longer board certified. (Deposition of Marty Buchanan, Attachment 11, page 124; Appendix 0068).

22.     Dr. Buchanan testified during his deposition that he did not maintain his board certification in Internal Medicine because it was "not necessary for his position" of Primary Care Clinician at Denton County. (Deposition of Marty Buchanan, Attachment 11, pp. 124, 125; Appendix 0068-0069).

23.     Dr. Storrie is currently board certified in Adult and Pediatric Urology. She has held this distinction since 1992.  She also was board certified in Hospice and Palliative Medicine until 2013. (Deposition of Martha Storrie, Attachment 14, pp. 17-18; Appendix 0092-0093).

24.     Dr. Storrie also is a Certified Correctional Healthcare Professional by the National Commission on Correctional Healthcare. (Deposition of Martha Storrie, Attachment 14, pp. 18-19; Appendix 0093-0094). She has held that certification since approximately 2014-2015.

25.     The table below (based upon Denton County's Response to EEOC's Request for Information, dated May 2, 2017, Attachment 5, No. 1 and Salary History for each PCC, Attachments 8, 24-30; Appendix 0040, 00165-00171). shows all physicians hired as Primary Care Clinicians for Denton County during the time period 2007-2016. Notably, all males hired by Denton County had a higher starting hourly pay than Dr. Storrie when taking into account part-time salaries:

| Name | Sex | Hire Date | Status | Salary | Hourly salary | Changes in status |
|------|-----|-----------|--------|--------|---------------|-------------------|
| Hall Hoskins | F | 2007 | Part-time  (18) | $54,000 | $57.692/hr | |
| Storrie | F | 2008 | Part-time  (20) | $56,265 | $54.101/hr | Changed to fulltime 12/1/09 $120,000 |
| Beall | M | 2010 | Full-time | $120,000 | $57.69/hr | |
| Alvarez | M | 2010 | (Rehire) Part-time (21) | $78,000 | $71.428 | |
| Ambavaran | F | 2010 | Full-time | $100,000 | $48.07/hr | |
| Akram | M | 2014 | Part-time (18) | $63,000 | $67.308/hr | Changed to fulltime 10/1/14 $126,000 Returned to parttime 11/12/14 |
| Graves | F | 2016 | Full-time | $160,000 | $76.923 | |
| Buchanan | M | 2015 | Full-time | $170,000 | $81.730 | |

26.     The following physicians had no board certification at the time they were hired by

Denton County (Denton County's Response to EEOC's Request for Information, Attachment 5,

Response No. 2(b); Appendix 0015):

> Dr. Javed Akram
> Dr. Victor Alvarez
> Dr. Sukanya Ambavaran
> Dr. Benjamin Beall
> Dr. Judith Graves
> Dr. Hall-Hoskins

## IV. EEOC IS ENTITLED TO SUMMARY JUDGMENT ON ITS EQUAL PAY ACT CLAIMS BROUGHT ON BEHALF OF DR. STORRIE

### A. EEOC CAN PROVE A *PRIMA FACIE* CLAIM

Congress's purpose in passing the Equal Pay Act was to remedy what it viewed as a "serious

and endemic problem" — the fact that "the wage structure of 'many segments of American industry

[had] been based on an ancient but outmoded belief that a man, because of his role in society,

should be paid more than a woman even though his duties are the same.'" *Corning Glass Works*

*v. Brennan*, 417 U.S. 188, 195 (1974).  The solution Congress adopted was "simple in principle": to "require that 'equal work will be rewarded by equal wages.'"  *Id.*

To that end, the EPA makes it unlawful for an employer to "pay[ ] wages to employees [of one sex] ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. §206(d)(1).  The statute is "broadly remedial, and should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."  *Corning Glass*, 417 U.S. at 208.

In order to establish a *prima facie* claim under the Equal Pay Act, a plaintiff must show that the "employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." *Jones v. Flagship Intern.*, 793 F.2d 714, 722 (5th Cir. 1986). This requires a threefold showing by the plaintiff: that (1) the employer is subject to the Act; (2) that [Storrie] performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than her [male comparator]. *Id.*, at 722-23. *See also: Fields v. Stephen F. Austin State Univ.*, 611 Fed.Appx. 830, 831–32 (5th Cir. 2015) (*citing Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)) Courts interpreting the EPA have stated: " '[e]qual means substantially equal.' " *Hodgson v. Fairmont Supply Co.,* 454 F.2d 490, 493 (4th Cir.1972)(*quoting Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir.(1970)).  "The purpose behind the enactment of the EPA was to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for doing the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d. Cir. 1999)(*quoting* 29 U.S.C. Section 206(d)(1))

Defendant admits that it is an employer subject to the EPA. (Defendant Denton County's Answer, Affirmative Defenses and Jury Demand, Attachment 6, para. 6; Appendix 0020). Defendant also admits in its Answer that Dr. Storrie performed work in a position requiring equal skill, effort and responsibility under similar working conditions. (Defendant Denton County's Answer, Affirmative Defenses and Jury Demand, Attachment 6, para. 14; Appendix 0021). Defendant also does not challenge nor dispute that in the position of full-time Primary Care Clinician, Dr. Storrie was paid less than male comparator, Dr. Marty Buchanan. (Statement of Facts above 5 and 11). [1] Thus, EEOC has met its burden of proving a *prima facie* case under the EPA.

## B. <u>DEFENDANT IS NOT ENTITLED TO AN EXCEPTION UNDER THE ACT</u>

The Defendant carries the burden of proof in providing a reason for paying Dr. Storrie less than the male comparators performing the work of Denton County Primary Care Clinician. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). In the Fifth Circuit, if the plaintiff makes out a *prima facie* case, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir.1993). The four enumerated exceptions to the Equal Pay Act are: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex. These "are affirmative defenses on which the employer has the burden both of production and of persuasion." *Saucedo v. Unv. Of Texas at Brownsville*, 958 F.Supp. 761, 779 (S.D. Tex. 2013). The employer's burden to establish an affirmative defense under the EPA is a heavy one. *Mansfield v. U.S.*, 71 Fed. Cl. 687 (2006). So long as it is consistent with the purposes of the Equal Pay Act, an employer may

---

[1]  Actually, when comparing the hourly pay of Dr. Storrie to all of the male physicians hired as part-time and full-time between 2007 and 2017, the evidence shows that Dr. Storrie's **starting salary** was less than not just Dr. Buchanan, but *every male physician hired as a PCC for Denton County*. (See Fact 25 above).

base a salary differential on a factor other than sex, including: (1) "different job levels;" (2) "different skill levels;" (3) "previous training;" (4) "experience;" and (5) "prior salary history, performance, and other factors." *EEOC v. TXI Operations, L.P.*, 394 F.Supp.2d 868, 879 & n. 11 (N.D. Tex.2005) *777 (*quoting Pouncy v. Prudential Ins. Co.,* 668 F.2d 795, 802–03 (5th Cir.1982) and *Lyons v. Burlington Coat Factory Warehouse*, No. 3:02–CV–0426–K, 2004 WL 515585, at *6, 2004 U.S. Dist. LEXIS 3575, at *16–*17 (N.D. Tex. Jan. 30, 2004)) The plaintiff creates a presumption of discrimination under the EPA by establishing a *prima facie* case. *Brinkley-Obu v. Hughes Training Inc.,* 36 F.3d 336, 344 (4th Cir. 1994)

During the EEOC's investigation of Dr. Storrie's charge of discrimination and throughout discovery in this litigation, the Defendant has proffered a variety of vague and unsupported reasons for paying Dr. Buchanan more than Dr. Storrie. In paragraph 12 of the Defendant's Answer, the Defendant states that the reason for the differential between Dr. Storrie and Dr. Buchanan's salaries was a factor other than sex, which included: "the differences in their respective experience, training and ability that related to job performance and otherwise benefitted Denton County." (Defendant Denton County's Answer, Affirmative Defenses and Jury Demand, Attachment 6, para. 12; Appendix 0021).   In Defendant's Position Statement, signed by Assistant District Attorney Moira Schilke, and provided to EEOC on May 13, 2016, Defendant states: "Dr. Buchanan's higher salary is entirely attributable to his greater experience and expertise in the primary care field. In addition, Dr. Buchanan, who was employed at the time of his application, was offered the salary he requested, while Dr. Storrie was willing to accept the salary offered by Bing Burton." (Denton County's Position Statement, May 13, 2016, Attachment 7; Appendix 0039). During his deposition, decisionmaker Matt Richardson said that the reason he hired Dr.

Buchanan at a higher rate of pay was "education, experience, board eligibility, board certification…" (Deposition of Matt Richardson, Attachment 13, p. 146; Appendix 0086).

In Defendant's Answers to EEOC's Interrogatories, Defendant attempts to offer one more rationalization for paying Dr. Buchanan such a higher starting salary than paid to Dr. Storrie. (Defendant's Answers to EEOC's Interrogatories, Attachment 23, Response to Interrogatory No. 4; Appendix 00157.) Defendant asserts in its response that it paid Dr. Buchanan $170,000 based upon discussions between Amy Phillips and Dr. Richardson "regarding market studies/salary surveys."  However, the deposition testimony of Amy Phillips contradicted this claim that Denton County conducted a market survey or salary survey prior to arriving at a starting salary of $170,000 for Dr. Buchanan. Amy Phillips testified that the information she gave Dr. Richardson was not a market survey or a salary survey. (Deposition of Amy Phillips, Attachment 12, p. 70; Appendix 0077-0078). [2]Instead she sent him four internet links that "offer some information about physician salaries." (Deposition of Amy Phillips, Attachment 12, p. 71; Appendix 0077-0078).  The information provided by Ms. Phillips to Dr. Richardson was not a properly conducted salary analysis, and thus, could not form a basis for justifying Dr. Buchanan's inflated starting salary. (See more factual details in Supplemental Expert Witness Report of Dr. Dwight Steward, Dkt 38, Attachment 15, paras. 10-16; Appendix 00103-00107).

The Defendant's proffered reasons for paying Dr. Buchanan more than Dr. Storrie do not rise to the level of specificity and persuasion sufficient to allow an exception under the EPA as a "factor other than sex."   With respect to the assertion in the Defendant's Answer relating to job performance, the Defendant will have difficulty arguing against Denton County's own high-

---

[2]  Amy Phillips described the important elements of a true market study/salary study in her deposition. These elements were not included in the internet links she provided Dr. Richardson. (Deposition of Amy Phillips, Attachment 12, p. 71; Appendix 0078).

caliber performance appraisals of Dr. Storrie.  Prior to the hiring of Dr. Buchanan in August

2015, Dr. Storrie received the following performance ratings from Denton County Health

Director Bing Burton (Storrie Performance Appraisals Attachments 16-22; Appendix 00145-

00151) and Deposition of Bing Burton, Attachment 10, pp. 77-83; Appendix 0051-0057):

| Date of Performance Appraisal | Rating | Evaluator |
|---|---|---|
| July 2008-June 2009 | Overall rating: 4.70 | Health Director Bing Burton |
| July 2009-June 2010 | Overall rating: 4.18 | Health Director Bing Burton |
| July 2010-June 2011 | Overall rating: 4.50 | Health Director Bing Burton |
| July 2011-June 2012 | Overall rating: 4.78 | Health Director Bing Burton |
| July 2012-June 2013 | Overall rating: 4.84 | Health Director Bing Burton |
| July 2013-June 2014 | Overall rating: 4.87 | Health Director Bing Burton |
| July 2014-June 2015 | Overall rating: 3.58 | Health Director Matt Richardson |

These performance appraisals are given based upon a 1-5 scale.  (Deposition of Amy

Phillips, Attachment 12, p. 82; Appendix 0079). The Denton County Human Resources Manager

Amy Phillips testified in her deposition that the performance appraisals score represent the

following:  5 is outstanding, 4 is exceeds expectations, 3 is meets expectations, and 1 and 2 are

"different degrees of needing improvement."  (Deposition of Amy Phillips, Attachment 12, pp.

82-83; Appendix 0079-0080). Based upon Denton County's own performance appraisals, Dr.

Storrie's performance at the time of hiring Dr. Buchanan was always above "meets expectations"

and was consistently between "exceeds expectations" and "outstanding."

Dr. Storrie's performance appraisals are echoed by her co-workers, who indicated that

she was a competent physician. Dr. Benjamin Beall, who worked side-by-side at Denton County

with Dr. Storrie and often consulted with her, testified that he liked Dr. Storrie, and that he never

felt she was unable to adequately perform her job.  (Deposition of Dr. Benjamin Beall,

Attachment 9, pp. 51, 53; Appendix 0044-0045) He testified: "She was easy to work for, as far

as I was concerned and was reliable and showed up on time, and those are things that I consider

assets."  (Deposition of Dr. Benjamin Beall, Exhibit 9, p. 51; Appendix 0044) Her supervisor Bing Burton testified that she did a "very competent job with inmate medical needs." (Deposition of Bing Burton, Exhibit 10, p. 113; Appendix 0058).

On the issue of education, it does not appear that Dr. Buchanan has any education that was notably superior to that of Dr. Storrie. Dr. Buchanan and Dr. Storrie both attended the University of Texas Health Sciences Center at San Antonio Medical School, where they each received a Doctor of Medicine. Dr. Storrie received her medical degree in 1985; Dr. Buchanan in 1991.  (Dr. Storrie Resume, Attachment 1; Appendix 001). Dr. Storrie also is a registered Pharmacist in the State of Texas. (Resume of Dr. Storrie, Attachment 1, EEOC 0000166; Appendix 001) As for board eligibility and board certification, at the time of Dr. Buchanan's hiring, Dr. Storrie was board certified in Adult and Pediatric Urology. She also was board certified in Hospice and Palliative Medicine until 2013.   (Deposition of Martha Storrie, Attachment 14, pp. 17-18; Appendix 0092-0093) Dr. Storrie also is a Certified Correctional Healthcare Professional by the National Commission on Correctional Healthcare. (Deposition of Martha Storrie, Attachment 14, pp. 18-19; Appendix 0093-0094). She has held that certification since approximately 2014-2015.  In contrast, Dr. Buchanan was board certified in Internal Medicine. (Deposition of Marty Buchanan, Attachment 11, p. 51; Appendix 0066)

To show that a difference in pay for equal work is justified by a difference in employees' certifications or education, an employer must show at a minimum that the education possessed by the better-paid comparator related to the skills actually used to perform the job's duties. *Barsch v. Nueces County*, 2016 WL 4785169, *7 (S.D.Tex. 2016). Despite Matt Richardson's arguments to the contrary, the evidence presented here is not convincing that the internal medicine certification

was significant in the physician's ability to perform the work of a PCC for Denton County.  This is proven by several facts:

A.      Dr. Buchanan admitted that he did not renew his certification for Internal Medicine because "it was not necessary' for the job of PCC. Buchanan's certification in Internal Medicine is not active today. (Deposition of Marty Buchanan, Attachment 11, pp. 98, 124, 125; Appendix 0067-0069); As Dr. Buchanan testified to in his deposition: "It's a nice credential to have, but it is not necessary for my functions." (Deposition of Marty Buchanan, Attachment 11, pp. 124-125; Appendix 0068-0069);

B.      Other physicians, including Dr. Beall, Dr. Akram, Dr. Alvarez and Dr. Graves did not have the internal medicine certification – or any certification in fact. But yet, *they were all paid more than Dr. Storrie* (See Statement of Fact No. 25 above);

C.      The internal medicine board certification is not listed on the job description for the position of PCC, even though the Respondent updated and revised the job description (Deposition of Marty Buchanan, Attachment 11, p. 27; Appendix 0062). Also, former Denton County Human Resources Director Amy Phillips testified that she does not recall there being any request or discussion to add board certification to the job description for the PCC. (Deposition of Amy Phillips, Attachment 12, page 57; Appendix 0076). Ms. Phillips specifically recalls that Dr. Richardson did not request that she include any requirement of board certification to any updated job description for the Primary Care Clinician. (Deposition of Amy Phillips, Attachment 12, page 57; Appendix 0076);

Further, according to the testimony of Dr. Storrie, along with Dr. Buchanan and Dr. Beall, actually Dr. Storrie's certification in urology may be as useful as other certifications in the day-to-day practice of working as PCC for Denton County.  Dr. Buchanan and Dr. Beall both testified

that in their work as a PCC at Denton County, they saw patients who had a urinary tract infections, kidney stones and symptoms of an enlarged prostate.  (Deposition of Benjamin Beall, Attachment 9, p. 28; Appendix 0043) and Deposition of Marty Buchanan, Attachment 11, p. 31; Appendix 0063) Similarly, Dr. Storrie testified that she treated the following urological-related conditions while working as a PCC for Denton County:  epididymitis, orchiditis, testicular cancer, prostatitis, prostate nodule, premature eqaculation, sexual difficulties, erectile dysfunction, urinary tract infection, dyspareunia, and pelvic floor symptom. (Deposition of Martha Storrie, Attachment 14, pp. 23-24; Appendix 0095-0096). Dr. Benjamin Beall also testified that he treated patients with symptoms relating to prostate enlargement and conducted prostate examinations on a frequent basis while working for Denton County. (Deposition of Dr. Benjamin Beall, Attachment 9, pp. 28, 75; Appendix 0043, 0046)

This Court should reject the Defendant's assertion that the higher pay to the male doctor is acceptable based upon Dr. Buchanan's previously held internal medicine certification. "The crucial question is not if [the male] possessed additional skill or training, but whether the nature of his duties…required those additional skills." *Salazar v. Marathon Oil Co.,* 502 F. Supp. 631, 636  (S.D.Tex. 1980) The Commission agrees with this authority.  In EEOC's view, an employer asserting this defense must show that "the factor is related to job requirements or otherwise is beneficial to the employer's business."  EEOC Compliance Manual §10: Compensation Discrimination §10-IV.F.2 ("Factor Other Than Sex") (Dec. 5, 2000) Here, Dr. Buchanan's own testimony that the certification "is not necessary" to the job of PCC should be sufficient on its own to strike this justification as a "factor other than sex."

Defendant has asserted in its position statement and through the testimony of Matt Richardson that one of the reasons that Dr. Buchanan was paid the amount of $170,000 for the

position of Primary Care Clinician was because this was his "Preferred salary" listed on his application. (Deposition of Matt Richardson, Attachment 13, pp. 180-182; Appendix 0087-0089) (Denton County's Position Statement, May 13, 2016, Attachment 7; Appendix 0039). However, the testimony of selectee Dr. Buchanan himself makes clear that this argument for paying him more than Dr. Storrie is pretextual. During his deposition, Dr. Buchanan testified that preferred salary of $170,000 was "not a number I generated on my own." Dr. Buchanan testified that he put the amount of $170,000 as his preferred salary because $170,000 is the amount that Matt Richardson told him he would be offered for the job. (Deposition of Marty Buchanan, Attachment 11, pp. 39-40; Appendix 0064-0065). By way of contrast, when Bing Burton offered Dr. Storrie $120,000 as her starting full-time salary, he knew (but she did not) that the amount offered was $5,000 below the amount that Denton County budgeted for the position. (Deposition of Bing Burton, Attachment 10, p. 71; Appendix 0050) But a qualified woman's willingness to accept less is precisely the result that the EPA was intended to prevent. *See Corning Glass,* 417 U.S. at 205 (Congress intended to prohibit practice of paying women less because they will accept less).

Throughout this litigation, the Defendant has asserted that once Dr. Storrie was moved to fulltime status as a PCC in Dec. 1, 2009, she was paid $120,000 (Storrie Salary History, Attachment 8; Appendix 0040), which is the same amount that was paid to Dr. Benjamin Beall, who started work as a fulltime PCC on Jan. 13, 2010 (Beall Salary History, Attachment 25; Appendix 00168). However, the fact that Dr. Beall and Dr. Storrie were paid the same amount at one point in their work for Denton County is not dispositive. An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex. *See EEOC v. Maryland Insurance Administration,* 879 F.3d 114, 121-122 (4th Cir. 2018),

*quoting Fowler v. Land Mgmt. Groupe, Inc.,* 978 F.2d 158, 161 (4th Cir. 1992)("A female plaintiff bears the burden of proof of establishing a prima facie case by showing …that her employer pays her a lower wage than *a* male counterpart…"(*emphasis added.)* The EPA does not dictate to a plaintiff what comparator she must choose, but requires only that, for the purposes of establishing a prima facie case, she choose a comparator of the opposite sex who performs substantially equal work for greater pay. 29 U.S.C. Section 206(d); *See Corning Glass Works v, Brennan,* 94 S.Ct. 2223 (1974)

Therefore, the Defendant has failed to meet its evidentiary burden on its affirmative defense that the payment of unequal wages to Dr. Storrie was based upon one of the Equal Pay Act's four exceptions. The Defendant cannot show and has failed to show that Dr. Storrie was paid less for a factor other than her sex (female). For the above reasons, EEOC is entitled to summary judgment on its claims that Denton County violated the EPA.

## V.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE DEFENDANT'S AFFIRMATIVE DEFENSES IN PARAGRAPHS II AND III OF ITS ANSWER

In the alternative, if this Court does not find that EEOC is entitled to summary judgment on its Equal Pay Act claim, EEOC respectfully requests that the Court issue partial summary judgment on the Defendant's Affirmative Defenses in paragraph II. Specifically, EEOC seeks partial summary judgment and asks the Court to specifically strike the following affirmative defenses in paragraph II 1, 3, 7 and paragraph III.

### A.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PARAGRAPH II, 1 and 3:

In Denton County's Answer, Affirmative Defenses and Jury Demand (Attachment 6), Defendant asserts the following affirmative defenses in Paragraph II, 1, 3:

1.      The EEOC, on behalf of Dr. Storrie has failed to state a claim against Denton County upon which relief can be granted. This lawsuit should be dismissed with prejudice and the Court should grant Denton county any and all other relief to which the County is justly entitled.

3.      Denton County acted in good faith and did not engage in any form of unlawful discrimination.

EEOC seeks partial summary judgment because these affirmative defenses are simply conclusory allegations that do not give EEOC fair notice of the defense being asserted. The Fifth Circuit has specifically found that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint"…[A] defendant…must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced.    *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  "[T]he pleading of an affirmative defense does not require 'detailed factual allegations,' but it does demand more than a boilerplate assertion devoid of factual support. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do [*quoting Twombly at 550 U.S. at 555*]."  *Willins v. Credit Sol of America* 2010 WL 624899 (ND Tex 2010).  A plaintiff, when faced with affirmative defenses, is entitled to receive enough specific facts to give the plaintiff "fair notice" of the defense.  EEOC objects to the above listed Affirmative Defenses because they do not provide any fair notice to the Commission of what affirmative defense the Defendant is asserting or what claims the Defendant believes EEOC should be barred from pursuing.

### B.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PARAGRAPH II, 7

In Denton County's Answer, Affirmative Defenses and Jury Demand (Attachment 6; Appendix 0019), Defendant asserts the following affirmative defenses in Paragraph II, 7:

7.      Denton County would further show that Plaintiff's claims are barred to the extent that she failed to exhaust administrative remedies, failed to exhaust Denton County's internal grievance procedures and the Denton County civil Service commission rules and procedures or otherwise failed to comply with procedural prerequisites to bring claims for damages as alleged in this lawsuit.

EEOC is entitled to summary judgment on the above affirmative defense because the Equal Pay Act provides for immediate judicial review of claims and does not require a plaintiff to first exhaust administrative remedies before proceeding to court. *See Ososky v. Wick,* 704 F.2d 1264, 1265 (D.C.Cir.1983) ("'[T]he Equal Pay Act, unlike Title VII, has no requirement for filing administrative complaints and awaiting administrative conciliation efforts.'") (*quoting County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)).

Therefore, to the extent that Defendant argues that Dr. Storrie's failure to exhaust administrative remedies bars the EEOC's Equal Pay Act claims, its argument fails.

## C.      EEOC IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PARAGRAPH III DEFENSE OF UNCLEAN HANDS

In Denton County's Answer, Affirmative Defenses and Jury Demand (Attachment 6; Appendix 0019), Defendant invokes the equitable doctrine of "unclean hands" and claims that EEOC and Dr. Storrie should be barred from bringing this Equal Pay Act claim based upon Dr. Storrie's unacceptable work behavior resulting in her termination of April 1, 2016.   EEOC asserts that the affirmative defense of unclean hands is not available to the Defendant in this Equal Pay Act action brought by the EEOC pursuant to its statutory authority.

Whether an equitable defense is available to a party is a question addressed to the discretion of the trial court. *United States v. Sutton*, 795 F.2d 1040, 1062 (Temp. Emer. Ct. App. 1986); *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir. 1982). "It is well established that the United States is subject to general principles of equity when seeking an equitable remedy." *United States v. Wilson*, 707 F.2d 304, 312 (8th Cir. 1982); *See also United*

*States v. Second National Bank of North Miami*, 502 F.2d 535, 548 (5th Cir. 1974); *Sierra Club v. Hickel,* 467 F.2d 1048, 1052 (6th Cir. 1972). Although the United States is subject to the general principles of equity, the Supreme Court has stated that equitable principles "will not be applied to frustrate the purpose of its laws or to thwart public policy." *Pan-American Petroleum & Transp. Co. v. U.S.,* 273 U.S. 456, 506 (1927); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 179 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 2836 (2015) (stating "[c]ourts have, however, long rejected efforts to invoke equitable defenses against the U.S. government and its agencies, concluding that such defenses may not be 'applied to frustrate the purpose of [the United States'] laws or to thwart public policy' ") (*quoting Pan-American Petroleum*, 273 U.S. at 506))

Here, the Defendant's Affirmative Defense relying upon the doctrine of unclean hands is clearly without merit because it may not be invoked against a governmental agency which is attempting to enforce a congressional mandate in the public interest. *SEC v. Hayes,* No. CA 3-90-1054-T, 1991 WL 236846, at *2 (N.D. Tex. July 25, 1991) Further, the Defendant has not plead nor provided evidence that EEOC "acted in bad faith, or inequitably, in its dealings with [the defendant] ... [and] that the bad faith, or inequity, was in regards to the matter" prejudiced the defendant. *E.E.O.C. v. Prod. Fabricators, Inc.*, 873 F. Supp. 2d 1093, 1101 (D. Minn. 2012) (granting motion to strike affirmative defense of unclean hands); *see also E.E.O.C. v. Hibbing Taconite Co.,* 266 F.R.D. 260, 270, (D. Minn. 2009), *EEOC v. Collegeville/Imagineering*, 2007 WL 2051448 at *4 (D.Ariz., July 16, 2007) (granting EEOC Summary Judgment on unclean hands defense because of the public interest involved).

WHEREFORE, premises considered, EEOC respectfully requests that this Court grant the EEOC's motion for summary judgment and issue an order finding that the Defendant violated the Equal Pay Act with regard to payment of unequal wages to Dr. Storrie.  In the

alternative, EEOC requests that this Court grant EEOC's motion for partial summary judgment,

striking the affirmative defenses in Defendant's Answer, paragraph II 1, 3, 7 and paragraph III.

Respectfully submitted,


JAMES LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ROBERT A. CANINO
Regional Attorney
Oklahoma State Bar No. 011782

/s/Suzanne M. Anderson
SUZANNE M. ANDERSON
Supervisory Trial Attorney
Texas Bar No. 14009470

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Dallas District Office
207 South Houston Street
3rd Floor
Dallas, Texas 75202
Tel No. (214) 253-2743
Fax No. (214) 253-2749

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was sent to the following via e-mail and U.S. mail on this  29th   day of June, 2018:

Robert Davis
Matthews, Shiels, Knott, Eden, Davis & Beanland LLP
8131 LBJ Freeway, Suite 700
Dallas, Tx 75251

Brandi J. McKay
Scheef & Stone LLP
2600 Network Blvd., Ste 400
Frisco, Tx. 75034

<u>/s/ Suzanne M. Anderson</u>
SUZANNE M. ANDERSON