## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| DR. MARTHA STORRIE, | § § | 4:17-CV-614 |
| Intervenor, | § § | |
| v. | § § | |
| DENTON COUNTY, | § § | |
| Defendant. | § § § | |

**EEOC'S MOTION FOR SUMMARY JUDGMENT**

# APPENDIX INDEX

| No. | Description | Page(s) |
|---|---|---|
| | | |
| 1 | Resume of Dr. Storrie | 001-002 |
| 2 | Defendant's Responses to EEOC's Requests for Admission, Response | 003-008 |
| 3 | Primary Care Clinician Job Description, effective October 2009 | 009-0011 |
| 4 | Denton Record Chronicle Newspaper article 8/12/15 | 0012 |
| 5 | Denton County's Response to EEOC's Request for Information, 5/2/17 | 0013-0018 |
| 6 | Denton County's Answer, Affirmative Defenses and Jury Demand | 0019-0034 |
| 7 | Denton County's Position Statement, dated 5/13/16 | 0035-0039 |
| 8 | Storrie Denton County Salary History | 0040-0041 |
| 9 | Deposition of Bejamin Beall | 0042-0047 |
| 10 | Deposition of Bing Burton | 0048-0060 |
| 11 | Deposition of Marty Buchanan | 0061-0070 |
| 12 | Deposition of Amy Phillips | 0071-0082 |
| 13 | Deposition of Matt Richardson | 0083-0090 |
| 14 | Deposition of Martha Storrie | 0091-0097 |
| 15 | Supplemental Expert Witness Report of Dr. Dwight Steward | 0098-00144 |
| 16 | Performance Appraisal of Dr. Storrie 2008-09 | 00145 |
| 17 | Performance Appraisal of Dr. Storrie 2009-2010 | 00146 |
| 18 | Performance Appraisal of Dr. Storrie 2010-11 | 00147 |
| 19 | Performance Appraisal of Dr. Storrie 2011-12 | 00148 |

| 20 | Performance Appraisal of Dr. Storrie 2012-13 | 00149 |
| 21 | Performance Appraisal of Dr. Storrie 2013-14 | 00150 |
| 22 | Performance Appraisal of Dr. Storrie 2014-15 | 00151 |
| 23 | Defendant's Answers to EEOC's Interrogatories | 00152-00164 |
| 24 | Akram Denton County Salary History | 00165 |
| 25 | Alvarez Denton County Salary History | 00166 |
| 26 | Ambavaram Denton County Salary History | 00167 |
| 27 | Beall Denton County Salary History | 00168 |
| 28 | Buchanan Denton County Salary History | 00169 |
| 29 | Graves Denton County Salary History | 00170 |
| 30 | Hall-Hoskins Denton County Salary History | 00171 |

# MARTHA CECILE STORRIE, M.D., R.Ph.
### CURRICULUM VITAE

**BUSINESS ADDRESS:**    Martha C. Storrie, M.D., R.Ph.
591 West Main Street
Lewisville TX 75057

**DATE OF BIRTH:**    September 8, 1956

**EXPERIENCE:**    Urologist, private practice // July 1990 to present    *2008?*
Associate, Kenneth A. Goldberg, M.D.
Associate, John L. Fairbanks, M.D.

Physician investigator // December 1997 to 2002
Research Across America
9 Medical Pkwy, Suite 202, Dallas TX 75234

Hospice team physician // April 2000 – April 2002
Vitas Healthcare Corporation
400 S. Carroll, Suite 2000, Denton TX 76201

Medical Director // April 2002 – May 2005
Odyssey Healthcare Corporation
13800 Montfort, Suite 300, Dallas TX 75240

Medical Director // May 2005 – August 2007
Faith Hospice
6100 Colwell, Suite 225, Irving TX 75239

**EDUCATION:**    The University of Texas at Austin, B. S. Pharmacy
With Honors // December 1979

University of Texas Health Science Center at San
Antonio Medical School, M.D. // May 1985

**RESIDENCY:**    Oklahoma University Health Sciences Center,
Dept. of General Surgery // July 1985 – June 1987

(residency continued on next page)

OCT-10-2003 16:20  FROM:DR*STOR⁻⁻E          972-317-1261          ⁻ 9403493081          P.8/8

| | |
|---|---|
| RESIDENCY, CONTINUED: | Oklahoma University Health Sciences Center, Dept. of Urology // July 1987 – June 1990 |
| LICENSURE: | Medical License, Texas # H1415<br>Medical License, Oklahoma # 15754<br>Registered Pharmacist, Texas # 24592 |
| BOARD CERTIFICATION: | American Board of Urology, Inc. // February 1992<br>Recertification // December 1999<br><br>American Board of Hospice and Palliative Medicine<br>January 2005 |
| HOSPITAL AFFILIATIONS: | Medical Center of Lewisville, Lewisville TX<br>Trinity Medical Center, Carrollton TX<br>Valley View Surgery Center, Dallas TX<br>Surgery Center of Lewisville, Lewisville TX |
| PROFESSIONAL ACTIVITIES: | American Urological Association // 1985 to present<br>Texas Medical Association // April 2000 to present<br>Denton County Medical Society // April 2000 to present |
| PERSONAL ACTIVITIES: | hobby farming<br>designing and sewing costumes and gowns<br>parenting<br>piano |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:17-CV-614** |
| | § | |
| **DENTON COUNTY** | § | |

**DEFENDANT DENTON COUNTY'S OBJECTIONS**
**AND RESPONSES TO PLAINTIFF'S FIRST SET OF ADMISSIONS**

TO:   Plaintiff Equal Employment Opportunity Commission, by and through its attorney of record, Devika Seth, 207 S. Houston Street, 3rd Floor, Dallas, Texas 75202.

PURSUANT to Rule 36 of the FEDERAL RULES OF CIVIL PROCEDURE, Defendant Denton County makes this its following Objections and Responses to Plaintiff's First Set of Admissions.

Respectfully submitted,

By:      /s/ Robert J. Davis
**ROBERT J. DAVIS**
State Bar No. 05543500
MATTHEWS, SHIELS, KNOTT,
EDEN, DAVIS & BEANLAND, L.L.P.
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2017, I sent a copy of the foregoing to the Plaintiff's counsel by hand delivery and Intervenor's counsel via certified mail. I then electronically filed the NOTICE OF DISCOVERY with the clerk of the Court for the Eastern District, Sherman Division, using the electronic case filing system of the Court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Devika Seth, Suzanne Anderson, Robert Canino, Brandi McKay and Shelby Douglas.

       /s/ Robert J. Davis
**ROBERT J. DAVIS**

<u>RESPONSES TO REQUEST FOR ADMISSIONS</u>

1.    Denton County is the proper party named in the above-captioned lawsuit.

   **RESPONSE:**

   While denying any liability for the allegations made by the EEOC and by Dr. Martha Storrie, Denton County admits that it has been properly named in this lawsuit.

2.    Martha C. Storrie, M.D. was employed by Defendant as a Primary Care Clinician between December 29, 2008, and March 29, 2016.

   **RESPONSE:**

   Denied as phrased.  Dr. Storrie started part time as a Primary Care Clinician on October 29, 2008, began full time as a Primary Care Physician on December 1, 2009, and was terminated on April 1, 2016.

3.    Martha C. Storrie, M.D.'s starting part-time salary with Defendant as a Primary Care Clinician was $56,265.

   **RESPONSE:**

   Admit

4.    Martha C. Storrie, M.D.'s starting full-time salary with Defendant as a Primary Care Clinician was $120,000.

   **RESPONSE:**

   Admit

5.    Marty Buchanan, M.D. was hired by Defendant to perform the job of Primary Care Clinician on August 5, 2015.

   **RESPONSE:**

   Denied as phrased.  Dr. Buchanan was hired to  perform the job of Primary Care Clinician on August 3, 2015.

6.    Marty Buchanan, M.D.'s starting full-time salary as a Primary Care Clinician with Defendant was $170,000.

   **RESPONSE:**

   Admit.

7.    Sukanya Ambavaram, M.D. was hired by Defendant to perform the job of Primary Care Clinician on August 18, 2010.

**RESPONSE:**

Admit

8.    Sukanya Ambavaram, M.D.'s starting full -time salary as a Primary Care Clinician with Defendant was $100,000.

**RESPONSE:**

Admit

9.    Admerle Hall-Hoskins, M.D. was hired by Defendant to perform the job of Primary Care Clinician on August 15, 2007.

**RESPONSE:**

Admit

10.   Admerle Hall-Hoskins, M.D.'s starting part-time salary as a Primary Care Clinician with Defendant was $54,000.

**RESPONSE:**

Admit

11.   Benjamin Beall, D.O. was hired by Defendant to perform the job of Primary Care Clinician on January 13, 2010.

**RESPONSE:**

Admit

12.   Benjamin Beall, D.O.'s starting full-time salary as a Primary Care Clinician with Defendant was $120,000.

**RESPONSE:**

Admit

13.   Javed Akram, M.D. was hired by Defendant to perform the job of Primary Care Clinician in 2014.

**RESPONSE:**

Denied as phrased.  Dr. Akram was hired to perform the job of Primary Care Clinician on July 30, 2014.

14.    Javed Akram, M.D.'s starting full-time salary as a Primary Care Clinician with Defendant was $126,000.

**RESPONSE:**

Denied as phrased.  Dr. Akram was hired part time to perform the job of Primary Care Clinician on July 30, 2014 with a salary of $63,000.  He was classified as full time from October 1, 2014, until November 11, 2014, with a budgeted salary of $142,800, but returned to part time on November 12, 2014, to the present with a salary of $71,400 - $82,655.

15.    James Rampoldi was hired by Defendant to perform the job of Primary Care Clinician on January 21, 1998.

**RESPONSE:**

Admit

16.    James Rampoldi, M.D.'s starting full-time salary as a Primary Care Clinician with Defendant was $151,000.

**RESPONSE:**

Denied.  Dr. Rampoldi's starting full-time salary as a Primary Care Clinician with Defendant was $85,000.

17.    Victor Alvarez, M.D. was hired by Defendant to perform the job of Primary Care Clinician on August 4, 2010.

**RESPONSE:**

Admit

18.    Victor Alvarez, M.D.'s starting full-time salary as a Primary Care Clinician with Defendant was $156,000.

**RESPONSE:**

Denied as phrased.  Dr. Alvarez's part time salary as a Primary Care Clinician with Defendant was $78,000.

19.    Judith Graves, M.D. was hired by Defendant to perform the job of Primary Care Clinician in 2016.

**RESPONSE:**

Admit

20.     Judith Graves, M.D.'s starting full-time salary as a Primary Care Clinician with Defendant
        was $160,000.

        **RESPONSE:**

        Admit

21.     During the entirety of his employment with Defendant, Javed Akram, M.D. was not Board
        Certified in any medical specialty or subspecialty.

        **RESPONSE:**

        Denied as phrased.  Dr. Akram has been board certified in Internal Medicine/Infectious
        Disease since 2012.

22.     During the entirety of his employment with Defendant, James Rampoldi, M.D. was not
        Board Certified in any medical specialty or subspecialty.

        **RESPONSE:**

        Admit

23.     During the entirety of her employment with Defendant, Judith Graves, M.D. has not been
        Board Certified in any medical specialty or subspecialty.

        **RESPONSE:**

        Admit

24.     During the entirety of her employment with Defendant, Martha Storrie, M.D. was Board
        Certified in Urology.

        **RESPONSE:**

        Admitted in part and denied in part.  At the time Dr. Storrie was hired on October 29, 2008,
        she was Board Certified in Urology.  It is unknown if she remained board certified in
        Urology during the entirety of employment with Denton County. Dr. Storrie would be the
        person with the most and best knowledge to answer this request.

25.     The Denton County Commissioners Court never modified the starting salary paid to a
        Primary Care Clinician that was recommended by Bing Burton.

        **RESPONSE:**

        Denton County has made reasonable inquiry and the information known to it or which it can
        readily obtain is insufficient for it to either admit or deny this request.

26.     The Denton County Commissioners Court never modified the starting salary paid to a
        Primary Care Clinician that was recommended by Matt Richardson.

        **RESPONSE:**

        Admit.

# Denton County, Texas
## Classification Description

Classification Title:  Primary Care Clinician
Department:  Public Health – Clinical
Reports To:  Health Dept Director

Grade:  OFF
FLSA Status: E

## General Statement of Job

The Primary Care Clinician provides primary medical care for acute and chronic problems in both office and incarceration settings. This position assists in local disaster assistance efforts.

## Specific Duties and Responsibilities

Essential Duties:

Performs professional clinical work in providing primary health care to County residents and inmates as necessary.

Evaluates patients to determine health problems; documents evaluation according to established policies and procedures.

Educates patients on proper hygiene and healthy life style choices.

Documents all patient visits and prescribes medication as necessary.

Discusses cases and performs research as necessary.

Evaluates lab results and makes recommendations as necessary.

Coordinates and provides care for Health Department patients with ongoing medical conditions and counsels patients and family members.

Performs physical examinations on healthy and ill patients and obtains medical histories from patients; refers patients to specialists or emergency care and provides follow-up or ongoing care.

Examines, diagnoses, educates, and treats clients in health clinics.

Provides continuous medical care to patients with ongoing health problems.

Performs administrative duties in department including evaluating programs and assisting in development of policies and procedures.

Determines impact of health problems on patients and family members, and plans for continuation of health care.

Page 1 of 3



Δ π EXHIBIT 3
Deponent Phillips
Date 3/9/18   Rptr AU
WWW.DEPOBOOK.COM

Evergreen Solutions, LLC

Performs other related duties as required.

## Education, Experience, and Licenses

Bachelor's degree in related field required for this position.

Minimum three to five years of experience in a related field required; or an equivalent combination of education and related experience.

Physician

Licensed to practice medicine by the Texas Board of Medical Examiners.

Mid-Level Providers

Certification by the Texas Board of Nurse Examiners as an Advances Nurse Practitioner or Certification as a Physician Assistant by Texas Board of Medical Examiners.

## Knowledge, Skills, and Abilities

- Requires the ability to develop and maintain cooperative and courteous relationships with department employees, staffers and managers in other departments, representatives from organizations, and the general public so as to maintain good will toward the department and project a good departmental image.

- Requires the ability to tactfully and effectively handle requests, suggestions and complaints from other departments and persons in order to maintain good will within the County.

- Requires the ability to interact effectively with fellow employees, supervisors, professionals and the general public.

- Requires the ability to plan and organize daily work routine.

- Requires the ability to establish priorities for the completion of work in accordance with sound time-management methodology.

- Requires the ability to provide a work environment which is orderly and controlled.

- Requires the ability to understand the relationship between operating policies and practices and department morale and performance. Works to see that established policies enhance same.

- Requires the ability to use small office equipment, including copy machines or multi-line telephone systems.

- Requires the ability to use computers for word processing and/or accounting purposes.

Evergreen Solutions, LLC

## Physical Demands/Work Environment

Must be physically able to operate a variety of machinery and equipment. Must be able to exert up to 35 pounds of force occasionally, and/or up to 15 pounds of force frequently, and/or a negligible amount of force frequently or constantly to lift, carry, push, pull or otherwise move objects. Requires the ability to lift more than 20 pounds. Must have minimal levels of eye, hand, and foot coordination. Requires the ability to see, smell, hear, and speak. Requires color, texture, and depth perception.

NOTICE: The above job profile does not include all essential and nonessential duties of this job. All employees with disabilities are encouraged to contact the Human Resources Department to review and discuss the essential and nonessential functions of the job. An employee with a disability can evaluate the job in greater detail to determine if she/he can safely perform the essential function of this job with or without reasonable accommodation.

DISCLAIMER: Job profiles are not intended, nor should they be construed to be, an exhaustive list of all responsibilities, tasks, skills, efforts, working conditions, or similar behaviors, attributes or requirements associated with a job. A job profile is not a comprehensive job description. It is intended for the sole purpose of acquainting a person who is unfamiliar with such position with a brief overview of the position's general direction and scope. This position profile is intended for internal use only.

Evergreen Solutions, LLC

2A  Wednesday, August 12, 2015  Den...

## CALENDAR

### TODAY

**EVENTS**

**2 to 5 p.m. — Minecraft Meetup** for ages 8-17 at North Branch Library, 3020 N. Locust St. Bring your own device with Minecraft on it, or play on the library's iPads and Xbox 360. There will also be Minecraft crafts. Free. Call 940-349-8752 or visit www.dentonlibrary.com.

**4 to 5:30 p.m. — We Love Books** for ages 5-8 at Emily Fowler Central Library, 502 Oakland St. UNT early childhood students will bring some of their favorite children's books, lessons and enrichment activities to the library. Free. Call 940-349-8752 or visit www.dentonlibrary.com.

### WEDNESDAY

**CLUB MEETINGS**

**Denton Breakfast Kiwanis** meets from 6:30 to 7:30 a.m. at El Chaparral Grille, 324 E. McKinney St. Call 940-453-2688 or visit www.dentonbreakfastkiwanis.org.

**Denton Noon Kiwanis** meets at noon at First Baptist Denton, 1100 Malone St. Call 940-387-6323 or visit www.dentonkiwanisclub.org.

**SUPPORT GROUPS**

**Celebrate Recovery** meets at 6 p.m. at Singing Oaks Church of Christ, 101 Cardinal Drive. Call 940-387-4355.

**DivorceCare** support class meets from 7 to 9 p.m. at Crossroads Bible Church, 8101 FM407 in Double Oak. Call 972-355-3343 or visit www.divorcecare.org.

**GriefShare** support class meets from 7 to 9 p.m. at Crossroads Bible Church, 8101 FM407 in Double Oak. Call 972-355-3343 or visit www.griefshare.org.

**Grupo 18 de Marzo Alcoholicos Anonimos** meets from 7 to 8:30 p.m. at 100 W. Oak St. Call 940-231-9759.

**Mercy Heart**, a support program for families of inmates and for ex-offenders, meets from 6 to 8 p.m. at Denton Bible Church, 2300 E. University Drive. Free meal, free child care and classes for kindergarten through middle school. Call 940-297-6745.

**Primary Purpose Denton group of Alcoholics Anonymous** meets at 8 p.m. at 1524 N. Ruddell St.

**Recovery International Support** group, a cognitive behavioral training program, meets from 1 to 2:30 p.m. in Room 293 at Denton MHMR Center, 2519 Scripture St. Contact Esther Fidler at esther.fidler4.at.t.net or 469-671-0421.

**Serenity At-Noon**, a support group for family and friends dealing with the effects of someone's drinking, meets at noon at First United Methodist Church, 201 S. Locust St.

**Shalom Today group of Alcoholics Anonymous** meets at 9 a.m., noon, 6 p.m. and 8 p.m. weekdays at 3730 E. McKinney St., Suite 107. Call 940-383-8252.

**Show Me group of Alcoholics Anonymous** meets at 9 a.m., noon, 6 p.m. and 8 p.m. at 1622 W. University Drive, Suite 104. Call 940-566-9989.

**Stepping Stones**, a free socialization and activities program for persons with mild to moderate dementia, meets from 1:30 to 3 p.m. at Trinity Presbyterian Church, 2200 Bell Ave. Call 940-566-0902.

### THURSDAY

**EVENTS**

**7 a.m. to sellout — Denton County Farmers Market** at Sycamore Street and Carroll Boulevard. Visit www.dentonfarmersmarket.com.

**9:30 a.m. — Crafters' Corner** at Emily Fowler Central Library, 502 Oakland St. Work on projects and learn new techniques. Free. Call 940-349-8752 or visit www.dentonlibrary.com.

**3 p.m. — Back to School Crafts** for ages 13-17 at North Branch Library, 3020 N. Locust St. Create locker decor and decorate school supplies. Free, but registration is required. Call 940-349-8752 or visit www.dentonlibrary.com.

**5:30 to 7:30 p.m. — Opening reception** for Visual Arts Society of Texas annual members exhibition at UNT on the Square 109 N. Elm St. Free. Call 940-369-8257 or visit http://untonthesquare.unt.edu

## WEATHER

### NBC 5'S DENTON 3-DAY OUTLOOK



| | TODAY | THURSDAY | FRIDAY |
|---|---|---|---|
| | High 95 | Sunny and very warm | Sunny and very warm |
| | Winds northE at 5 to 15 mph | High 96, low 73 | High 96, low 73 |
| | Overnight low: 76 | | |

**Forecast for noon, Wednesday, Aug. 12, 2015**

Gray bands indicate high temperature zones for the day

Rain  Showers  T-Storms  Snow  Flurries  Ice

● AccuWeather.com

Forecasts and Graphics provided by AccuWeather, Inc. ©2015
3-day outlook provided by KXAS-TV

### ALMANAC

| Denton | High | Low |
|---|---|---|
| | 101 | 82 |

**PRECIPITATION**
24 hours (ending 5 p.m.) ... 0.00"
Month to date - 0.01"  Normal - 0.66"
Year to date - 29.13"  A year ago - 16.81"

### LAKE LEVELS

| | 7 a.m. today | Year ago |
|---|---|---|
| Ray Roberts Lake | 636.44 | 626.56 |
| Lewisville Lake | 526.67 | 516.85 |
| Grapevine Lake | 549.85 | 524.98 |
| Lake Texoma | 624.62 | 612.01 |
| Lake Bridgeport | 835.48 | 813.54 |

### NATIONAL DATA

| | Yesterday | | Today | | Tomorrow | |
|---|---|---|---|---|---|---|
| City | Hi | Lo | Prec | Hi | Lo | Far |
| Albuquerque | 88 | 67 | — | 91 | 64 | s |
| Amarillo | 87 | 66 | .25 | 87 | 64 | s |
| Atlanta | 90 | 72 | — | 88 | 68 | s |
| Austin | 102 | 68 | — | 104 | 76 | pc |
| Chicago | 82 | 65 | — | 79 | 64 | s |
| Denver | 88 | 58 | .02 | 90 | 63 | t |
| Detroit | 81 | 65 | trace | 76 | 59 | s |
| El Paso | 96 | 74 | .04 | 96 | 73 | s |
| Honolulu | 87 | 77 | — | 91 | 78 | pc |
| Houston | 104 | 90 | — | 106 | 77 | pc |
| Kansas City | 84 | 63 | — | 84 | 64 | s |
| Las Vegas | 102 | 83 | — | 96 | 79 | t |
| Los Angeles | 79 | 63 | — | 86 | 67 | pc |
| Mpls/St. Paul | 82 | 62 | — | 86 | 70 | t |
| New Orleans | 93 | 80 | — | 93 | 79 | t |
| New York | 84 | 71 | 1.17 | 84 | 67 | t |
| Orlando | 96 | 73 | — | 92 | 75 | t |
| Philadelphia | 81 | 71 | 0.73 | 84 | 66 | pc |
| Phoenix | 106 | 90 | .22 | 108 | 89 | pc |
| Portland | 88 | 63 | — | 90 | 64 | pc |
| San Francisco | 72 | 60 | — | 74 | 59 | pc |
| Seattle | 71 | 54 | — | 88 | 66 | s |
| Washington, DC | 85 | 72 | 0.15 | 86 | 69 | pc |

### SOLAR & LUNAR

Sunrise Today ............... 6:49 a.m.
Sunset tonight .............. 8:18 p.m.
Moonrise today ............. 5:03 a.m.
Moonset Wednesday ..... 6:56 p.m.

## BLOTTER

**Report: Pair attacks man outside his apartment**

Denton police are still looking for a motive in an attack Monday night outside a man's apartment.

According to a police report, two men known to the 14-year-old victim called the man out of his apartment in the 200 block of Coronado Drive. The men then proceeded to punch and kick the victim. Neighbors who witnessed the beating called the police.

The man was bandaged up at the scene and had a neighbor drive him to the hospital for stitches and further treatment, the report said.

**Other reports**

700 block of Fort Worth Drive — A gas station owner reported to Denton police that a man and woman stole CDs from inside the store Monday.

$3,000 in gift cards to a person claiming to be an attorney representing her grandson.

**2000 block of Mark Twain Lane** — Hand tools were stolen from a garage, the victim told police Monday.

**Roundup**

From 7 a.m. Monday to 7 a.m. Tuesday:

■ Denton police handled 298 service and officer-initiated calls and posted 24 reports online.

■ Denton firefighters responded to 14 medical calls, two smoke scares, two gas leaks, a person in distress, a vehicle accident with no injuries, an unintentional alarm and a service call.

— & Lewis

3800 block of Orangewood Trail — Denton police responded to a report of a 73-year-old woman who sent

*Denton County Crime Stoppers will pay a reward of up to $1,000 for information leading to an arrest in these or other crimes. Callers will remain anonymous. Call 1-800-388-TIPS (8477). Reach the Denton police narcotics tip line at 940-565-5801.*

## BRIEFLY
### IN THE AREA

**Shady Shores**

**Shady Shores Road open**

Shady Shores Road is now open for motorists after being closed for a couple of months following May's heavy rainfall.

According to a town news release, following Denton County's inspection and determination that the bridge at South Shady Shores Road is safe to drive on, Shady Shores officials opened the road.

However, the release notes the process of assessing the road is ongoing and there may be some repairs necessary in the near future.

— & Lewis

## ROAD WORK

**Avenue D** is closed permanently for UNT construction between Maple and Eagle streets.

**Bell Avenue** has lane closures for

Mack Drive.

**Milage Road** has road closures for culvert repairs between Mockingbird Lane and Sirius Road.

## TOP COUNTY SALARIES

Fifty-four of the 1,702 people who work for Denton County earn $100,000 per year or more. Another 680 employees earn more than Denton's median household income, which stood at $43,976 in 2013. Here are the top 10 annual salaries for both elected officials and employees as of August 2015.

**ELECTED TOP 10***

| Name | Annual salary |
|---|---|
| Joe Bridges, judge, County Criminal Court 4 | $153,454 |
| Jimmy Crouch, judge, County Criminal Court 1 | $153,454 |
| David Garcia, judge, County Criminal Court 3 | $153,454 |
| Kimberly McCary, judge, County Court at Law 1 | $153,454 |
| Robert Ramirez, judge, County Court at Law 2 | $153,454 |
| Bonnie Robison, judge, Probate Court | $153,454 |
| Virgil Vahlenkamp, judge, County Criminal Court 2 | $153,454 |
| Coby Waddill, judge, County Criminal Court 5 | $153,454 |
| William Travis, sheriff | $121,489 |
| Mary Horn, county judge | $117,025 |

*Does not include district judges and the district attorney, who are paid by the state.

**EMPLOYEE TOP 10**

| Name | Annual salary |
|---|---|
| Benjamin Beall, health authority | $180,933 |
| Jamie Gurley (Beck), first assistant district attorney | $177,187 |
| Marty Buchanan, primary care clinician | $170,000 |
| Michael Moore, criminal district attorney | $165,745 |
| John Feldt, criminal district attorney | $147,986 |
| Clifford Leftwigwell, dentist, jail health department | $145,818 |
| John "Matt" Richardson, health department director | $142,800 |
| Kevin Carr, chief information officer | $139,682 |
| David Jahn, associate judge | $138,109 |
| Martha Storrie, primary care clinician | $135,695 |

*Does not include district judges and the district attorney, who are paid by the state.
SOURCE: Denton County Auditor

**Denton Record-Chronicle**

Published daily by Denton Publishing Co., a subsidiary of A.H. Belo Corporation

314 E. Hickory St., Denton, TX 76201
(USPS 154986)
E-mail: drc@dentonrc.com

**TO REACH US**
Classified ............... 940-387-7756
Circulation .............. 940-566-6836

If you missed delivery, call by 10 a.m. daily and noon on Sunday.



**Weld...**

**BREYER INVE...**
**REDUCTION**

# DENTON COUNTY'S RESPONSE TO REQUEST FOR INFORMATION

**EEOC Charge No. 450-2016-02176**
**Charging Party:  Martha Storrie**

1.   For each Primary Care Clinician **employed by Denton County Health** Department between January 1, 2009 and present**, please provide the following:**

   a.   Application and resume;

   The resumes/applications of each physician PCC (Beall, Buchanan, Rampoldi, Hall-Hoskins, Alvarez, Ambavarum, Akram, Graves) are attached as Exhibit 1-A.  Since you already have them, Dr. Storrie's are not included (see exhbits to Position Statement).  Non-physician PCC information has not been included, since the RFI appears to only seek information about physicians (see, e.g, reference in subsection e. below to "the doctor").  However, if that is not a correct understanding of the RFI, non-physician PCC resumes/applications, etc., can be quickly supplied upon request.

   b.   **Whether hired for fulltime or part-time position;**

   | Part-time: | Full-time: |
   |---|---|
   | Akram | Beall |
   | Alvarez | Buchanan |
   | Hall-Hoskins | Rampoldi |
   | | Ambavarum |
   | | Graves |

   c.   **Payroll history at Denton County (if not already provided);**

   The payroll history for each physician PCC is attached as Exhibit 1-B

   d.   **Number of hours worked per week;**

   | Full-time: | 40 |
   |---|---|

   Part-time:

   | Akram: | 18 (avg.) |
   |---|---|
   | Alvarez: | Payment records, attached as Exhibit 1-C, 1-D and 1-E, show that Dr. Alvarez' schedule varied from week to week.  For |

example, over a two week period, he might work 55 hours (27.5/week), or 28 hours (14/week).

Hall-Hoskins:   No records.  Hall-Hoskins was employed for four months in 2007.   Kronos time records only date back to 2008.

**e.   Identify which facility the doctor worked in for Denton County;**

Department Director Matt Richardson has no knowledge of or records from which to ascertain which PCCs worked in which facilities prior to his becoming Director.  The following information concerns physician PCCs working since July of 2014.

Buchanan:

| | |
|---|---|
| Denton Clinic: | Primary location |
| Lewisville Clinic: | Rarely |
| Jail Clinic: | Intermittent—depends on schedule |

Storrie:

| | |
|---|---|
| Denton Clinic: | Rarely if ever, not during my tenure |
| Lewisville Clinic: | Primary |
| Jail Clinic: | Intermittent, but half-time at the end of her tenure, by her request |

Akram:

| | |
|---|---|
| Denton Clinic: | Intermittent |
| Lewisville Clinic: | Intermittent |
| Jail Clinic: | Intermittent |

Graves:

| | |
|---|---|
| Denton Clinic: | Rarely |
| Lewisville Clinic: | Primary |
| Jail Clinic: | Rarely |

**f.   Decision maker involved in hiring the PCC;**

Bing Burton (Department Director until July of 2014):

Alvarez
Hall-Hoskins

> Storrie
> Rampoldi
> Beall
> Ambavarum

Matt Richardson (Department Director since July 2014):

> Buchanan
> Graves
> Akram - In the case of Dr. Akram, Bing Burton conducted the hiring process, making the hire and salary recommendation to Commissioners Court. He retired before the recommendation was approved. Commissioners Court approved the recommendation shortly after Matt Richardson became Director. Following that approval, Dr. Richardson made the formal offer.

**g. Any Commissioners Court minutes relating to the hiring of the PCC and/or his/her salary**

There are no Commissioners Court minutes relating to the hiring of any PCC and/or his/her salary.

**2. For each Primary Care Clinician employed by the Denton County Health Department between January 1, 2009, and present, please provide the following information for each physician at the time of their application for the position of PCC:**

**a. Description of applicant's experience as a physician;**

For physician experience, see the applicable application/resume (Exhibit 1-A).

**b. Applicant's board certification;**

> Buchanan: Internal Medicine - 1996
> Storrie:    Urology - 1992

For additional information concerning experience and certifications, see the applicable resume/application (Exhibit 1-A).

**Description of applicant's experience with low-income clients;**

See the application/resume information attached herein as Exhibits 1-A. Information, if any, responsive to this request would be that reflected in the applicable application/resume.

**c. Description of applicant's experience with clients of all ages;**

Information, if any, responsive to this request would be that reflected in the applicable application/resume (Exhibit 1-A). For example, prior experience working in an Emergency department/clinic would be an indication of prior experience with people of all ages.

**d.  Whether or not applicant was employed at the time of application;**

The following information is taken directly from the applicable application/resume:

Graves:       Application indicates "present" employment with Hamlin Hospital District

Akram:        Application indicates employment "to 5/2014" (application date is 5/27/2014) with Texas Infectious Disease Associates

Buchanan:     Application indicates "present" employment as partner physician - Northeast Tarrant Internal Medicine Associates, LLP.

Alvarez:      Application of July 2010 does not indicate present employment. Dr. Alvarez had retired from employment as Denton County Health Authority in June of 2008.  He returned as a part-time PCC in August of 2010.

Beall:        Application of 2009 (see Exhibit 1-A) indicates employment, on application date, as Primary Care Physician with PrimaCare Clinic.

Ambavaram:    Application does not indicate present employment. Application dated August 1, 2010 indicates Dr. Ambavaram received Texas Medical License in July of 2010.

Hall-Hoskins: Application indicates "present" employment with Concentra Medical Centers (see resume).

Rampoldi:     Application indicates present employment as private practice physician.

Storrie:      Application of 10/10/2008 indicates "present" employment since 9/1/2008 with Journey Hospice.  October 2009 application does not list Journey Hospice.  Both applications list employment with Faith Hospice that ended in July (2008 application) or August (2009 application) of 2007.

**e.  Applicant's salary history before working for County of Denton.**

Salary history information, if any, would be as indicated in the applicable application/resume (Exhibit 1-A).

**f.  Salary amount the applicant was seeking**

Buchanan:

Dr. Buchanan's application (see Exhibit 1-A) lists "$170,000.00" in "Preferred Salary" box.

Ambavarum:

Dr. Ambavaram's application (see Exhibit 1-A) lists "$100,000.00" in "Preferred Salary" box.

The other physician's applications do not list any preferred salary.

**3. Describe the criteria for how salaries are calculated for new hires, including but not limited to:**

**a.  How qualifications and experience are assessed;**

According to Department Director Matt Richardson, County hiring policy, education and board certification status, and primary care experience are considered.

**b.  The degree to which negotiations are involved in the process and how they are recorded;**

According to Department Director Matt Richardson:

Negotiations are limited: Director would already have market analysis prior to conditional offer; Applicants would state a salary requirement; Director would use market analysis along with education and board certification status, and primary care experience as a starting point (with input from HR).  If agreement on amount was reached, Director submits conditional offer to Commissioners Court for final approval.

**c.  The process for determining how much of an initial offer will be made and the degree of leeway given for negotiations, if any;**

The PCC position is unique in that there is no salary range.  The Director conducts a market analysis, then decides on a salary recommendation based on that market analysis, and on the applicant's education and board certification status and primary care experience.   The Director submits the conditional offer amount to Commissioners Court for approval.  If approved, Director then makes formal offer of approved salary. If not approved, offer cannot be made.

d. **How all factors are weighed against one another and the budgeted maximum for the position?**

> As stated above, the PCC position is unlike all other county positions in that it has no salary range. Commissioners Court either approves or rejects the salary recommendation made by the Director. If rejected, no offer is made.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:17-CV-614** |
| | § | |
| **DENTON COUNTY** | § | |

## DEFENDANT DENTON COUNTY'S
## ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, **DENTON COUNTY**, Defendant in the above-styled cause, and files this their ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND to PLAINTIFF'S ORIGINAL COMPLAINT, and in support would show unto the Court:

### I.
### ANSWER

1.  Concerning the allegations contained the unnumbered introductory paragraph ["Nature Of The Action"' of the COMPLAINT, Defendant Denton County acknowledges that the U.S. Equal Employment Opportunity Commission ("EEOC"), on behalf of former employee Dr. Martha Storrie, is bringing a claim under the Equal Pay Act of 1963. Defendant denies the remainder of the allegations made against them in said Paragraph; denies Plaintiff's allegations against them have any merit; denies that they have any liability whatsoever to Plaintiff; and denies that Plaintiff is entitled to recover any damages whatsoever from them herein.

2.  Concerning the allegations contained in Paragraph 1 of the COMPLAINT, Defendant admits that this Court has subject matter jurisdiction, but denies that it has any liability under the cited statutes.

3.  Concerning the allegations contained in Paragraph 2 of the COMPLAINT, Defendant admits that venue is proper in the Eastern District of Texas, Sherman Division, but denies that it has any liability or committed alleged "unlawful" employment practices.

Appendix  0019

4.      Concerning the allegations contained in Paragraph 3 of the COMPLAINT, Defendant admits that the U.S. Equal Employment Opportunity Commission is an agency for the United States charged with administration, interpretation and enforcement of the Equal Pay Act and is authorized to bring this action, but denies that the EEOC's internal determination is final or binding upon Defendant as that decision is solely within the province of this Court and jury.

5.      Concerning the allegations contained in Paragraph 4 of the COMPLAINT, Defendant admits that it is a county in the State of Texas.

6.      Concerning the allegations contained in Paragraph 5 of the COMPLAINT, Defendant admits that it is an employer as defined by the cited statutes.

7.      Concerning the allegations contained in Paragraph 6 of the COMPLAINT, Defendant admits that it has employed employees as defined in the cited statutes.

8.      Concerning the allegations contained in Paragraph 8 of the COMPLAINT, Defendant denies the allegations made against them in said Paragraph; denies that the Plaintiff's allegations against them have any merit; denies that they have any liability whatsoever to the Plaintiff; and denies that the Plaintiff is entitled to recover any damages whatsoever from them herein.

9.      Concerning the allegations contained in Paragraph 8(a) of the COMPLAINT, Defendant admits that it hired Dr. Storrie as a part time Primary Care Clinician in the Denton County Health Department on October 29, 2008, she was promoted to full-time status on December 1, 2009, and terminated on April 1, 2016, after she had been verbally and formally counseled concerning her lack of professionalism, courtesy and respect of co-workers and patients.

10.     Concerning the allegations contained in Paragraph 8(b) of the COMPLAINT, Defendant admits that part of the job duties of a Primary Care Clinician are to provide medical care and healthcare for Denton County residents run by the county, including providing medical care at the jail to incarcerated individuals, but the job duties are more fully set forth in the job description for such position.

11.     Concerning the allegations contained in Paragraph 8© of the COMPLAINT, Defendant admits that the starting salary for the Primary Care Clinician is recommended by the Director of Public Health to the Denton County Commissioners Court, which then may reject, accept or modify the proposed salary offer. Defendant admits that there is no written schedule setting the starting salary for Primary Care Clinician for Denton County because physicians are highly trained professionals whose services directly impact the life and health of their

patients, and thus, to place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents. Denton County admits that the Director of Public Health has discretion to recommend the amount of starting salary for a Primary Care Clinician based on a variety of factors [other than sex] which include job performance-related experience and expertise, current market conditions, the requested salary of the applicant, and the County's obligation to be a good steward of public funds and obtain qualified physicians while maximizing tax resources.

12.     Concerning the allegations contained in Paragraph 8(d) of the COMPLAINT, Defendant admits that Denton County hired Dr. Marty Buchanan, a male, on August 5, 2015, to begin as a Primary Care Clinician, with a starting salary more than Dr. Storrie, because Dr. Buchanan's experience and expertise in the primary care specialty of internal medicine greatly exceeded that of Dr. Storrie. When she was hired, Dr. Storrie was a Urologist with zero years of primary care experience and zero years of experience in infectious diseases. She held no board certifications in infectious disease or in any primary care specialty such as family practice, pediatrics or internal medicine [and she still did not at the time of her firing]. Conversely, when he was hired Dr. Buchanan had 21 years of primary care experience and was board certified in internal medicine, a primary care specialty.  When Dr. Buchanan was hired, Dr. Storrie had been a Primary Care Clinician with Denton County for approximately 5 ½ years, following approximately 1 year part-time.  Dr. Buchanan's general primary care experienced exceeded Dr. Storrie's experience by nearly 15 years.  The difference between Dr. Storrie's salary and Dr. Buchanan's salary was not based on sex, but rather, due to a variety of factors, most significantly the differences in their respective experience, training and ability that related to job performance and otherwise benefitted Denton County citizens.

13.     Concerning the allegations contained in Paragraph 8(e) of the COMPLAINT, Defendant admits that during Dr. Storrie's employment with Denton County some - - but not all[1] - - other male physicians in the position of Primary Care Clinician were paid higher wages and/or compensation than Dr. Storrie since each doctor's salary was determined on a variety of factors resulting in a salary appropriate for each candidate.

---

[1] For example, when Dr. Benjamin Beall [who is now the Health Authority] was hired on January 13, 2010, his starting salary was exactly the same as Dr. Storrie until Dr. Beall was eventually promoted on August 4, 2010.

**DENTON COUNTY'S ANSWER**                                                                                    PAGE 3
T:\233\5\5010\68093\Pleadings\County\Answer.wpd

Appendix  0021

14.     Concerning the allegations contained in Paragraph 8(f) of the COMPLAINT, Defendant admits that Dr. Storrie performed work for Denton County in a position requiring equal skill, effort and responsibility under similar working conditions and, for most of the time, at the same Denton County facilities as the male Primary Care Clinician.

15.     Concerning the allegations contained in Paragraph 8(g) of the COMPLAINT, Defendant admits that during her employment with Denton County Dr. Storrie complained about many things, including her salary, and was clearly advised that her salary was based on a variety of factors. She did not request a raise and there was nothing to "remedy" as Dr. Storrie was being fairly and adequately compensated given the level of her training, experience and certification.

16.     Concerning the allegations contained in Paragraph 9 of the COMPLAINT, Defendant denies the allegations made against them in said Paragraph; denies that the Plaintiff's allegations against them have any merit; denies that they have any liability whatsoever to the Plaintiff; and denies that the Plaintiff is entitled to recover any damages whatsoever from them herein.

17.     Concerning the allegations contained in Paragraph 10 of the COMPLAINT, Defendant denies the allegations made against them in said Paragraph; denies that the Plaintiff's allegations against them have any merit; denies that they have any liability whatsoever to the Plaintiff; and denies that the Plaintiff is entitled to recover any damages whatsoever from them herein.

18.     Concerning the allegations contained in the unnumbered paragraph ["Prayer for Relief"] of the COMPLAINT, Defendant denies that the Plaintiff is entitled to any relief or recovery of damages from them; denies that the Plaintiff's allegations against them have any merit; that Defendant has any liability whatsoever to the Plaintiff; and deny that the Plaintiff is entitled to recover any damages or equitable relief whatsoever from them herein.

## II.
## <u>AFFIRMATIVE DEFENSES</u>

Denton County alleges that it currently has insufficient knowledge or information upon which to determine whether additional affirmative defenses may be available to it which have not been asserted in this ANSWER as set out below and, therefore, reserves the right to assert additional affirmative defenses based on subsequent discovery, investigation and analysis. Subject to and without waiving its right to amend and add additional Affirmative Defenses, if necessary, Denton County invokes and asserts the following Affirmative Defenses:

**DENTON COUNTY'S ANSWER**                                                         PAGE 4
T:\233\3\5010\68093\Pleadings\County\Answer.wpd

1.    The EEOC, on behalf of Dr. Storrie, has failed to state a claim against Denton County upon which relief can be granted.  This lawsuit should be dismissed with prejudice and the Court should grant Denton County any and all other relief to which the County is justly entitled.

2.    Denton County will show that it had a legitimate, non-discriminatory reason for paying Dr. Storrie the salary that she willingly accepted for the position of Primary Care Clinician; indeed her pay was consistent with her relevant work experience and expertise, market factors,  her salary history, and other such factors which are completely unrelated to her sex. Thus, to the extent that there was a wage differential between Dr. Storrie and other male doctors, it was not based upon Dr. Storrie's sex.

3.    Denton County acted in good faith and did not engage in any form of unlawful discrimination.

4.    To the extent that Dr. Storrie failed to mitigate her damages, her recovery of damages is barred, or alternatively, must be reduced.

5.    Denton County will show that its actions were taken in good faith and in a reasonable manner in attempting to comply with all applicable laws and regulations, and none of its actions were willful or wanton.  Nor did Denton County take any action with reckless disregard to any protected rights, and all decisions were consistent with prudent business judgment as a governmental entity serving as a steward of taxpayer dollars.

6.    Denton County will show that Dr. Storrie is ineligible for any requested "front pay damages" or "reinstatement" as she was terminated from her employment for cause on April 1, 2016, and her termination was affirmed by the Denton County Civil Service Commission on May 12, 2016, a determination she did not appeal. Such termination is final and she cannot subjugate the finding of the Denton County Civil Service Commission through this litigation.

6.    The EEOC's allegations fail to state specific facts to support a claim for punitive damages, and further, any putative violation of the Equal Pay Act was not willful and Plaintiff's damages, if any, are therefore limited to a period of no more than two years.

7.    Denton County would further show that Plaintiff's claims are barred to the extent that she failed to exhaust administrative remedies, failed to exhaust Denton County's internal grievance procedures and the Denton County Civil Service Commission rules and procedures, or otherwise failed to comply with procedural prerequisites to bring claims for damages as alleged in this lawsuit.

**DENTON COUNTY'S ANSWER**                                                                                                        **PAGE 5**
T:\233\5\3010\68093\Pleadings\County\Answer.wpd

### III.
### UNCLEAN HANDS DOCTRINE BARS CLAIMS OF EEOC AND DR. STORRIE

1.      Denton County further invokes the equitable doctrine of "unclean hands" and would show that by virtue of Dr. Storrie's discriminatory, abusive, unprofessional, and other wrongful conduct, the EEOC and Dr. Storrie should be completely barred from any recovery against Denton County. It hardly seems fair to allow the EEOC to swoop in on Dr. Storrie's behalf to pursue claims against Denton County for money and punitive damages[2] regarding Dr. Storrie's salary - - even requesting "reinstatement"[3] of Dr. Storrie - - when Dr. Storrie was terminated for failing to professionally perform her duties as a Primary Care Clinician.   Quite simply, neither the EEOC nor Dr. Storrie should benefit from the termination of an employee who exhibited entirely unacceptable behavior, particularly a health care provider tasked with treating the most needy in the community.

2.      A copy of the NOTICE OF TERMINATION OF EMPLOYMENT dated April 1, 2016, attached as Exhibit No 1, underscores the inequity of allowing this lawsuit to proceed.  The Director of Denton County Health [Matt Richardson] wrote that "you have been verbally and formally counseled on several occasions regarding your lack of professionalism, courtesy and respect of team members."[4] He also noted that "Your negativity and lack of teamwork continues to erode morale and efforts for building a positive culture."[5]   Director Richardson continued in the NOTICE to explain why Dr. Storrie could no longer work for Denton County.[6]

3.      Most importantly, the NOTICE details the highly inappropriate racially derogatory comments that Dr. Storrie not only made, but also wrote in patient records, concerning Hispanic patients and inmates she evaluated and treated.  For example:

---

[2]Not only does the EEOC want "backpay" For Dr. Storrie, it also wants "an equal sum as liquidated damages" for itself.  See, i.e., Plaintiff's Complaint, "Prayer for Relief", paragraph C.

[3]See, i.e., Plaintiff's COMPLAINT, paragraph 13 (requesting judgment "requiring Denton County to make whole Dr. Martha C. Storrie by providing . . . reinstatement").

[4]See, NOTICE OF TERMINATION OF EMPLOYMENT, EX. 1

[5]See, NOTICE OF TERMINATION OF EMPLOYMENT, EX. 1

[6]See, NOTICE OF TERMINATION OF EMPLOYMENT, EX. 1

Appendix  0024

\*     In the same meeting, you made an inappropriate comment about patient care regarding lab tests and denying them based on assumption of patient compliance. Your comment, witnessed by all, was "why would we do that test? What does it matter when they won't change their behavior? They just go eat more tortillas and meat." When pressed, you continued to assert that the test was not helpful with "this population that won't change, so why bother?" This concerns me regarding your clinical practice and treatment of vulnerable populations, particularly with a discriminatory comment like this.

\*     Finally, you referred to a patient, in the electronic medical record on 3-28-16, as a "roly-poly HF (Hispanic female)". This type of derogatory and discriminatory comment is completely inappropriate and unacceptable and, unfortunately, remains in a permanent clinical record. We have a zero tolerance for discrimination and this comment, combined with the comment regarding the patient care, calls your clinical priorities/motivations into question.

4.     It is no wonder that after hearing all the evidence regarding Dr. Storrie's conduct that the Denton County Civil Service Commission affirmed her termination on May 16, 2016. A copy of their Order is attached as Exhibit No. 2. Dr. Storrie did not appeal the Civil Service Commission's decision to a District Court for further review as allowed by law, likely knowing that it would be likely futile given the evidence against her which supported her termination.

5.     Unclean Hands is further applicable because Dr. Storrie's purported concerns about her salary were tepidly made, and even then, only after she began receiving disciplinary actions for the type of behavior described above. As early as March and June of 2015 Dr. Storrie was being disciplined for inappropriate behavior, but it was not until August of 2015 - - during a performance review critiquing her performance failures - - that she mentioned a newspaper article about County salaries and the pay for Dr. Buchanan. Dr. Storrie did not ask for a raise and continued to accept her substantial $120,000 yearly salary for another 8 months without complaint, until she was fired.

6.     Tellingly, it was only after she was fired that Dr. Storrie decided to submit a CHARGE OF DISCRIMINATION with the EEOC, limiting it to a specific time period compared to Dr. Buchanan. A copy of the CHARGE OF DISCRIMINATION is attached as Exhibit No. 3. While Dr. Storrie may now suggest she feared to make complaints about her salary, such posturing must be weighed against the fact that she is a highly educated doctor who was, at least at Civil Service proceedings, represented by experienced Counsel who is well-versed in Denton County grievance procedures.

**DENTON COUNTY'S ANSWER**                                                 **PAGE 7**
T:\233\S\5010\68093\Pleadings\County\Answer.wpd

## IV.
## JURY DEMAND

Denton County hereby demands a trial by jury.

**WHEREFORE, PREMISES CONSIDERED,** Defendant **DENTON COUNTY,** prays that Plaintiff take nothing against them; that they recover their reasonable attorney's fees and costs incurred in defending themselves from the Plaintiff's federal claims; and that they have such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully submitted,

By:    /s/ Robert J. Davis
            **ROBERT J. DAVIS**
            State Bar No. 05543500
            Bdavis@mssattorneys.com
            **JUSTIN W. STEPHENS**
            State Bar No. 24090762
            jstephens@mssattorneys.com
            **MATTHEWS, SHIELS, KNOTT,**
            **EDEN, DAVIS & BEANLAND, L.L.P.**
            8131 LBJ Freeway, Suite 700
            Dallas, Texas 75251
            972/234-3400 (office)
            972/234-1750 (telecopier)

            **ATTORNEY FOR DEFENDANT**
            **DENTON COUNTY**

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2017, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:  Suzanne Anderson, Robert Canino, Brandi McKay and Shelby Douglas.

            /s/ Robert J. Davis
            **ROBERT J. DAVIS**

Appendix  0026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:17-CV-614** |
| | § | |
| **DENTON COUNTY** | § | |

**EXHIBIT NO. 1**

**TO**

**DEFENDANT DENTON COUNTY'S**
**ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND**




April 1, 2016

<u>Notice of Termination of Employment</u>

Dr. Storrie,

As we have discussed this week, you have been verbally and formally counseled on several occasions regarding your lack of professionalism, courtesy and respect of team members. This letter of intent to terminate employment is a response to your performance failures on Wednesday, March 16 and Friday, March 18th, 2016. On Wednesday, you participated in our provider meeting and brought several concerns. While those concerns may have been appropriate for discussion, you presented them in an unprofessional, disrespectful and inflammatory way. You accused supervisory staff of withholding communication and information. You made these comments in a disruptive fashion, punctuating your statement with "I'm not stupid, just tell me what I need to know and quit treating me like a child!" No information about supplies or scheduling was withheld from you. Also, no explanation was given why you believed you were being treated inappropriately—this was an outburst without substantive discussion or reference.

In the same meeting, you made an inappropriate comment about patient care regarding lab tests and denying them based on assumption of patient compliance. Your comment, witnessed by all, was "why would we do that test? What does it matter when they won't change their behavior? They just go eat more tortillas and meat." When pressed, you continued to assert that the test was not helpful with "this population that won't change, so why bother?" This concerns me regarding your clinical practice and treatment of vulnerable populations, particularly with a discriminatory comment like this.

Your performance failure continued on Friday as you violated Denton County policy once again in our staff training events. You asked a question regarding our DSRIP program, on a detail which you'd already discussed with the program manager. Despite there being absolutely no useful purpose for doing so, you chose to use this group setting to challenge him about this detail again. Your tone was confrontational, negative and accusational. This particular detail concerned the use of certain State-mandated inclusion criteria. Despite being already fully aware that its use is completely mandatory, you accused the program manager of arbitrarily withholding treatment for those patients not meeting the criteria. You identified no justification for this unjust accusation, nor did you identify or explain what possible purpose you had in

making it. Later that same training, you challenged our WIC director on nutrition policy in a public, disrespectful fashion that caused 4 people to report it to me as unprofessional and offensive. You accused the nutrition staff of encouraging high-sugar fruit juice as a healthy food choice, continuing to argue and debate when the staff member explained the state WIC package. Your continued argument and accusation was not constructive, helpful or professional. Your negativity and lack of teamwork continues to erode morale and efforts for building a positive culture.

Finally, you referred to a patient, in the electronic medical record on 3-28-16, as a "roly-poly HF (Hispanic female)". This type of derogatory and discriminatory comment is completely inappropriate and unacceptable and, unfortunately, remains in a permanent clinical record. We have a zero tolerance for discrimination and this comment, combined with the comment regarding the patient care, calls your clinical priorities/motivations into question.

Upon receipt of the intent to terminate on March 29th, you were notified that you will be carried on paid administrative leave until a final decision is determined. You were notified that you were given the opportunity to respond to the charges by 5:00 pm on March 31, 2016 and your response was directed to my attention in writing. I considered your response in consultation with Human Resources before making my final decision.

In your response, you offered no argument or mitigating circumstance for your comments and actions in the last few weeks. Because your behavior has continued to call your judgement into question in the examples outlined above, I am left with no choice but to proceed with the termination, effective 5:00 pm, today April 1, 2016.

Pursuant to the Denton County Civil Service Rules, you have the right to appeal to the Denton County Civil Service Commission. In addition, you may contact Melody Graham in HR regarding benefit information after employment and I have attached HR Policy 5.4 regarding Employee Notice of Resignation/Termination. You may also contact HR if you desire an Exit Interview. This Notice of Termination has been sent VIA email to the last email on file with Denton County, cecile.storrie@gmail.com, as well as by Certified Mail. Confirmation of receipt of this notice will be either by email receipt notice or by signature of receipt of the Certified Mail.


Delivered by:

Matt Richardson, DrPH, MPH
Director

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:17-CV-614** |
| | § | |
| **DENTON COUNTY** | § | |

**EXHIBIT NO. 2**

**TO**

**DEFENDANT DENTON COUNTY'S**
**ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND**



# DENTON COUNTY CIVIL SERVICE COMMISSION

| Cameron Cox | **Jeffrey Tasker** | Peggy Fox |
|---|---|---|
| *Commissioner* | *Chair* | *Commissioner* |

Thursday, May 12, 2016

*In Re: Civil Service Appeal of* **Marth Storrie**

After careful consideration of the evidence, the Denton County Civil Service Commission hereby:

_____ ✓ affirms action taken by the Appointing Authority

_____ reverses action taken by the Appointing Authority

_____ with backpay
_____ without backpay

_____ modifies action taken by the Appointing Authority as follows:

_____

_____

Effective Date: _May 12, 2016_

*So Ordered.*

_____
Jeffrey Tasker, Chair

_____
Cameron Cox, Commissioner

_____
Peggy Fox, Commissioner

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY §
COMMISSION                     §
                               §
v.                             §       CASE NO. 4:17-CV-614
                               §
DENTON COUNTY                  §

EXHIBIT 3

TO

DEFENDANT DENTON COUNTY'S
ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act<br>Statement and other information before completing this form. | Charge Presented To: |  Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 450-2016-02176 |

|  Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Martha C. Storrie** | | |

| Street Address | City, State and ZIP Code |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **DENTON COUNTY HEALTH DEPT.** | REC'D V 200 - 500 | (940) 349-2900 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **190 North Valley Pkwy,  Suite 203, Lewisville, TX 75067** | | APR 0 4 2016 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | EQUAL EMPLOYMENT<br>OPPORTUNITY COMMISSION<br>DALLAS DISTRICT | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest: 08-12-2015  Latest: 04-01-2016 |
| ☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**PERSONAL HARM:**
From approximately June 2015 until April 1, 2016 I was paid less than Marty Buchanan, Primary Care Clinician.

**RESPONDENT'S REASON FOR ADVERSE ACTION:**
I was told by Matt Richardson, Director that Dr. Buchanan was worth more.

**DISCRIMINATION STATEMENT:**
I believe I have been discriminated against because of my sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>*Martha C. Storrie* |
| Apr 04, 2016      *Martha C. Storrie*<br><br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>4/4/16  *Kevin C. Heard* |

CP Enclosure with EEOC Form 5 (11/09)

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    FORM NUMBER/TITLE/DATE.  EEOC Form 5, Charge of Discrimination (11/09).

2.    AUTHORITY.  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    PRINCIPAL PURPOSES.  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    ROUTINE USES.  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



# PAUL JOHNSON

### CRIMINAL DISTRICT ATTORNEY

### CIVIL DIVISION

John Feldt, *Chief*
Claire Yancey
Moira Schilke
Bill Schultz
Mary Miller
Karen Anders
Matt Shovlin

*1450 East McKinney, Suite 3100*
*P. O. Box 2850*
*Denton, Texas 76202*
*(940) 349-2750*
*Fax (940) 349-2751*

May 13, 2016

Rosemary Walker
EEOC
207 S. Houston St.
3rd Floor
Dallas, Texas 75202

> Re: EEOC Charge No.: 450-2016-02176
> Charging Party: Martha C. Storrie

The information provided in this position statement is based on Denton County's current understanding of the available evidence. Should any additional relevant information be revealed after the submission of this statement, Denton County reserves the right to submit that information. Further, Denton County's submission of information during the course of this investigation in no way constitutes a waiver of any available defenses or objections that it may seek to raise at a later time in this or any other proceeding. In accordance with all applicable law, the information provided by Denton County during the course of this investigation shall be treated as sensitive, kept confidential, and not disclosed to any third parties, except as required by law.

Dear Ms. Walker:

## I. FACTS

Martha C. Storrie became an employee of the Denton County Health Department when she was hired to fill the part-time position of Primary Care Clinician on October 29, 2008. On December 1, 2009, Dr. Storrie was changed to full-time status. Dr. Storrie held the position of Primary Care Clinician until she was terminated on April 1, 2016.

On April 4, 2016, Dr. Storrie filed the attached Charge of Discrimination with the EEOC.  In it, Dr. Storrie alleges gender discrimination.

Denton County has performed a thorough investigation into Dr. Storrie's claim and finds no evidence to support it. Therefore, Denton County respectfully requests that this charge be dismissed in its entirety.

### A.  Exhibits

The following exhibits are attached an incorporated herein:

**Exhibit A:**   A copy of the current job description for Primary Care Clinician

**Exhibit B:**   A copy of Dr. Storrie's Denton County (HR) personnel file.

**Exhibit C:**   A copy of Dr. Marty Buchanan's Denton County salary history

**Exhibit D:**   A copy of Dr. Marty Buchanan's employment application

**Exhibit E:**   Texas Medical Board Physician Profile – Dr. Martha Storrie

**Exhibit F:**   Texas Medical Board Physician Profile – Dr. Marty Buchanan

Certain personal information (Social Security/DL Numbers, home address/phone) has been redacted from these exhibits.

### B.  Background

#### (1) Primary Care Clinician salary

The job description for Primary Care Clinician (**Exhibit A**), contains a general description of the position's duties.  As the title indicates, it describes the provision of primary health care services to County residents and inmates that include:

- Evaluating patients to determine health problems
- Educating patients about proper hygiene and healthy lifestyle choices
- Evaluating lab results and making necessary recommendations
- Coordination and provision of care for patients with ongoing medical conditions, counseling patients and family members. and recommendations
- Evaluating lab results and making recommendations as necessary.
- Coordinating/providing continuous care for patients with ongoing medical conditions and counseling patients and family members.
- Performing physical examinations on healthy and ill patients and obtaining medical histories from patients; referring patients to specialists or emergency care and providing follow-up or ongoing care.
- Examining, diagnosing, educating, and treating clients in health clinics.
- Determining impact of health problems on patients and family members, and planning for continuation of health care.

Appendix  0036

Pursuant to §152.011 of the Texas Local Government Code, Denton County Commissioners Court sets the amount of the compensation for county employees who are paid wholly from county funds. Commissioners Court has elected to assign a pre-set salary range for most, but not all county employee positions.

Denton County does not assign a pre-set salary range for the position of Primary Care Clinician. Because physicians are highly-trained professionals whose services directly impact the life and health of their human patients, the capability and competence of the individual physician is of utmost importance.  To place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents.  Physician salaries, which are high and wide-ranging, must therefore be negotiable on a case-by-case basis.

After the Primary Care Clinician position is posted, applicants are screened an interviewed. If the Health Department Director is interested in offering the position to an applicant, he must determine what salary to offer.  Because all salaries must be set by Commissioners Court, the Director cannot make a binding offer of employment until after the salary he proposes has been submitted to and approved by the Court.

In determining what salary to offer a particular applicant, the Director must necessarily consider the salaries of physicians providing similar services. The salaries of physicians in private practice are considered, as well as those of physicians employed by other public entities (other public health departments, hospital districts). Additional factors that the Director may consider include:

- The length and degree of applicant's experience as a physician generally
- The length and degree of applicant's experience as a primary care physician and/or in the treatment of infectious disease
- Applicant's board certification in a primary care specialty (e.g. family practice, pediatrics, internal medicine) and/or in the specialty of infectious disease.
- The length and degree of the applicant's experience with clients of all ages
- The length and degree of the applicant's experience with low-income clients
- Impact on Department's budget
- Likelihood that Commissioners Court will approve the amount
- Whether the applicant is currently employed or unemployed
- The applicant's salary history
- The salary amount the applicant is seeking
- The salary amount the applicant is willing to accept

After considering the relevant factors, the Director determines a salary that he believes will fairly compensate the applicant, and that the applicant has agreed to accept upon formal offer following Commissioners Court approval. Following Commissioners Court approval, the Director will extend a formal offer of employment to the applicant at the approved salary.

### (2) Salaries of Dr. Storrie and Dr. Buchanan

Dr. Storrie's complete Denton County salary history (see Exhibit B-1, Page 1) is as follows:

| | | |
|---|---|---|
| 10-29-08 | New Hire (part-time) | 56,265 |
| 12/01/09 | Full-time | 120,000 |
| 10/01/10 | No increase | 120,000 |
| 10/01/11 | Annual increase | 122,400 |

EEOC - 000092

| 10/01/12 | Annual increase | 125,459 |
| 10/01/13 | Annual increase | 130,476 |
| 10/01/14 | Annual increase | 135,695 |
| 10/01/15 | Annual increase | 142,480 |
| 04/01/16 | Termination | 142,480 |

When Dr. Storrie was hired in 2008, she was offered and accepted a part-time salary of $56,265. (**Exhibit B-1, Pages, 1, 13-14**). As described above, this amount was submitted for Commissioners Court approval following Health Department Director Bing Burton's assessment of the relevant criteria and Dr. Storrie's assurance that she would, if offered, accept the job at that salary. (**Exhibit B-1, Pages 1, 13-14**). When Dr. Storrie became a full-time employee on December 1, 2009, her salary was increased to $120,000, the full-time equivalent of her part-time salary of $56,265. (**Exhibit B-1, Pages 1, 4-6**). Commissioners Court did not authorize a county employee salary increase for FY 2011. In other words, like all other county employees, Dr. Storrie did not receive a salary increase effective 10/01/10. (**Exhibit B-1, Page 1**). Commissioners Court did authorize county employee salary increases for Fiscal Years 2012-2016, and the percentage increases Dr. Storrie received on Oct 1st of 2012, 2013, 2014, and 2015 were the same percentage increases received by all other county employees on those dates. At the time of her separation on April 1, 2016, Dr. Storrie's salary was $142,480. (**Exhibit B-1, Page 1**).

On August 5, 2015 Dr. Marty Buchanan was hired as a full-time Primary Care Clinician ("PCC") by Matt Richardson, who replaced Bing Burton as Health Department Director in July of 2014.  Dr. Buchanan was hired at and currently receives a salary of $170,000. Because he had not yet been employed by the County for 6 months, Dr. Buchanan did not receive the county employee salary increase that became effective on October 1, 2015. (**See Exhibit C**).

### (3) Differences

At the time of her hiring, Dr. Storrie, a Urologist, had 0 years of primary care experience, and 0 years of experience in infectious disease.  She held no board certification in infectious disease or in any primary care specialty, such as family practice, pediatrics or internal medicine (and did not as of her separation). (**Exhibit E**). When Dr. Buchanan was hired, Dr. Storrie had been a full-time PCC for approximately 5 ½ years, following approximately one year part-time. (see **Exhibit B-1, Pages 1, 11-12**).

At the time of his hiring, Dr. Buchanan had <u>21</u> years of primary care experience and was board certified in internal medicine, a primary care specialty. (**Exhibit F**).  Dr. Buchanan's general primary care experience therefore exceeded Dr. Storrie's by nearly 15 years. Dr. Buchanan's experience and expertise in the primary care specialty of internal medicine also greatly exceeds Dr. Storrie's.

Further, Dr. Buchanan was employed in private practice when he applied/was hired. (**Exhibit D, Page 1**). In other words, he did not need to take the position at a salary lower than the $170K he requested. (**Exhibit D, Page 1**). Department Director Matt Richardson considered Dr. Buchanan the ideal candidate precisely due to his long experience as a primary care physician with a board certification in Internal Medicine. Since 2014, Director Richardson has used Human Resources recommendations as well as market survey information in evaluating salary. Director Richardson confirms that Dr. Buchanan was hired at below the market average for public or private employment.

EEOC - 000093

### (4)  Charge allegation

In her Charge, Dr. Storrie alleges that she "was told by Matt Richardson that Doctor Buchanan was worth more." This is an apparent reference to a brief discussion that took place during Dr. Storrie's August 2015 employee appraisal. During that meeting, Dr. Storrie presented Director Richardson with a newspaper article that published a list of Denton County employee salaries. Noting Dr. Buchanan's higher salary, she commented to Director Richardson, "I've always heard that women were paid less than men, but didn't believe it until I saw this." Director Richardson responded that while her initial salary was negotiated by his predecessor, there were significant differences in experience and expertise to justify the difference. Dr. Storrie did not question or challenge this response or allege that her salary should be higher, and although she said she would like to make more money, she did not request a raise.

### II.    Analysis

Dr. Storrie claims she was discriminated against because "from approximately June 2015 to April 2016," she "was paid less" than Dr. Marty Buchanan. As reflected above, Dr. Buchanan's salary initially (for less than two months in 2015) exceeded Dr. Storrie's by $34,305. From October 1, 2015 through April 1, 2016 (18 months), Dr. Buchanan's salary exceeded Dr. Storrie's by $27,520.

The difference between Dr. Storrie's salary and Dr. Buchanan's was based on factors other than sex. Specifically, it was based on differences in experience, training and ability that relate to job performance and otherwise benefit Denton County, and on applicable market factors.

### A.  Salary difference is based on factors other than sex

Dr. Buchanan's higher salary is entirely attributable to his greater experience and expertise in the primary care field. In addition, Dr. Buchanan, who was employed at the time of his application, was offered the salary he requested, while Dr. Storrie was willing to accept the salary offered by Director Bing Burton.

### III. CONCLUSION

For the reasons stated herein, we respectfully ask that Dr. Storrie's charge be dismissed.

Thank you.

Moira Schilke
Assistant District Attorney
Denton County Criminal District Attorney
1450 E. McKinney, Suite 3100
Denton, Texas 76209
(940) 349-2711

# DENTON COUNTY



## Storrie, Martha C.

**SALARY HISTORY**

081209

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Termination | 4/1/2016 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $142,480.00 |
| Annual Increase | 10/1/2015 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $142,480.00 |
| Annual Increase | 10/1/2014 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $135,695.00 |
| Annual Increase | 10/1/2013 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $130,476.00 |
| Annual Increase | 10/1/2012 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $125,459.00 |
| Annual Increase | 10/1/2011 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $122,400.00 |
| No Increase | 10/1/2010 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $120,000.00 |
| Lateral | 12/1/2009 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $120,000.00 |
| New Pay Plan | 10/1/2009 | Public Health - Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $56,265.00 |
| New Hire | 10/29/2008 | Public Health - Clinical | B813 | 031-HD | Primary Care Clinician | | $56,265.00 |

April 01, 2016

## Denton County  Termination Report for Payroll

**Empl. ID:** 081209

**First Name:** Martha

**Last Name:** Storrie

**Middle Name** C

**Soc. Sec. # :** 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    **Sex:** F

**Birthdate:** September 08, 1956

**Hire Date:** October 29, 2008

**G/L Code:** 34-7015

**Pos./Org.** 010-HD    NG108

**ADDR1:** 229 Merriman Drive

**ADDR2:**

**CITY - ST - ZIPCODE :** Highland Village, TX  75077

**Home A/C & Phone:** (972) 965-2126

**Personal e-mail Address:** cecile.storrie@gmail.com

**Work Location:** 19    Lee Walker Government  Bldg B

_____ Regular

_____ Vacation

_____ Sick

_____ Holiday

_____ Comp

_____ Total Hours Due

| **Termination Date:** | April 01, 2016 |
| **Termination Code:** | T5200 |

**Salary Data:** 5480.000 Per:  S    **Per:** S    **Std. Hours :** 80    **Pay Grade :** OFF

**Payroll Group** SFT

**Tax Group:** TXTX    **Annual Pay:** $142,480.00

### BENEFITS ENROLLED IN:

| | | | |
|---|---|---|---|
| HDP | HESD | May 01, 2015 | August 31, 2015 |
| OPT | OUT | December 01, 2008 | June 30, 2010 |
| NOD | OUT | December 01, 2008 | June 30, 2010 |
| GLF | EO | December 01, 2008 | December 31, 2013 |
| FXM | Y | January 01, 2011 | December 31, 2011 |
| EPO | EO | July 01, 2010 | December 31, 2011 |
| PEB | EO | July 01, 2010 | December 31, 2011 |
| HDP | EF | January 01, 2016 | |
| HDP | ES | May 01, 2015 | August 31, 2015 |
| PEB | ES | May 01, 2015 | August 31, 2015 |
| PEB | ESD | May 01, 2015 | August 31, 2015 |
| PEB | EFD | September 01, 2015 | December 31, 2015 |
| PEB | EFD | September 01, 2015 | December 31, 2015 |
| HDP | HEFD | September 01, 2015 | December 31, 2015 |
| HDP | HEFD | September 01, 2015 | December 31, 2015 |
| HSW | EO | November 01, 2015 | December 31, 2015 |
| VIS | EO | January 01, 2015 | December 31, 2015 |
| HDP | HEFD | January 01, 2016 | |

Appendix  0041

Benjamin Beall  *  March 13, 2018

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EQUAL EMPLOYMENT          §
OPPORTUNITY COMMISSION,   §
                         §
        Plaintiff,       §
                         §
vs.                      §   CIVIL ACTION NO.
                         §   4:17-CV-614
                         §
DENTON COUNTY,           §
                         §
        Defendant.       §

-----------------------------------

ORAL AND VIDEOTAPED DEPOSITION OF

BENJAMIN BEALL

MARCH 13, 2018

-----------------------------------

     ORAL AND VIDEOTAPED DEPOSITION OF BENJAMIN BEALL,

produced as a witness at the instance of the Plaintiff

and duly sworn, was taken in the above-styled and

numbered cause on the 13th day of March, 2018, from

12:50 p.m. to 3:20 p.m., before Jamie Prince Hess,

Certified Shorthand Reporter in and for the State of

Benjamin Beall  *  March 13, 2018

Page 28

1    it listed publicly somewhere?  Was the vacancy listed

2    somewhere?

3        A.    I don't know that.

4        Q.    Were you interviewed for the promotion to

5    health authority?

6        A.    Was I interviewed?

7        Q.    Yes.

8        A.    Yes.

9        Q.    And who interviewed you?

10       A.    Dr. Burton.

11       Q.    Anybody else?

12       A.    No.

13       Q.    Now, in your work for Denton County as a

14   primary care clinician and health authority, did you

15   ever have to treat a patient with a urinary tract

16   infection?

17       A.    Yes.

18       Q.    And did you have any patients at Denton County

19   complain of symptoms relating to prostate enlargement?

20       A.    Yes.

21       Q.    Have you ever had patients at Denton County

22   with kidney stones?

23       A.    Yes.

24       Q.    At Denton County, was all your work conducted

25   in English?

Benjamin Beall   *   March 13, 2018

Page 51

1      A.   To be vested in the money that had been taken

2  out of my pay, which was significant.

3      Q.   And at the time that your retirement date was

4  coming up, was there some sort of succession plan for

5  your position?

6      A.   Not that I knew about.

7      Q.   We touched on it briefly, but I'd like to talk

8  about it a little more.  What was your professional

9  opinion about Dr. Storrie?

10     A.   Well, first off, I liked her, and I thought

11 she was asked to do some things medically that were

12 pretty much beyond her training and I never heard her

13 complain about that.  She was easy to work for, as far

14 as I was concerned, and was reliable and showed up on

15 time, and those are things that I consider assets.

16     Q.   What were the types of things that you felt

17 she was asked to do that were beyond her training?

18     A.   Well, she was trained in urology, if I

19 understand things correctly, and she was also doing

20 some -- I'll think of it in a minute -- hospice work,

21 and those don't prepare you for seeing 3-year-olds and

22 kids with, you know, a lot of infections, but she did a

23 good job.

24     Q.   After you were promoted to the position of

25 health authority, did you become Dr. Storrie's

Benjamin Beall  *  March 13, 2018

Page 53

1      Q.   Did you ever feel that she was unable to

2  perform her job adequately?

3      A.   No.

4      Q.   Do you have any opinions about what you

5  observed when you saw Dr. Storrie with the clinical

6  staff?

7      A.   Well, she was capable of speaking her mind,

8  but I think it oughta be that way.

9      Q.   Were you ever involved in any type of

10  reprimand or verbal counseling of Dr. Storrie?

11      A.   One time.

12      Q.   Can you tell us about that?

13      A.   Well, apparently she'd had some conflict with

14  the staff.  And I'm talking about the people that work

15  up front in our office in Lewisville.  And something was

16  noted in the medical record that the staff read and was

17  upset about, brought it to Dr. Richardson's attention

18  and he asked me if I would go with him to talk to her

19  about that and I said yes.

20           That's the reason I'm wrestling a little bit

21  with the date of this document.  I can't remember when

22  that was, but it's got to be pretty close to that time,

23  I think.

24      Q.   We've heard some --

25      A.   Can you tell me about that?

Benjamin Beall  *  March 13, 2018

Page 75

1    A.    Mainly because they -- most people at the jail

2   are very neglected or they're very noncompliant and

3   maybe they've had medical care and they just refuse to

4   take it or do what they're supposed to do.

5        Q.    If someone comes in with a kidney stone, is

6   that something y'all treat at the health clinic or do

7   you refer them out?

8        A.    Well, it would depend.  You know, if it was a

9   minor thing, we might try to treat them because they

10  didn't have money, and money's always a problem for our

11  patients.  But kidney stones are like everything else,

12  they come in all varieties and sizes and severity and

13  sometimes they can be passed just with some medication

14  and increased fluid intake.

15       Q.    Let me ask you this, Doctor:  If you were to

16  pick between a background in urology and a background in

17  family practice, which one do you think would be a

18  better fit at the public health clinic?

19       A.    I think family practice.

20       Q.    And why is that?

21       A.    There's only one certification in all of

22  medicine that treats people from beginning to end.

23       Q.    And what is that?

24       A.    And that's family practice.

25       Q.    Not urology?

Benjamin Beall  *  March 13, 2018

Page 88

1    Signature page contains any changes and the reasons

2    therefor;

3                  _____ was not requested by the deponent

4    or a party before the completion of the deposition.

5                  That the amount of time used by each

6    party at the time of the deposition is as follows:

7         Ms. Suzanne M. Anderson - 01:33
          Ms. Brandi J. McKay     - 00:17
8         Mr. Robert J. Davis     - 00:29

9

10                 I further certify that I am neither

11   counsel for, related to, nor employed by any of the

12   parties or attorneys in the action in which this

13   proceeding was taken, and further that I am not

14   financially or otherwise interested in the outcome of

15   this action.

16                 Certified to by me on this _____ day

17   of _____, _____.

18

19

20

21                 _____

22   JAMIE PRINCE HESS, TEXAS CSR #6761
     Expiration Date:  12/31/18
     Usher Reporting Services
23   Firm Registration No. 588
     1326 Lochness Drive
24   Allen, Texas  75013
     (214) 755-1612

25

Appendix  0047

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY)
COMMISSION,                  )
                             )
     Plaintiff,              )
                             ) CIVIL ACTION NO.
VS.                          )
                             ) 4:17-CV-614
DENTON COUNTY,               )
                             )
     Defendant.              )


**************************************************
VOLUME 1
ORAL AND VIDEOTAPED DEPOSITION OF
BING BURTON
MARCH 16, 2018
**************************************************




     ORAL DEPOSITION OF BING BURTON, produced as a
witness at the instance of the Plaintiff, and duly
sworn, was taken in the above-styled and numbered
cause on the 16th day of March, 2018, at 9:31 a.m. to
1:13 p.m., before Laurie Purdy, CSR, in and for the
State of Texas, reported by machine shorthand, at the
Denton County Precinct 3 Government Center, 400 N.
Valley Parkway, in the City of Lewisville, State of
Texas, pursuant to the Federal Rules of Civil
Procedure and the provisions stated on the record or
attached hereto.

Bing Burton   *   March 16, 2018

Page 26

1      Q.    Now, that's within your employment?

2      A.    Certainly.

3      Q.    Now, did you have any involvement in

4  drafting this job description?

5      A.    I would have had input into it, yes.

6      Q.    Okay.  And what would that input have been?

7      A.    I would have reviewed it.  So this says

8  Evergreen Solutions.  They worked closely with human

9  resources to generate these job descriptions.  But

10  human resources would have consulted with me.  I

11  would have had an opportunity to review it and offer

12  an opinion as to, yeah, I think it would meet our

13  needs.

14      Q.    Okay.  And this was the classification

15  description or job description for all of the primary

16  care clinicians at Denton County; is that right?

17      A.    Within this time frame.

18      Q.    Okay.  Right.  So I guess what I'm asking

19  is, there's not a separate -- separate job

20  description for a primary care clinician who worked

21  at the jail or one who worked at the clinic?

22      A.    No.

23      Q.    And is it true, the primary care

24  clinicians, they had responsibilities for -- for all

25  of the facilities at Denton County?

Bing Burton   *   March 16, 2018

Page 71

1          Q.   Can you tell, was the amount paid to

2     Dr. Storrie within the budget or in excess of the

3     budgeted amount?

4          A.   It was less than the budgeted amount.

5          Q.   Okay.  And do you recall in -- and did you

6     interview Dr. Storrie?

7          A.   I did.

8          Q.   In interviewing Dr. Storrie, did she

9     negotiate the amount that you offered her?

10         A.   I offered her 120,000.  She said, That

11    sounds good to me.

12         Q.   Okay.

13         A.   That was the extent of our negotiation.

14         Q.   Okay.  And you remember that clearly?

15         A.   I remember it specifically.

16         Q.   Okay.  And that amount -- that amount was

17    less than the budgeted salary amount?

18         A.   Yes, it was.

19         Q.   Okay.  And why did you make the decision to

20    offer her less than the budgeted amount?

21         A.   120,000 was, in my mind, a reasonable

22    starting salary.  You notice that physicians who are

23    with us for a number of years, their salary goes up.

24    And so if I'd offered her 150, that would have been

25    offering her the same, as a brand-new hire, as

Bing Burton   *   March 16, 2018

Page 77

1      Q.    Yeah.  Go towards the end of the packet --

2      A.    Okay.

3      Q.    -- because they're backwards.

4      A.    Okay.

5      Q.    Okay.  So if she started work in January of

6    2008 -- is that right?  That is not right.  She

7    started work in October of 2008.

8      A.    She's not full time then?

9      Q.    She started full time in -- in December of

10   2009.

11     A.    New hire October 2008.  Oh, okay.  Okay.

12   Okay.

13     Q.    Okay.  So this would be -- this annual

14   performance appraisal, supervisor, Bing Burton.

15     A.    Yes.

16     Q.    From July 1st, 2008, to June 30th, 2009?

17     A.    Yes.

18     Q.    Okay.  And is this the performance

19   appraisal that you gave her?

20     A.    I don't see my signature or her signature,

21   but I believe it to be.

22     Q.    Okay.  So ordinarily did both you and the

23   primary care clinician sign these performance

24   appraisals?

25     A.    Yes.

Bing Burton  *  March 16, 2018

Page 78

1       Q.    Okay.  Now, when we deposed the human

2   resources director, Amy Phillips, she said that

3   these -- she testified that the performance ratings

4   are on a 1 to 5 scale.  Is that --

5       A.    Yes.

6       Q.    -- what you recall?

7       A.    Yes.

8       Q.    Okay.  With 5 being outstanding, 4 exceeds

9   expectations, 3 meets expectations?

10      A.    Yes.

11      Q.    That's what you remember, also.  Okay.  So

12  if we take a look at Dr. Storrie's appraisal, this

13  first appraisal July '08 to June '09, her final score

14  is 4.70.

15      A.    That's correct.

16      Q.    And that's certainly pretty close to

17  outstanding actually, isn't it?

18      A.    Yes, it is.  I might have been guilty of

19  inflating evaluations, and I did for everybody.  This

20  would not have been -- so 4.7 is a very good

21  evaluation.

22      Q.    Okay.  And that's a true evaluation?  You

23  didn't think she was a horrible employee or you would

24  not have given this to her?

25      A.    I certainly didn't think she was a horrible

Bing Burton  *  March 16, 2018

Page 79

1   employee.

2        Q.   Okay.  That's correct.

3             So let's take a look at the next

4   evaluation July '09 to June 2010.  And on this we

5   have two documents.  We have the overall score sheet,

6   and then we have this evaluation -- employee

7   evaluation report.

8        A.   Yes.

9        Q.   Do you recognize that document?

10       A.   Yes.

11       Q.   Okay.  And is this employee evaluation

12  report something that you would have filled out for

13  the primary care clinician?

14       A.   Yes, it is.

15       Q.   And is this something you would have given

16  the primary care clinicians in telling them what

17  their -- how their performance has been for the past

18  year?

19       A.   Yes.

20       Q.   Okay.  And if we take a look at the

21  employee evaluation report, it indicates that she

22  transitioned from part-time to full-time employee; is

23  that right?

24       A.   Yes.

25       Q.   Okay.  And if we take a look at the

Bing Burton   *   March 16, 2018

Page 80

1    corresponding overall score on the employee

2    appraisal, it's 4.18; is that correct?

3        A.   Yes.

4        Q.   And, again, that is above exceeds

5    expectations?

6        A.   Yes, it is.

7        Q.   Okay.  Let's take a look at --

8        A.   Before we leave that one, on this page

9    (indicating) --

10        Q.   On which page?  The employee evaluation

11   report?

12        A.   Yes.

13        Q.   Correct.

14        A.   Under improvements required and/or

15   needed --

16        Q.   Yes.

17        A.   "In what areas does the employee need to

18   improve?"  "Strive to treat every patient and every

19   staff member with courtesy and respect."  I

20   specifically put that in there because I was

21   disappointed that Dr. Storrie was struggling some

22   with some of our clients and with some of our staff.

23        Q.   But yet if you look over at this employee

24   appraisal for '09 to 2010, under teamwork she's still

25   rated a 4, which is exceeds expectations.  That's

Bing Burton   *   March 16, 2018

Page 81

1    right, isn't it?

2         A.    It's not a 5.  I suspect I gave her a 5 the

3    year before, but I don't know that.  But I did put

4    that in there intentionally to call to her attention,

5    this is something I need you to work on.  This is

6    improvement required and/or needed.

7         Q.    Let's take a look at the next employee

8    appraisal --

9         A.    Okay.

10        Q.    -- from 2010 to 2011.  And on this document

11   it indicates that relations with superiors, external

12   communications, cooperation with other departments,

13   teamwork are all rated 4, which is exceeds

14   expectations; is that correct?

15        A.    Yes.

16        Q.    And oral communication is a 5, which is

17   outstanding; is that correct?

18        A.    Yes.

19        Q.    And that 4.5 overall score appears to go up

20   from the year before of 4.18?

21        A.    It certainly is higher than the year

22   before.

23        Q.    Let's look at the next employee appraisal,

24   2011 to 2012.  In this evaluation -- let's see here.

25   Relations with superiors and external communications

Bing Burton   *   March 16, 2018

Page 82

1    are 5s, teamwork is 4, oral communication is a 5, and

2    her overall score goes up again still.

3            A.    Pretty good evaluation.

4            Q.    Yeah.  2012 to 2013, it goes up to 4.84 as

5    an overall score.

6            A.    Another good evaluation.

7            Q.    And it's improving over time; is that

8    right?

9            A.    (Witness nods head.)

10           Q.    So let's take a look at the next page on

11   the employee evaluation report.

12           A.    Yes.

13           Q.    This is for 2013/2014.  And this indicates

14   under 2, under employee strong points, good

15   interactions with clinical staff.

16           A.    Yes.  You'll see right under that,

17   "Continue to work at sustaining strong relationships

18   both internally and externally."

19           Q.    And if you take a look to the left on the

20   employee appraisal --

21           A.    Yes.

22           Q.    -- for 2013/2014, under teamwork, it's up

23   to a 5, which is the highest score she can get --

24           A.    Yes.

25           Q.    -- is that right?

Bing Burton   *   March 16, 2018

Page 83

1        A.    Uh-huh.

2        Q.    And now that's your last appraisal of

3   Dr. Storrie before you retired; is that correct?

4        A.    Yes, uh-huh.

5        Q.    And her final score is 4.87?

6        A.    (Witness nods head.)

7        Q.    Were you involved in hiring Dr. Marty

8   Buchanan?

9        A.    No.

10       Q.    He was hired in August 2015.  That would be

11   after you retired?

12       A.    Yes.

13       Q.    Were you involved in setting his salary in

14   any way?

15       A.    Not in any way.

16       Q.    Did Dr. Richardson talk with you at all

17   about your methods for setting salaries or hiring

18   PCCs?

19       A.    Not at all.

20       Q.    Okay.  Did you know Dr. Richardson before

21   he took over the position as health department

22   director?

23       A.    I did.

24       Q.    And how did you know Dr. Richardson?

25       A.    I had employed him as a program director

Bing Burton   *   March 16, 2018

Page 113

1      A.    My sense was it was going pretty well

2   there.

3      Q.    Did you ever speak with anyone employed at

4   the jail about Dr. Storrie's performance?

5      A.    Certainly.

6      Q.    Were those positive evaluations?

7      A.    She -- she seemed to be doing a very

8   competent job with inmate medical needs.

9      Q.    Do you know if anyone ever complained about

10  her performance --

11     A.    I don't know of anyone complaining.

12     Q.    -- within the jail?

13           Okay.  Okay.  So if an individual or

14  primary care clinician wanted to make a complaint of

15  discrimination, how would that process work at

16  Denton County?  Who would you make the complaint to?

17     A.    I -- I guess there would be two avenues.

18  The most obvious to me is through human resources.

19     Q.    Did anyone ever make a complaint

20  specifically to you?

21     A.    That would have been the other avenue, and

22  I don't believe that happened.

23     Q.    Do you know if primary care clinicians are

24  counseled on how they can make complaints?

25     A.    Not to my knowledge.

Bing Burton   *   March 16, 2018

Page 115

1       Q.   (By Ms. Douglas)  Okay.  If you don't know,

2    that's fine.

3              Okay.  Do you know if Dr. Storrie

4    treated patients with respect overall?

5              MR. DAVIS:  Object to the form of that

6    question.

7       Q.   (By Ms. Douglas)  Only if you know.

8              MR. DAVIS:  Repeat my objection.

9       A.   I'll just say what was in my evaluation,

10   that I encouraged her to treat every client and staff

11   member with courtesy and respect.  That would

12   indicate that I had concerns along those lines.

13             MS. DOUGLAS:  Okay.  I'll pass the

14   witness.

15                      EXAMINATION

16   BY MR. DAVIS:

17      Q.   Good afternoon, Dr. Burton.  Thank you for

18   coming back from retirement and talking to the ladies

19   and gentlemen of the jury about your work at Denton

20   County for nearly 22 years.

21             You were there, time frame, from 1992

22   until June of 2014 when you retired; is that correct?

23      A.   That's correct.

24      Q.   You were not the department head when

25   Dr. Buchanan was hired in August of 2015, were you,

Bing Burton   *   March 16, 2018

Page 158

1        That $_____ is the deposition officer's

2   charges to the Plaintiff for preparing the original

3   deposition transcript and any copies of exhibits;

4        I further certify that I am neither counsel for,

5   related to, nor employed by any of the parties or

6   attorneys in the action in which proceeding was

7   taken, and further that I am not financially or

8   otherwise interested in the outcome of the action.

9

10       Certified to by me this 10th day of April,

11  2018.

12

13

14

15       _____
         LAURIE PURDY, CSR 5933

16       Certification Expires: 12-31-2018
         Firm Registration No. 588

17       Usher Reporting Services
         1326 Lochness Drive

18       Allen, Texas 75013
         214.755.1612

19       214.547.0822 (fax)
         Karen@usherreporting.com

20       www.usherreporting.com

21

22

23

24

25

Marty Buchanan  *  March 5, 2018

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EQUAL EMPLOYMENT            )
OPPORTUNITY COMMISSION,     )
                            )
                            )
            PLAINTIFF,      )
                            ) CIVIL ACTION
VS.                         )
                            ) NO.: 4:17-cv-614
                            )
DENTON COUNTY,              )
                            )
                            )
            DEFENDANT.      )

-----------------------------------

ORAL DEPOSITION OF

MARTY BUCHANAN, M.D.

March 5, 2018

-----------------------------------

ORAL DEPOSITION OF MARTY BUCHANAN, M.D., produced
as a witness at the instance of the PLAINTIFF, and duly
sworn, was taken in the above-styled and numbered cause
on the 5th of March, 2018, from 1:06 p.m. to 4:33  p.m.,
before Mary Karen Usher, CSR in and for the State of
Texas, reported by machine shorthand, at the Denton
County Technology Services Department Building, 701
Kimberly Drive, Denton, Texas, pursuant to the Federal
Rules of Civil Procedure.

Marty Buchanan   *   March 5, 2018

Page 27

1   no --

2        A.   It wasn't concrete where they would be --

3        Q.   Okay.

4        A.   -- or what they would be doing.

5        Q.   Okay.  And if we take a look at the second

6   page of Exhibit Number 2 under Education, Experience and

7   License, it does not indicate that any board

8   certification is required; is that correct?

9        A.   That's correct.

10       Q.   Okay.  So when you -- during the time that you

11  were a primary care clinician from, let's say, August

12  15th through the time that you were asked to do

13  assistant medical director responsibilities, describe to

14  me what was your day-to-day?  What was your work like in

15  that position?

16       A.   It was primarily seeing patients, but I would

17  also have to do some chart reviewing of the nurse

18  practitioners.

19       Q.   Okay.  And what type of -- was there a type of

20  medical conditions that you saw most often?

21       A.   Are you asking -- yeah, in terms of what

22  presented most frequently --

23       Q.   Yes.

24       A.   -- to be seen?

25       Q.   Uh-huh.

Marty Buchanan  *  March 5, 2018

Page 31

1   diabetics would see a retinal specialist if they were

2   having hemorrhage in the eye.

3       Q.   Okay.  Now, in your work as a primary care

4   clinician for Denton County, did you ever have to treat

5   someone who had a urinary tract infection?

6       A.   Sure.

7       Q.   In your work here at Denton County as a

8   primary care clinician, did you ever have patients who

9   complained of symptoms relating to prostate enlargement?

10      A.   Yes, ma'am.

11      Q.   Did you ever have patients with kidney stones?

12      A.   Yes, ma'am.

13      Q.   And in your work as a primary care clinician

14  at Denton County, did you end up -- did you ever treat

15  patients who had some type of STD?

16      A.   Yes, ma'am.

17      Q.   And in your work as a primary care clinician,

18  was that work all conducted in English?

19      A.   No.

20      Q.   Okay.  Do you speak any other language?

21      A.   I have a serviceable, lame Spanish.  And the

22  nurses will tell you, sometimes they -- they know I can

23  get through an encounter on my own, but not always.

24      Q.   Okay.

25      A.   When I have any shyness about that, I will ask

Marty Buchanan   *   March 5, 2018

Page 39

1  Dr. Richardson about the position, did you discuss a

2  salary with him at that first meeting?

3      A.   I don't think so.

4      Q.   Okay.

5      A.   I don't remember anything about that.

6      Q.   So let's look at Exhibit 8, which is your

7  application.  Did you complete this application by

8  yourself or did anyone help you with that?

9      A.   I might have gotten some assistance from the

10  administrative secretary in the health department.

11      Q.   And who is that?

12      A.   Tammy Eoff.

13      Q.   Will you spell her last name for me?

14      A.   E-O-F-F.

15      Q.   And how do you know Ms. Eoff?

16      A.   Well, she works at the health department, and

17  she's -- again, she's an administrative secretary, so

18  she deals with a number of issues that are paperwork and

19  so forth.

20      Q.   Did you know her prior to your application?

21      A.   No, ma'am.

22      Q.   Okay.  If you take a look at this application,

23  it says, "Preferred Salary, 170,000 per year."

24           Did you put that number in there?

25      A.   I probably physically put it in there, but it

Marty Buchanan   *   March 5, 2018

Page 40

1    was not a number that I generated on my own.

2         Q.    Where did you -- how did you arrive at that?

3         A.    That may have been what I was told to -- that

4    I would be offered for the position.

5         Q.    And who told you what you would be offered?

6         A.    I believe Dr. Richardson did.

7         Q.    So in your meeting with Dr. Richardson, then,

8    did he offer you the position on that first meeting?

9         A.    No.

10        Q.    Did you meet again a second time?

11        A.    This is what I'm having a hard time with,

12   trying to remember, because Matt and I have had a meal

13   together twice, and the second time, I believe, was a

14   welcome to the health department.  I don't think it was

15   before I was actually officially employed.  But at 60

16   years, my gears slip a -- you know, and these are not

17   things that I care to remember until there was a need

18   for it, so -- but I think that's true.  It was probably

19   after the fact.  And so there was the one visit, and

20   then there was some texting and so forth.

21             It was kind of -- he wants to understand

22   what my interest is in the position still, am I in

23   earnest about my interest or am I -- is he in

24   competition with someone else for employ -- you know, me

25   seeking a job.  And so there were a few back and forths.

Marty Buchanan   *   March 5, 2018

Page 51

1    application, Exhibit Number 8, I guess on the second

2    page, under Certificates and Licenses, it says, "Type:

3    Diplomate American Board of Internal Medicine."  Can you

4    explain what that is, please?

5          A.    That is a board certification.

6          Q.    And when did you receive that?

7          A.    The first time was in 1996.

8          Q.    And since receiving that board certification

9    in internal medicine, have you received any other board

10   certifications?

11         A.    It's a 10-year cycle.

12         Q.    Okay.

13         A.    So for 20 years.

14         Q.    And other than internal medicine, do you have

15   any other certification?

16         A.    For medical, no.

17         Q.    Okay.  What about for anything else?

18         A.    In terms of experience or --

19         Q.    I'm just wondering if you have any other type

20   of certification or licensing.

21         A.    Oh.  No certification or licensing, no.

22         Q.    Okay.  If we can look down at the references

23   you've listed, can you tell me if any of these

24   references have worked for Denton County?

25         A.    No, not to my knowledge.

Marty Buchanan   *   March 5, 2018

Page 98

1   internal medicine and primary care?

2        A.   Since I left my residency training, which was

3   1994.

4        Q.   And are the skills and experience you have in

5   board certified internal medicine directly applicable to

6   the work that you now do or you certainly did as a

7   primary care clinician in Denton County?

8        A.   Yes.

9        Q.   Basically, what you were trained to do, what

10  you did in your residency, and what you did in private

11  practice is substantially similar, if not exactly the

12  same, that you did as a primary care clinician in Denton

13  County?

14       A.   It's fundamentally the same.  I'm going to

15  clarify for you --

16       Q.   Sure.  Absolutely.

17       A.   -- because I think it's common knowledge.  I

18  am not currently board certified.

19       Q.   Okay.  That's true.  Your board certification

20  lasts for a period of how long?

21       A.   Ten years.  I'm board eligible.  I'll remain

22  board eligible, but I did not pursue recertification.

23       Q.   Kind of like lawyers could be board eligible

24  to be personal injury specialists or board --

25       A.   Right.  And it's my training that makes me

Marty Buchanan   *   March 5, 2018

Page 124

1     A.   It was not exhaustive.  It was, perhaps, a few

2   weeks of records randomly selected.

3     Q.   Okay.  But in doing that, you didn't find any

4   comments about any Hispanic patients?

5     A.   No.

6     Q.   You didn't find any comments at all that you

7   believe to be derogatory or not doctor-like?

8     A.   No.  Nothing that would be intolerable, no.

9     Q.   Okay.  And I think you testified, although I'm

10  not sure, that you are not currently board certified in

11  internal medicine; is that correct?

12    A.   That's correct.

13    Q.   And why are you not currently board certified

14  in internal medicine?

15    A.   Because I didn't take the recertification

16  test.

17    Q.   Okay.  And why didn't you take the

18  recertification test?

19    A.   It wasn't necessary for my position.

20    Q.   Your position here at Denton County?

21    A.   Correct.

22    Q.   And when did you make the decision not to take

23  the certification test?

24    A.   Sometime in 2016.

25    Q.   Okay.  So --

Marty Buchanan   *   March 5, 2018

Page 125

1      A.   And I haven't -- I'm sorry.  I haven't

2   completely ruled it out.  It's a nice credential to

3   have, but it's not a necessity for my functions.

4      Q.   Okay.  So it wasn't a necessity for your

5   function as a primary care clinician here at Denton

6   County; is that correct?

7      A.   That's correct.

8              MS. ANDERSON:  Pass the witness.

9                        EXAMINATION

10  BY MS. MCKAY:

11     Q.   After the encounter that you mentioned of a

12  staff meeting where Dr. Storrie allegedly made

13  derogatory statements about the patients, did you ever

14  have any follow-up conversations with her about what she

15  meant by the statements?

16     A.   No.

17     Q.   You testified, when you first started earlier

18  this afternoon, that you had reviewed, in preparation

19  for the deposition, personnel files.  Whose personnel

20  files did you review?

21     A.   I'm sorry.  Repeat the question.

22     Q.   You testified earlier that in preparation for

23  your deposition today that you reviewed a personnel

24  file.

25     A.   Personnel files, yes.

Marty Buchanan  *  March 5, 2018

Page 132

1       I further certify that I am neither counsel for,
2   related to, nor employed by any of the parties or
3   attorneys in the action in which this proceeding was
4   taken, and further that I am not financially or
5   otherwise interested in the outcome of the action.
6       Certified to by me this 14th of March, 2018.

7

8

9                     _____
                      MARY KAREN USHER, CSR # 5536
10                    Expiration: 12/31/2019
                      Firm Registration # 10278
11                    USHER REPORTING SERVICES
                      1326 Lochness Drive
12                    Allen, Texas 75013
                      (214) 755-1612
13                    karen@usherreporting.com

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | ) | |
| COMMISSION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | )CIVIL ACTION NO. 4:17-CV-614 | |
| | ) | |
| | ) | |
| DENTON COUNTY, | ) | |
| Defendant. | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

AMY PHILLIPS

MARCH 9, 2018

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF AMY PHILLIPS, produced as

a witness at the instance of the Plaintiff, and duly sworn, was

taken in the above-styled and numbered cause on the 9th day of

March, 2018, from 9:33 a.m. to 4:57 p.m., before AMBER KIRTON,

CSR in and for the State of Texas, reported by machine shorthand,

at the offices of Kennedy Reporting Service, 555 Round Rock West

Drive, Building E, Suite 202, Round Rock, Texas, pursuant to Rule

30 of the Federal Rules of Civil Procedure.

1    Q.   Okay.  And taking a look at Exhibit 12, is this a true

2  and correct copy of the Denton County Salary Administration

3  Guidelines?

4    A.   It certainly appears to be.  Without reading every word

5  I don't see anything that would indicate anything had been

6  changed.

7    Q.   Okay.  Now, if you take a look at the front of the

8  document it indicates that it was approved, this document,

9  October 1st, 2009.  Do you know if it has been approved or

10 revised since then?

11   A.   I don't recall.

12   Q.   Okay.  So if we look at Page -- if we look at -- if you

13 look at Page 1 of this document it talks about the philosophy of

14 Denton County is to provide an equitable compensation program.

15 Can you tell me what does that mean?

16   A.   Well, I think it means what I referred to earlier.  To

17 me what it means is that employees would be paid on -- based on

18 the value of the job which would typically be in a range and also

19 what they bring to the job, meaning their skills and education

20 and relevant experience.  And on those things that -- that they

21 would be looked at equitably from person to person and not based

22 on things that were prohibited.

23   Q.   And if you look at the objectives, one of the

24 objectives is to have employees perceive that their pay is fair

25 with respect to other jobs in the county and with competitive

1  jobs outside the county.  What does that mean?

2      A.   Well, that means that you strive to have competitive

3  pay that your employees -- their perceptions can be objective but

4  that you have explanations and can be able to explain why they're

5  paid the way they're paid and to try to be competitive with other

6  entities so that you can attract employees.  Of course that's

7  subjective to your budgetary constraints.

8      Q.   And was it the responsibility or the mission of the

9  human resources department of Denton County to meet these

10 objectives?

11     A.   Yes.  With the resources available certainly we tried

12 to meet those objectives.

13     Q.   If you take a look at Page 6.  And these provide

14 guidelines for starting salaries for new hires; is that correct?

15     A.   That's correct.

16     Q.   But do these guidelines apply to the primary care

17 clinicians in the health department?

18     A.   Let me look at them for a minute and I'll tell you

19 which ones would and which ones would not.  These would not apply

20 directly to those positions because those positions don't have

21 clearly defined pay ranges the way most of the County's positions

22 did.  Our physicians didn't have pay ranges and the attorneys had

23 their own separate pay scale that worked differently than this as

24 well.

25     Q.   So the attorneys and the primary care clinicians.  Was

1  there anybody else who was outside of the ordinary Denton County

2  starting salary?

3       A.   Department heads.  That's what I remember right now.  I

4  can't think of anybody else.

5       Q.   So if you keep going through the Exhibit 12 and take a

6  look at Page 8 under the wage and salary administration where it

7  talks about the salary guidelines for hiring the attorney

8  positions.

9       A.   I'm sorry, on Page 8?

10      Q.   Yeah, there is several 8s.

11      A.   It looks like we have two different -- we have two

12  copies of this document.  Does it look that way to you?

13      Q.   It does.  Now, so maybe you can -- you can help me out

14  here.  So the first part of the salary administration guidelines,

15  the first nine pages, indicates this is the current policy.  See

16  the top right-hand corner?  Turn to the next page, Page 1.

17      A.   Yes, that says current policy.

18      Q.   Okay.  And so at the time that you left Denton County

19  was this the policy in place?

20      A.   I would think so.  I left two years ago and I don't see

21  a note that it's been revised since then.  So to the best of my

22  knowledge I would say -- have to say yes.

23      Q.   Okay.  And where is this document contained?  Is it an

24  employee handbook or a --

25      A.   It's on the -- on the intrasite where all of the county

```
 1  policies are maintained.
 2       Q.   Okay.
 3       A.    In an employee handbook there would be a reference to
 4  it and probably a short synopsis but not the entire document.
 5       Q.   Okay.  Okay.  So if you go past the first 10 pages of
 6  the document.  Okay.  And then -- so then there's a second wage
 7  and salary administration document.  At the top right-hand corner
 8  it says Request No. 12, Request No. 18.
 9       A.   Uh-huh.
10       Q.   Okay.
11       A.   Yes.
12       Q.   And so what is -- what is this document?  It looks the
13  same.  Is it just another --
14       A.    It looks similar to me.  I don't know what the requests
15  were and so -- and I wasn't involved in responding to that so I
16  can't -- you know, off the top of my head I can't tell you what's
17  different.
18       Q.   Okay.  So if you look at this -- this second wage and
19  salary administration document on Page 8 it talks about salary
20  guidelines for hiring and other personnel actions for attorney
21  positions.
22       A.   Yes.
23       Q.   Okay.  Are there -- it appears that, you know,
24  attorneys fall under their own guidelines.  Are there guidelines
25  like this?  In there a specific guideline this -- like this for
```

1     A.    It says Texas Board of Medical Examiners.   Am I looking

2   in the wrong place?

3     Q.    No.   I'm afraid my question was not very good.   This

4   does not require any specialty; is that correct?

5     A.    That's correct.

6     Q.    And was there any discussion in preparing Exhibit 2 or

7   Exhibit 3 to include a requirement that the PCCs have some type

8   of specialty or certification?

9     A.    I don't recall being involved in a discussion like

10  that.

11    Q.    At any point did Matt Richardson make any request to

12  you to include a specialty certification such as internal

13  medicine or family medicine in the job description for the PCC?

14    A.    I don't remember that he did.   What I remember Matt

15  talking about when he first came to work at the county was some

16  certification he wanted the department to gain and there were

17  steps involved in that, but I don't remember whether that had

18  anything to do with the criteria of the doctors for this job.

19    Q.    Okay.

20          MS. ANDERSON:   If we can mark this as Exhibit 4,

21  please.

22              (Exhibit No. 4 marked.)

23    Q.    (BY MS. ANDERSON)   Can you identify Exhibit No. 4?

24    A.    It looks like -- it looks very similar to the last two

25  documents.

1    No. 4 do you agree did -- well, actually, for the process

2    involving the hiring of Dr. Buchanan did Mr. Richardson ask you

3    to -- what did Mr. -- what did Dr. Richardson ask you to do with

4    regard to the salary of -- or the hiring of Dr. Buchanan?

5        A.   If I recall Dr. Richardson was relatively new to the

6    position at that time.  I don't remember exactly when he was

7    hired.  But I don't think he had hired a lot of primary care

8    physicians at that time and he called and he was wondering about

9    identifying an appropriate salary and -- that would be

10   competitive and he asked me if I knew what doctors were being

11   paid in the market.  And I said not off the top of my head but

12   there are several resources that we could look online and get

13   some salary information.  And so I sent him the links that you

14   see under Interrogatory 4 that tell about -- or that offer some

15   information about physician salaries.  And then I -- as I said

16   earlier I think I had someone on my staff contact a couple of

17   other counties that were in our relevant market.  They didn't get

18   a lot of information and we weren't real confident in that

19   information as you can tell from my communication.  But that

20   was -- that was the -- that was what happened.  That's what I

21   looked into.

22       Q.   Okay.  But the information you gave Dr. Richardson was

23   not a market study or a salary study survey?

24       A.   That's correct.  It was -- well, it's somebody else's

25   survey.  It wasn't our survey.  But I gave him four links.  The

1  one I'm most familiar with is Salary dot-com.  We used that

2  pretty routinely and it gives you a minimum and a maximum and a

3  mid range within your geographical area which I kind of liked.

4  And -- but the others I'm really not familiar with.  I just went

5  on the Internet, found them, sent them to him.

6      Q.   And on Salary dot-com you can make adjustments based on

7  a person -- an applicant's experience; is that right?

8      A.   To some degree.  Some of that, though, I don't remember

9  how much of it you can do for free because we didn't have a

10 subscription.  And I know that you can refine it a lot more if

11 you have a subscription to it.  There might have been some

12 information there and it changed over the years, but there might

13 have been some information about whether salaries would be higher

14 or lower in public sector or something like that.  But I don't --

15 I don't think -- I don't remember that it allowed you to really

16 get into the nitty-gritty of the applicant.

17     Q.   Okay.

18     A.   Maybe from the applicant's side which we wouldn't have

19 used.  You know, if you -- because there is an employer side.

20 Now that I'm thinking about it there is an employer side and an

21 applicant side and the employer is usually looking for general

22 market data.  The applicant might be -- go on to ask, you know,

23 what should I be paid, what should I expect before I go to an

24 interview and that might get more detailed about the applicant.

25 I think that's more accurate, really.

1      A.    Yes.  We do collect them in the HR department and

2  that's really about all the review we can do is if they're

3  received or not.  I believe that in order for an employee to get

4  a raise they would have --the department would have had to have

5  submitted a performance appraisal.

6      Q.    Okay.  And is there any requirement that the

7  performance appraisals are dated and signed by the employee?

8      A.    No.

9      Q.    So -- I mean, there is a form on here for signature and

10  date but that was not required?

11      A.    No.  There is no way that we can -- that we could, for

12  lack of a better word, police that.  Some departments would not

13  fill out the written part of the evaluation.  They would just do

14  the scores.  But certainly departments know that they're supposed

15  to sit down with the employee, go over it.  But what comes to us

16  wouldn't necessarily reflect a signature anyway because they're

17  going to send it electronically and the signature would be done

18  in a separate conference.  And if they're sending it

19  electronically it's not going to show up.

20      Q.    Okay.  And so in looking at this document is the -- is

21  the score 1 to 5?

22      A.    Yes.

23      Q.    Okay, 1 to 5.  So is it identified 5 is outstanding or

24  excellent or --

25      A.    Yes.  It's pretty much 3 meets expectations, 4 is, you

1    know, exceeds expectations, 5 is outstanding and of course 2 and

2    1 are different degrees of needing improvement.  There are just a

3    few criteria here that would not go all the way up to 5.  If you

4    look at the table toward the bottom that says compliance factors,

5    personal appearance.  You know, we don't rate somebody a -- I

6    guess it goes up to 5 but it's either 1 or 5.  You know, either

7    you come to work groomed and okay to work or you don't.  You

8    don't get extra points for being attractive or not attractive.

9    Same thing for -- you know, you can understand punctuality and

10   attendance.  Either you comply or you don't.

11       Q.    Okay.

12       A.    Everything else is more on a scale of 1 to 5.

13       Q.    Okay.  So just in looking at this appraisal -- so it's

14   for the employee Dr. Storrie, health department.  The supervisor

15   was Matt Richardson.  So that's the person who gave this employee

16   appraisal?

17       A.    Yes, Matt would have done that.

18       Q.    Okay.  Okay.  And if you turn the page there's an

19   employee evaluation report, a two-page report.

20       A.    Yes.

21       Q.    And so who completes this document?

22       A.    I guess would be Matt would complete it.

23       Q.    Okay.

24       A.    That's what I would expect.

25       Q.    So the supervisor completes this also?

A. Yes.

Q. Now, when Dr. Storrie applied at the county I believe we talked about she was applying as a part-time primary -- primary care clinician; is that right?

A. Yes.

Q. But the process for interviewing and hiring her would have been the same whether it was part-time or full-time. True?

A. Yes, that's true.

Q. At the time Dr. Burton, the health director, would have gone through the same analysis whether it was part-time or full-time. True?

MS. MCKAY: Objection; leading.

Q. (BY MR. DAVIS) You can answer.

A. Yes.

Q. Does Denton County assign a pre-set salary range for the position of primary care clinician?

A. No.

Q. Why not?

A. Because it's recruited differently. It's a very high-level position. There is really a small number relatively of people that have the credentials to be hired into that position. It's a licensed professional position and those positions along with department head positions at Denton County don't have structured pay ranges with the same pay guidelines as the other positions do.

```
 1   COUNTY OF TRAVIS)

 2   STATE OF TEXAS)

 3

 4        I hereby certify that the witness was notified on

 5   _____ that the witness has 30 days (or _____ days

 6   per agreement of counsel) after being notified by the officer

 7   that the transcript is available for review by the witness and if

 8   there are changes in the form or substance to be made, then the

 9   witness shall sign a statement reciting such changes and the

10   reasons given by the witness for making them;

11        That the witness' signature was/was not returned as of

12   _____.

13        Subscribed and sworn to on this _____ day of _____,

14   _____.

15

16

17                              _____
                                Amber Kirton, CSR
18                              Texas CSR #8110
                                Expiration Date:12/31/19
19                              Firm Registration No. 276
                                Kennedy Reporting Service
20                              555 Round Rock West Drive
                                Building E, Suite 202
21                              Round Rock, Texas  78681
                                (512) 474-2233
22

23

24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EQUAL EMPLOYMENT,                )
OPPORTUNITY COMMISSION,          )
                                 )
                                 )
            Plaintiff,           )
                                 )        CIVIL ACTION
-vs-                             )
                                 )
                                 )        NO:  4:17-cv-614
DENTON COUNTY,                   )
                                 )
                                 )
            Defendant.           )

-----------------------------------

ORAL DEPOSITION OF

MATT RICHARDSON

April 13, 2018

VOLUME 1

-----------------------------------

     ORAL DEPOSITION OF MATT RICHARDSON, produced as a witness
at the instance of the PLAINTIFF, and duly sworn, was taken in
the above-style and numbered cause on the 13th of April, 2018,
from 9:30 a.m. to 4:29 p.m., before Charo Dunlap, CSR, RPR, in
and for the State of Texas, reported by machine shorthand, at
the Denton County Technology Services Department Building, 701
Kimberly Drive, Denton, Texas, pursuant to the Federal Rules of
Civil Procedure.

Matt Richardson   *   April 13, 2018

Page 79

1    court, do you have communications with them at any other time?

2         A.   Yes.

3         Q.   Okay.  And are those formal conversations or just

4    more informally?

5         A.   Yes.

6         Q.   Both?

7         A.   (Witness nodded head up and down.)

8         Q.   Okay.  Okay.  Let me show you what's previously been

9    marked Exhibit 22.  This is the charge of discrimination filed

10   by Dr. Storrie with the EEOC.  Have you ever seen Exhibit 22

11   before?

12        A.   I don't recall.  Maybe not.

13        Q.   Okay.  Now in this -- have you ever seen -- have you

14   ever seen any EEOC charge before?

15        A.   No.

16        Q.   Not familiar with them?

17        A.   No.

18        Q.   Okay.  On this charge of discrimination -- it's

19   signed by Dr. Storrie on April 4th, 2016, and she claims that

20   she was paid less than Dr. Buchanan.  And that she was told by

21   Matt Richardson that Buchanan was worth more.

22             Do you recall Dr. Storrie complaining to you

23   that she was being paid less than Dr. Buchanan?

24        A.   Yes.

25        Q.   Okay.  And when do you recall that happening?

Matt Richardson  *  April 13, 2018

Page 80

1  A. At her performance review.

2  Q. All right.  And what do you recall about that?

3  A. I was giving her her performance review and talking

4 about some other performance failures and opportunities for

5 improvements, and at the end she presented a newspaper article

6 cutout that I had not seen before and she mentioned that she

7 was paid less that Buchanan.

8  Q. All right.  Let me show you what has been marked as

9 Exhibit No. 11.  Is this the newspaper cutout that she gave

10 you?

11  A. Yes.

12  Q. Okay.  And when she showed this to you, you said you

13 had never seen this before.

14  A. That's correct.

15  Q. And so you hadn't seen it in the paper on

16 August 12th, 2015?

17  A. No.

18  Q. Were you aware that Denton County -- what is this

19 chronicle record -- Denton Chronicle Record publishes county

20 salaries in the newspaper?

21  A. Was I aware they did this time or they had in the

22 past?

23  Q. Well, let me ask the question better.  Do you know if

24 Denton County -- the Denton Record Chronicle had ever published

25 salaries in the paper before?

Matt Richardson  *  April 13, 2018

Page 146

1      Q.   Okay.  Did you have an understanding that you had any

2  control over making a recommendation or change with regard to

3  her pay during that time period?

4      A.   Yeah.  I don't know that I did have a remedy

5  available to her.

6      Q.   Well, you were certainly aware that there was the

7  option -- we looked at the memo with regard to the request for

8  reclassification or equity pay adjustment.

9      A.   Yeah, again, I didn't think she qualified for either.

10     Q.   Okay.  And why would she have not qualified for the

11 equity adjustment?

12     A.   Because my understanding is the equity adjustment is

13 to address the -- typically HR -- it could be a mistake if

14 someone's hired in a position they believe -- they believe

15 they're hired in position X and they're paid for position Y.

16 An equity adjustment brings them up to the level of that banded

17 pay scale for that position.

18     Q.   Okay.  So my understanding is from your earlier

19 testimony that you felt that Dr. Buchanan was hired at a higher

20 pay rate because he brought with him certification and certain

21 experience that Dr. Storrie did not have; is that correct?

22     A.   I didn't make any judgment about Dr. Storrie.  But as

23 far as my hiring actions for Dr. Buchanan, my preferences were

24 education, experience, board eligibility, board certification,

25 certainly the type of specialty that was available to us.  Lots

Appendix  0086

Matt Richardson  *  April 13, 2018

Page 180

1    applied but may, for various reasons, have not been accepted

2    because they were either rejected or failed or various other

3    reasons?

4         A.   Yes.

5         Q.   You discussed earlier that -- the lawyer for the EEOC

6    had you look at Dr. Buchanan's application and his preferred

7    salary was 170.  Do you remember that?

8         A.   Yes.

9         Q.   Was that within, to your recollection, acceptable

10   budgetary constraints of the county at the time?

11        A.   It was.  But it was on the very upper end.  I was

12   gonna have a hard time paying more than that or recommending

13   more than that to the court and them approving it.

14        Q.   Did Dr. Buchanan in his application also list his

15   training, experience, and board certifications?

16        A.   Yes, he did.

17        Q.   Did -- based on his application that you reviewed,

18   did it appear that he would be an eligible candidate for the

19   primary care clinician?

20        A.   Yes.

21        Q.   You've also described for the lawyer for the EEOC

22   that HR sent you some e-mails with links to websites that you

23   could look up to view and confirm even market range of

24   physicians in this area at the same time; is that right?

25        A.   They did, yes.

Page 181

1    Q.   Was 170,000 within that range and, in fact, if not on

2  the low end?

3    A.   It was very much on the low end.  I think it was --

4  when I looked at all of the specialties that represented

5  primary care, I think that was 10 to $15,000 lower than market.

6    Q.   Based on the totality, the factors that we have

7  discussed, was a proposed starting salary for the full-time

8  employment of $170,000 recommended by you and approved by the

9  Denton County commissioner's court for Dr. Buchanan?

10   A.   Yes.

11   Q.   And did he become employed and start at that salary?

12   A.   Yes.

13   Q.   That was more than what Dr. Storrie was being paid at

14  the time, wasn't it, sir?

15   A.   Yes.

16   Q.   And I'm going to represent to you, based on the

17  evidence that we have here, in 2015 she was getting 142,000

18  and -- 142,480.

19   A.   I believe that's correct.

20   Q.   I'll go ahead and -- I don't want to guess.  I'm

21  going to show you as Exhibit 2, her salary history.

22   A.   Yes.  142,480 at termination.

23   Q.   Can you tell the jury why Dr. Buchanan was being paid

24  approximately 19 percent more than Dr. Storrie?

25   A.   Yeah.  Because this position was off grade, the court

Matt Richardson  *  April 13, 2018

Page 182

1    had the leeway to pay from zero to infinity by policy.  And so

2    I researched it; I noted that Dr. Buchanan had a board

3    eligibility and a board certification and a primary care

4    specialty.  He had over 20 years of experience in private

5    practice.  And, again, a primary care specialty.  Had a Ph.D.

6    degree in addition to his medical degree, molecular biology.

7    His willingness to come and work for the county and do the type

8    of work that we talked about.  He had convinced me of his

9    willingness to do that.  All of those factors combined, and the

10   fact that I was aware that he had terminated his partnership.

11   I knew that we were still competing with someone, an unnamed

12   party, for his employment; but I thought we would try at 170

13   and see what could happen.  And that is what he put on his

14   application.

15        Q.   Do you think based on the market research that you

16   did on the internet and your general knowledge of what doctors

17   are being paid in 2015 that you could have obtained Dr.

18   Buchanan's employment for the same salary as Dr. Storrie?

19        A.   No.

20             MS. ANDERSON:  Object to the form of the

21   question; calls for speculation.

22        Q.   (By Mr. Davis)  You can answer, Doctor.

23        A.   No.

24        Q.   So seven years later, after Dr. Storrie was hired and

25   graded up to where she was, you would have to pay more to get a

Matt Richardson  *  April 13, 2018

Page 220

1        That $_____ is the deposition officer's charges to the

2   Plaintiff for preparing the original deposition transcript and

3   any copies of exhibits;

4        I further certify that I am neither counsel for, related

5   to, nor employed by any of the parties or attorneys in the

6   action in which proceedings was taken, and further that I am

7   not financially or otherwise interested in the outcome of the

8   action.

9

10       Certified to by me this 23rd day of April 2018.

11

12

13

14       _____

                  CHARO L. DUNLAP, CSR 6733
15                Expiration Date:  03/31/2020
                  Firm Registration No. 10278
16                Usher Reporting Services
                  1326 Lochness
17                Allen, Texas 75013
                  (214) 755-1612
18                (214) 547-0822 (fax)
                  karen@usherreporting.com
19                www.usherreporting.com

20

21

22

23

24

25

MARTHA C. STORRIE

1

1           IN THE UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF TEXAS

3                   SHERMAN DIVISION

4    EQUAL EMPLOYMENT              )
     OPPORTUNITY COMMISSION        )
5                                  )
     VS.                           ) CASE NO. 4:17-CV-614
6                                  )
     DENTON COUNTY                 )
7

8

9    ****************************************************

10                  VIDEOTAPED ORAL DEPOSITION OF

11                      MARTHA C. STORRIE
                         MAY 15, 2018
12
     ****************************************************

13

14

15        VIDEOTAPED ORAL DEPOSITION OF MARTHA C. STORRIE,

16   produced as a witness duly sworn by me at the instance

17   of the Defendant, taken in the above-styled and

18   -numbered cause on the 15th day of May, 2018, from 9:18

19   a.m. to 4:56 p.m., before Carla Shanks Gonzalez,

20   Certified Shorthand Reporter No. 5054 in and for the

21   State of Texas, at the offices of Scheef & Stone,

22   located at 2600 Network Boulevard, Suite 400, in the

23   City of Frisco and State of Texas, in accordance with

24   the Federal Rules of Civil Procedure and the provisions

25   stated on the record.

**MARTHA C. STORRIE**

17

1   active in Oklahoma?

2       A.   It's an asset.

3       Q.   You have board certifications in urology and

4   palliative medicine; is that correct?

5       A.   No.

6       Q.   What was incorrect about my question?

7       A.   I am board certified in adult and pediatric

8   urology.   My board certification in hospice and

9   palliative medicine was not renewed when American Board

10  of Hospice and Palliative Medicine became a member board

11  of the American Board of Medical Specialties.   For me to

12  retain my certification, the American Board of Urology

13  would have had to have been a co-sponsor, and they

14  declined to do that.

15      Q.   When did your specialization or certification

16  in palliative and hospice, hospice medicine expire or

17  change?

18      A.   I don't remember.   I think, let's see, maybe

19  2013.

20      Q.   What is your current board certifications?

21      A.   I'm certified by the American Board of Adult

22  and Pediatric Urology.   I am certified by the American

23  Board of Urology, Incorporated in the specialty of adult

24  and pediatric urology.

25      Q.   And how long is that certification?

**MARTHA C. STORRIE**

18

1     **A.    Ask me another way.**

2     Q.    When does your certification in that field

3     expire?

4     **A.    2022.**

5     Q.    When did you first become board certified

6     in --

7     **A.    1992.**

8              MS. McKAY:  Dr. Storrie, you need to wait

9     until he completely --

10             THE WITNESS:  Sorry.

11             MS. McKAY:  -- asks the questions.  I

12    know you anticipate it, but it's going to make the

13    record a little bit fuzzy.

14             THE WITNESS:  Got it.

15    Q.    Besides that board certification, do you have

16    any other board certification?

17    **A.    Not by a member board of the American Board of**

18    **Medical Specialities, no.**

19    Q.    Do you have a certification from any other

20    certifying entity?

21    **A.    I'm certified by the National Commission on**

22    **Correctional Healthcare.  I am a certified correctional**

23    **healthcare professional.**

24    Q.    Certified correctional healthcare

25    professional?  Did I say that correctly?

Appendix  0093

**MARTHA C. STORRIE**

19

1     **A.    Yes.**

2     Q.    When did you receive that certification?

3     **A.    2014, 2015.**

4     Q.    So this would be much later than your start

5     date with Denton County?

6     **A.    Yes.**

7     Q.    Were you required or obligated to get that

8     certification to perform your functions as a primary

9     care clinician with Denton County?

10    **A.    No.  I did this to improve the care of the**

11    **inmates at the Denton County Sheriff's Office Jail.**

12    Q.    So this was a voluntary certification process

13    for you to help improve patient care at the jail, right?

14    **A.    Yes.**

15    Q.    Are you still so currently certified?

16    **A.    Yes.**

17    Q.    How long does that certification last?

18    **A.    One year.**

19    Q.    Do you know when it expires?

20    **A.    December 31st.**

21    Q.    Do you have plans on renewing that

22    certification?

23    **A.    Yes.**

24    Q.    How does that work?  How do you renew it?

25    **A.    You pay a fee, and you complete some**

**MARTHA C. STORRIE**

23

1      A.    No.

2      Q.    And that is not a function of the Denton

3  County Healthcare Department, is it, ma'am?

4      **A.    It's not a function of the Denton County**

5  **Health Department.**

6      Q.    A background in palliative or hospice care

7  does not apply and would not be applicable to the tasks

8  that you were performing as a primary care clinician

9  with Denton County, would they?

10     **A.    It would certainly apply, because again, I**

11 **would provide for the patient's primary care needs, if**

12 **you want to call it that, in addition to their pain**

13 **management and their end-of-life issues.**

14     Q.    What about urology?  When you worked as a

15 primary care clinician at Denton County, your job did

16 not involve urology, did it, ma'am?

17     **A.    It frequently involved urologic care and**

18 **evaluation of patients in an STD clinic.**

19     Q.    And if they had a urological issue, they were

20 referred out to an outside care provider, weren't they?

21     **A.    No, they were not.  I took care of the**

22 **patients' urologic concerns to the best of my ability.**

23     Q.    And that would be limited to the STD clinics?

24     **A.    That would include, gosh, epididymitis,**

25 **orchiditis, testicular cancer, prostatitis, prostate**

**MARTHA C. STORRIE**

24

1   **nodule, premature ejaculation, sexual difficulties,**

2   **erectile dysfunction, urinary tract infection,**

3   **dyspareunia, pelvic floor syndrome --**

4                   MS. McKAY:  Dr. Storrie, slow down just a

5   little bit, because she's trying to take down everything

6   you're saying, and you're using --

7                   THE WITNESS:  Sorry.

8                   MS. McKAY:  -- a lot of medical terms.

9                   THE WITNESS:  I'm sorry, I thought we

10  were recording this.

11                  MS. McKAY:  She's actually typing

12  everything that you say.

13                  THE WITNESS:  I see.  Sorry.

14                  THE REPORTER:  That's okay.  Thanks.

15                  THE WITNESS:  It's all new to me.

16      Q.   My question was about urology.  Your

17  background in urology does not apply to most of the

18  activities that you were required to perform at the

19  Denton County Healthcare Department; isn't that true,

20  Dr. Storrie?

21      **A.   No, that's not true.  My training in urology**

22  **was helpful for many patients.**

23      Q.   Did your training in urology provide you with

24  experience in diabetes?

25      **A.   My training in hospice and palliative medicine**

**Complete Legal**                                        **214-746-5400**

**MARTHA C. STORRIE**

266

1   or counsel for, nor related to or employed by any of the

2   parties to the action in which this deposition is taken,

3   and further that I am not a relative or employee of any

4   attorney or counsel employed by the parties hereto or

5   financially interested in the action.

6           CERTIFIED TO BY ME on this       day

7               , 2018.

8

9               *Carla Gonzalez*

10

11          Carla Shanks Gonzalez, CSR
            Texas CSR 5054
            Expiration Date: 12/31/18
12          COMPLETE LEGAL
            2560 Renaissance Tower
13          1201 Elm Street
            Dallas, Texas  75270
14          (214) 746-5400   fax (214) 746-5405
            Firm Number 289
15

16

17

18

19

20

21

22

23

24

25

Appendix  0097

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:17-CV-614 |
| V. | § § | |
| DENTON COUNTY, Defendant. | § § | |

**Expert Report**

**Dwight D. Steward, Ph.D.**
Economist and Statistician

**June 1, 2018**

3636 Executive Center Drive
Colorado Building, Suite G50
Austin, Texas 78731

Phone: (512) 476-3711
dsteward@employstats.com

**Introduction**

1.      My name is Dwight Steward and I am an economist and statistician.  I have been retained by the Plaintiff's counsel as an expert in this case.  In this report, I perform an analysis of Dr. Martha Storrie's alleged back pay losses.

2.      As an economist, I have routinely provided consultation, expert reports, deposition testimony, and trial testimony on economic issues including back pay, front pay, and labor market availability in employment litigation.  I write regularly on topics related to these issues and frequently speak to professional groups on these topics.  In addition to serving as a consultant and expert witness, I have also held teaching positions in the Economics Department and in the Red McCombs School of Business at The University of Texas at Austin, the College of Business Administration at Sam Houston State University, and at The University of Iowa.  My full curriculum vitae is attached to this report.

3.      In this lawsuit, I understand that Dr. Storrie alleges that Denton County engaged in unlawful compensation discrimination whereby she was paid less than her male counterparts.  In this case, I have been asked to calculate Dr. Storrie's back pay losses for different time periods that I understand

1

correspond to her Title VII and Equal Pay Act ('EPA') claims of discrimination.  I

have also been asked to evaluate the labor market forces research study

performed by Ms. Amy Phillips.  I understand that Ms. Phillips is the Human

Resources Director for Denton County.

4.    My analysis is discussed in more detail in the following

sections of this report.  The documents relied upon are shown in Exhibit A an

Exhibit B attached to this report.  I respectfully reserve the right to update and

make changes to this report as additional information becomes available.  A

summary of Dr. Storrie's back pay losses is shown in Table 1 in Exhibit C.

Detailed year-by-year descriptions of Dr. Storrie's back pay losses are found in

Tables 2 and 3 in Exhibit C.

**Background**

5.    Dr. Storrie was hired by Denton County as a Primary Care

Clinician on October 29, 2008 (See no. 2 in Exhibit A).  It is my understanding

that Primary Care Clinicians for the County provide health services for Denton

County entities including county jails and low income clinics.  Dr. Storrie's job

duties and responsibilities included, but were not limited to, providing primary

health care to County residents and inmates as necessary, evaluating patients to

2

determine health problems, educating patients on proper hygiene and healthy lifestyle choices, and evaluating lab results and making recommendations as necessary (See no. 2 in Exhibit A).

6.     According to her application for Denton County employment, Dr. Storrie worked at a private practice from July 1990 to the date of her application.   Dr. Storrie also served as a Medical Director from April 2002 to August 2007 for both Odyssey Healthcare Corporation and Faith Hospice. From April 2000 to April 2002, Dr. Storrie was a Hospice Team Physician with Vitas Healthcare Corporation.   In addition, Dr. Storrie worked as a Physician Investigator from December 1997 to 2002 at Research Across America.   Dr. Storrie earned a Bachelor's of Science in Pharmacy from the University of Texas at Austin in 1979 and her Doctor of Medicine from the University of Texas Health Science Center in San Antonio in 1985.

7.     At the time of her application for employment with Denton County, Dr. Storrie held several licenses and certifications.   Dr. Storrie was a registered Pharmacist and held her Medical Licence in the state of Texas.   She also held her Medical License in the state of Oklahoma.   Further, Dr. Storrie was Board Certified with the American Board of Urology as well as the American

3

Board of Hospice and Palliative Medicine (See no. 2 in Exhibit A).  At the time her employment with Denton County ended, Dr. Storrie had over 25 years of medical experience.

**Comparators**

8.      Dr. Marty Buchanan was hired by Denton County on August 3, 2015 as a Primary Care Clinician.  Dr. Buchanan received a starting salary of $170,000 at the time of his hire with Denton County.  At the time Dr. Buchanan was hired as a Primary Care Clinician with Denton County, he had approximately 21 years in a medical position.  Dr. Buchanan earned a Graduate degree in Cell Biology from the University of Texas Southwestern Graduate School of Biomedical Sciences in 1987.  Dr. Buchanan then received his Medical Doctorate from the University of Texas Health Science Center in San Antonio.

9.      Dr. Javed Akram was hired by Denton County on July 30, 2014 as a Primary Care Clinician.  Dr. Akram earned $142,800 per year as a full-time Primary Care Clinician in October 1, 2014.  Dr. Akram had approximately 15 years of medicine practice in the United States at the time of his application.  Dr. Akram received his medical degree from Rawalpindi Medical College in Rawalpindi, Pakistan in December 1987 (See no. 10 in Exhibit A).

4

**Denton County Labor Market Research**

10.    I understand Ms. Phillips provided labor market research to determine the appropriate salary for Dr. Buchanan at the time his employment began with Denton County on August 3, 2015.  Ms. Phillips was the Human Resources Director for Denton County.  I understand that Ms. Phillips' analysis was a deciding factor in the salary determination process at issue in this case.

11.    I have received and reviewed Ms. Phillips' March 9, 2018 deposition and corresponding exhibits as of May 15, 2018 (See no. 22 in Exhibit A).  According to her deposition, Ms. Phillips describes the steps to conduct an appropriate market study or salary survey.

> Q. Can you describe what is a market study or a salary survey?
>
> A. Typically what you do or the consultant does or you do with the consultant is you identify positions that are considered to be benchmark positions that would be similar across organizations and you also identify those entities that you feel are your relevant market. And so in the county's case we would typically look for most positions. We would look at other public entities that were similar in size or -- and with a similar growth rate, maybe -- sometimes the same geographic area. I mean, there are different things that you consider but you identify what's your relevant market. For some positions you might include some private sector data and once you have your relevant market you send your kind of a description and general information about the position -- the benchmark positions that you're researching that you've identified to the responsible people at the -- at the

5

-- in your target market and you ask them to match those descriptions -- abbreviated descriptions to their job descriptions and identify like jobs and tell us what they're paying. You might ask them for the range or you might ask them for current pay, you know, any number of things. You might ask them how many people -- how many slots they have for that job and that kind of thing. And then when they return that information then you put it into a spreadsheet and typically you -- sometimes you run regression analysis on it and you come up with how it matches up with yours and whether -- try to determine whether your jobs are above the market, meet the market, below the market and by how much and it should tell you what job class -- you can use it to design your system or you could use it on a more limited basis to tell you which job classes you need to look at because they're not competitive with the market or for some reason they -- you're paying more than you need to.

Ms. Phillips testified that she and her staff have conducted salary surveys for positions within Denton County that did not include the primary care clinician position.  Further, Ms. Phillips states that the salary research she performed in this case was neither a market study nor a salary study survey.

12.    The salary research provided by Ms. Phillips was not a properly conducted salary analysis.  Further, the information gathered by Ms. Phillips was not applicable to Dr. Buchanan.  In the documents Denton County claims were part of the salary survey provided by Ms. Phillips, the salary information and labor market data provided by Denton County is specific to Infectious Disease Specialists.  It is my understanding that infectious disease is

6

not now and was not Dr. Buchanan's medical specialty at the time of his job application.   In contrast to Denton County's purported salary survey, in an appropriately conducted salary survey, the job positions being studied need to be comparable to one another.

13.    Further, the salary information provided by Denton County from sources such as Salary.com, include medical doctors who were working outside of the public sector, such as in a private practice.  It is reasonable to expect that the salary structure for a physician working in a private practice will differ from the salary structure for a physician working for a public entity such as Denton County.   Ms. Phillips did not consider generally accepted labor market data that addresses these types of issues.

14.    There are numerous generally accepted labor market data sources that are typically relied upon when conducting a salary and labor market analysis.  These sources include publicly available labor market data as well as industry and occupation specific salary data.  Publicly available labor market data include data sources such as the U.S. Bureau of Labor Statistics Occupational Employment Statistics ('OES') and Texas Workforce Commission ('TWC') Labor Market & Career Information Department TRACER labor market data are

7

routinely utilized in these types of salary analyses.   These types of generally

accepted and widely used data sources provide national, state and local labor

market data and salary information for employees including physicians, working

for different types of employers, in different industries, and different geographical

areas (See no. 2 & 3 in Exhibit B).

15.   In addition to the publicly available labor data sources,

industry and occupation specific salary data produced by industry and

occupational groups and organizations is also routinely utilized in salary

analyses.   In labor market and salary analyses involving medical doctors,

industry groups such as the American Medical Association ('AMA') frequently

conduct salary surveys of medical professionals in different practices and

specialties (See no. 4 in Exhibit B).   Medscape, which is a organization that

assembles information including salary data on the medical industry, also

conducts Physician Compensation Reports for many different specialties.   Ms.

Phillips appeared to utilize some salary data from Medscape.   However, the

Medscape salary data that Ms. Phillips utilized was not specific to Dr. Buchanan's

job at Denton County.   For some reason, Ms. Phillips used Physician

Compensation Reports produced by Medscape for only Infectious Disease

8

Specialists.   As mentioned, it is my understanding that Dr. Buchanan was not an

Infectious Disease specialist (See no. 5 in Exhibit B).

16.     In addition, when conducting a salary analysis, it is standard

practice to study and compare factors such as job position requirements, job

responsibilities, employee's work history and experience, when studying an

individual's salary.  Ms. Phillips does not take these types of salary determination

factors into account in her salary analysis.  For instance, in her salary research

she found that Fort Bend County pays their physicians at an annual rate of

$165,683 (See no. 15 in Exhibit A).  According to her deposition testimony, Ms.

Phillips does not recall whether she accounting for these types of salary

determination factors in her salary research.  It is not clear if the physicians in the

Fort Bend County comparison group that Ms. Phillips uses in her analysis

perform similar tasks to the physicians in Denton County.

**Title VII damages**

17.     As mentioned above, I have been asked to calculate the

back pay damages using damage time periods that I understand correspond to

Dr. Storrie's Title VII and EPA claims in this case.  In this section of the report, I

9

describe the analysis of Dr. Storrie's back pay damages under the Title VII damage time periods.  I have been informed that Title VII back pay is calculated from two years prior to the date the discrimination claim was filed and continues through the last day of Dr. Storrie's employment.  Dr. Storrie filed her claim of discrimination on April 4, 2016.  Dr. Storrie's damages under Title VII begin on April 4, 2014 and continue at least until the end of Dr. Storrie's employment with the Defendant on April 1, 2016.

18.    In the analysis, Dr. Storrie's comparable earnings are calculated using the full time earnings of Dr. Buchanan and Dr. Akram.  Table 2 in Exhibit B details Dr. Storrie's back pay damages under Title VII.  For the time period from October 1, 2014 to August 3, 2015, Dr. Storrie's back pay losses are based on Dr. Akram's full time annual earnings of $142,800.  For the time period from August 3, 2015 to April 1, 2016, Dr. Storrie's back pay losses are based on the average of the full time annual earnings received by Dr. Akram and Dr. Buchanan.  For each time period, Dr. Storrie's back pay losses are calculated as the difference between the comparator annual earnings and Dr. Storrie's actual annual earnings.

10

19.     Dr. Storrie's back pay losses are in all likelihood conservative.   Dr. Storrie had significant medical experience during the time periods at issue in this case.   Dr. Storrie had also been employed with Denton County as a Primary Care Clinician for several years at the time Dr. Buchanan and Dr. Akram were hired by Denton County.

**EPA damages**

20.     In this section of the report, I describe the analysis utilized to determine Dr. Storrie's EPA back pay damages.  I have been informed that back pay in EPA cases are calculated for the three years prior to the date that the complaint was filed.   I understand that the complaint was filed on August 31, 2017.

21.     Table 3 in Exhibit B details Dr. Storrie's back pay damages under the EPA.  Using the applicable three-year EPA damage period, the same methodology described above in the Title VII section is utilized to calculate Dr. Storrie's back pay damages.  As described above, Dr. Storrie's back pay losses are in all likelihood conservative.

**Conclusion**

11

22.     In conclusion, Dr. Storrie's Title VII back pay damages are conservatively $18,042 as described above.   Additionally, Dr. Storrie's EPA back pay damages are $18,042 as described in the above sections.   As stated, I respectfully reserve the right to update and make changes to this report.

Executed on June 1, 2018

Dwight D. Steward

12

**Exhibit A: Case Related Documents**

Num.    Description

1    EEOC Complaint and Jury Demand
2    Dr. Storrie Personnel File
3    Rampoldi Salary History and Application
4    Hall-Hoskins Salary History and Application
5    Graves Salary History and Application
6    Buchanan Salary History and Application
7    Beall Salary History and Application
8    Ambavaram Salary History and Application
9    Alvarez PCC Salary History and Application
10    Akram Salary History and Application
11    Dr. Akram Salary Miscellaneous
12    Salary.com Salary Survey Web
13    Salary Report 2015
14    Phillips Email correspondence to Richardson March 18, 2015
15    Phillips Email correspondence to Richardson March 19, 2015
16    Newspaper Article by Denton Record- Chronicle regarding salaries
17    Family Physician salary: How Much Does a Family Physician Make?
18    29 U.S.C.A §255 Statute of Limitations
19    Denton County Employee Handbook - Retirement
20    Denton County, Texas Order Making Appointment
21    Denton County Public Health Organizational Chart, Effective December 21, 2017
22    Deposition of Amy Phillips and corresponding exhibits dated March 9, 2018

13

**Exhibit B: Treatises and Other Documents Relied Upon**

| Num. | Description |
|---|---|
| 1 | Bureau of Labor Statistics<br>https://www.bls.gov/ |
| 2 | Texas Workforce Commission<br>http://www.twc.state.tx.us/ |
| 3 | Bureau of Labor Statistics Occupational Employment Statistics<br>https://www.bls.gov/oes/ |
| 4 | American Medical Association<br>https://www.ama-assn.org/ |
| 5 | Medscape<br>https://www.medscape.com/ |
| 6 | Federal Physicians Association<br>https://www.fedphy.org/ |

14

**Exhibit C: Tables**

15

Appendix  00113

**Table 1: Summary for Dr. Storrie**

|  | Title VII Claim | EPA Claim |
|---|---|---|
| Back Pay Losses | $18,042 | $18,042 |

**Table 2: Title VII Back Pay Losses of Dr. Storrie**

| Date | | Comparator Earnings | Actual Earnings | Total Loss | Cumulative |
|------|---|---|---|---|---|
| (1) | | (2) | (3) | (4) | (5) |
| Past (4/4/2014 - 4/1/2016) | | | | | |
| 10/1/2014 | 8/3/2015 | $119,793 | $113,833 | $5,960 | $5,960 |
| 8/3/2015 | 10/1/2015 | $25,198 | $21,862 | $3,336 | $9,296 |
| 10/1/2015 | 4/1/2016 | $79,986 | $71,240 | $8,746 | $18,042 |

**Table 3: EPA Back Pay Losses of Dr. Storrie**

| Date | | Comparator Earnings | Actual Earnings | Total Loss | Cumulative |
|------|------|------|------|------|------|
| (1) | | (2) | (3) | (4) | (5) |
| Past (8/31/2014 - 4/1/2016) | | | | | |
| 10/1/2014 | 8/3/2015 | $119,793 | $113,833 | $5,960 | $5,960 |
| 8/3/2015 | 10/1/2015 | $25,198 | $21,862 | $3,336 | $9,296 |
| 10/1/2015 | 4/1/2016 | $79,986 | $71,240 | $8,746 | $18,042 |

# employstats⟋

Economic & Statistical Research
Employment I Wage & Hour I Damages



**Dwight Steward, Ph.D.**
**Economist and Statistician**

Dr. Dwight Steward is an expert in the economic and statistical analysis of labor and employment related issues. He has experience in cases involving employment discrimination, wage and hour, lost earnings, and lost profits litigation.

As an expert witness, he has authored hundreds of reports, been deposed in over 200 cases and testified in over 60 trials.  He has also testified in hearings, arbitrations, city council meetings, and before the Texas State legislature.

Dr. Steward writes regularly on employment related issues and frequently speaks to economic and legal professional groups.  Dr. Steward's research on the statistical analysis of police racial profiling has received national attention.  Dr. Steward has also taught in the University of Texas in the Department of Economics and the Red McCombs School of Business and in the College of Business at Sam Houston State University.  He has taught numerous courses in statistics, labor economics, corporate finance, business policies, and the economics of the firm (microeconomics).

## EDUCATION

Ph.D., Economics, University of Iowa; Dissertation title: 'Bank Mergers and Managerial Efficiency'

B.A., Economics, University of Texas at Austin; earned U.S. Army Officer Commission – Field Artillery

## SELECTED ACTIVITIES

Visiting Scholar, University of Texas at Austin, Department of Economics, 2011-2012

President, University of Texas Army ROTC Alumni Association (Caissons), 2007-2009

Fellow, Texas Labor and Employee Relations Consortium, 2011 to present

Member, American Economic Association, Society for Human Resource Management, and National Association of Forensic Economists

Member, Beta Gamma Sigma Business Honor Society

Dissertation Scholar Fellow, Federal Reserve Bank of Atlanta, 1995

Field Artillery Officer, U.S. Army Reserve, 1990-1998, Honorably discharged; rank of First Lieutenant

## EMPLOYMENT

Principal, EmployStats, 2008-present

Senior Lecturer, University of Texas at Austin, Department of Economics, 2010-2013, 1997-2003

Practice Director, Econ One, 2005-2008

Principal, Steward Research Group, 1997-2005

Senior Lecturer, University of Texas at Austin, Department of Economics, 1997-2003

Visiting Assistant Professor, College of Business, Sam Houston University, 1997-1999

Economist, Welch Consulting, 1995-1997

| | | |
|---|---|---|
| (512) 476-3711 | dsteward@employstats.com | (650) 681-4359 |
| Austin, TX | www.employstats.com | Palo Alto, CA |

Expert witness testimony list, full listing of speaking engagements, and writings available on request

Appendix  00117



ECONOMICS + STATISTICS

## Expert Witness Testimony Listing
## Dwight Steward, Ph.D.

Cora Greene v. Kempner Water Supply Corporation, deposition testimony, May 2018

Zulema Perez San Miguel, Individually; as Independent Administrator of the Estate of Kevin Daniel San Miguel Lopez; and as Next Friend of Julissa San Miguel; Kevin San Miguel, Jr; and Noah San Miguel v. Clean Scapes Management Company, LLC; Goodwill Temporary Services, Inc., d/b/a Goodwill Staffing Group, Inc. Bae Systems information and Electronic Systems Integration, Inc. and Scag Power Equipment, Inc., deposition testimony, April 2018.

Estate of Jordan Baker, by and through administrator, Janet Baker v. Juventino Castro, The City of Houston, RPI Management Company, LLC, and RPI Interests I, LTD, deposition testimony February 2018.

Balapuwaduge Mendis, on his own behalf and on behalf of all others similarly situated v. Schneider National Carriers, Inc., a Nevada Corporation, United States District Court Western District of Washington, deposition testimony February 2018.

Richard Patton v. Houston Independent School District, In the District Court of Harris County, Texas 295th Judicial District, deposition testimony January 2018.

Mandy Thompson and Kevin Torrez, individually and as next friends and representatives of Ayden Torrez, a minor v. St. David's Healthcare Partnership, L.P., LLP, d/b/a St. David's Medical Center; Jeff E. Hagen, M.D.; Jeff E. Hagen, M.D., P.A., d/b/a Austin OBGYN; and Maria E. Gutierrez, RNC, NP, MSN, In the District Court Travis County, Texas 353rd Judicial District, deposition testimony January 2018.

Jose Luis Alcantar, on behalf of himself and all others similarly situated v. Hobart Service, Hobart Food Equipment Group, Itw Food Equipment Group, LLC, and Does 1 through 100, inclusive, United States District Court, Central District of California, deposition testimony December 2017.

Karen Cunningham, Individually, as Heir at Law, and as Representative of the Estate of Steven Cunningham, Deceased; Sami Staley; Beatrice Cunningham; Jonathan Vigil; Andrew Tkaczyk; Zachary Johnson; James Riley; Timothy Irons; Charles Billings; Nathan Wilden; Christopher Davis; and Armando Cardona; and Daniel Luppino v. Nikki Hoke, as Representative of the Estate of Gregory M. Hoke, Deceased; Bordur Studios Coach Leasing LLC; and Big Sexy Grey Bus LLC; and Nikki Hoke, Individually, as Representative of the Estate of Gregory M. Hoke, Deceased, and as Next Friend of E.H. and H.H., minor children of Gregory M. Hoke, Deborah Hoke, Individually, and Russel Hoke, Individually v. Bridgestone Americas Tire Operations, LLC, a foreign Company which is the successor to Bridgestone/Firestone North American Tire, LLC, In the District Court of Hudspeth County, Texas 394th Judicial District, deposition testimony November 2017.

Jose F. Andino, individually and on behalf of himself and others similarly situated v. Kaiser Foundation Hospitals, a California Corporation, and Does 1 through 100, inclusive, Superior Court of the State of California For the County of Alameda, deposition testimony October 2017.

Jeffrey Fadness v. Charter Communications, Inc., In the District Court Travis County, Texas 261st Judicial District, deposition testimony October 2017.

Paris Shoots, Jonathan bell, Maxwell Turner, Tammy hope, Phillipp Ostrovsky, Brenda Brandt, Anissa Sanders, Najai McCutcheon, and Leticia Rodriquez, on behalf of themselves, the Proposed Rule 23 Classes and others similarly situated, v. IQOR Holdings, Inc., United States District Court District of Minnesota, deposition testimony August 2017.

Timothy K. Sargis and Dawn M. Sargis, Individually and as Next Friends of Madisyn Marie Loher, A Minor and as Personal representatives of the Estate of Michelle Loher, and Gary S. Loher, II v. HS Centex Trucking, LLC, Kevin Clay and USAA General Indemnity Company, In the District Court Coryell County, Texas 52nd Judicial District March 2017.

Stacey Burkhart and Brandon Burkhart Individually and As Parents and Next Friends of Austin Burkhart, a Minor v. United Regional Health Care System, Inc. d/b/a United Regional Hospital, United Regional Hospital, Texoma Women's Clinic, P.A. d/b/a The Women's Center, and Lawrence Y.H. Young, M.D., In the District Court 78th Judicial District Wichita County, Texas November 2016

Troy Slack, Jacob Grismer, Richard Erickson, Scott Praye, Gary H. Roberts, Robert P. Ullrich, Henry Ledesma, Timothy Helmick, Dennis Stuber, Eric Dublinkski, Sean P. Forney v. Swift Transportation Co., of Arizona, LLC., United States District Court Western District of Washington at Tacoma, deposition testimony November 2016

Richard Trusz v. UBS Realty Investors LLC and UBS AG, United States District Court District of Connecticut, deposition testimony September 2016

Amy L. Schneider and Janet E. Breneman, individually and on behalf of others similarly situated, v. Union Hospital, Inc., United States District Court Southern District of Indiana Terre Haute Division, deposition testimony June 2016

Corey Khansari, Debra Khansari and Michael Khansari v. The City of Houston, Chief of Police Charles A. McClelland, Jr., Officer William E. Rutherford, Officer Candace M. Bradshaw Vaughn, Officer Jillian McGowan, Officer Maria Hernandez, Officer Sean Hunter, Officer Jorge Luis Herrera, and Officer Walter Gaw, United States District Court Southern District of Texas Houston Division, trial testimony April 2016

Donald and Mary Trichel, individually and as Next Friends of Nicholas Trichel v. Union Pacific Railroad Company and Jeremy Ray Hampton, In the District Court of Harris County, Texas 125th Judicial District, deposition testimony April 2016

Appendix 00119

Virginia Nester and Robert Scott Nester, Individually and As Next Friends of C.N. and S.N., Minors v. Textron, Inc. d/b/a E-Z-GO United Rentals, Inc. f/k/a RSC Holdings, Inc. and/or RSC Equipment Rental, In the United States District Court for the Western District of Texas Austin Division, trial testimony March 2016

Chris Elliott O/B/O Himself and O/B/O All Other Similarly Situated, v. Schlumberger Technology Corporation and Schlumberger Limited (Schlumberger N.V.), United States District Court for the District of North Dakota Southeastern Division, deposition testimony March 2016

United States of America, ex rel. Louis Scutellaro v. Capitol Supply, Inc., United States District Court District of Columbia, deposition testimony February 2016

Monica Hague v. University of Texas Health Science Center at San Antonio, In the United States District Court for the Western District of Texas San Antonio Division, trial testimony January 2016

Arleen Delaronde v. Legend Classic Homes, Ltd., Bella Vista C.M.I., Ltd., In the United States District Court for the Southern District of Texas Houston Division, trial testimony December 2015

Genoveva Guzman and Abel Ochoa, Individually and as Parents and Next Friend of Maria Guadalupe Ochoa v. Tenet Healthcare Corporation, Hughan Frederick, M.D., Isis Obstetrics & Gynecology, LLC, A. Ellery, RN, North Fulton Hospitalist Group, LLC D/B/A North Fulton Regional Hospital A/K/A Tenet North Fulton Hospital, and John Does 1-10, In the State Court of Fulton County, State of Georgia, deposition testimony September 2015

Jose Arellano and Juan Montoya, individually, and on behalf of all others similarly situated v. Container Connection of Southern California, Inc., a California Corporation; and Does 1 through 100, Superior Court of the State of California for the County of Los Angeles, deposition testimony September 2015

Monica Hague v. University of Texas Health Science Center at San Antonio, In the United States District Court for the Western District of Texas San Antonio Division, deposition testimony August 2015

Jesus Holguin, Individually and o/b/o The Estate of Maria E. Holguin, Deceased, Estevan A. Gonzales, Jesus Ramon Holguin and Kassandra M. Holguin, Minor Children v. Baptist St. Anthony Health System, In the District Court of Potter County, Texas, deposition testimony July 2015

Mark Virant v. Encana Oil & Gas (USA), Inc. and Eric Marsh, Individually, In the District Court of Tarrant County, Texas 153 Judicial District, deposition testimony July 2015

Fred Devries, Ruby Teich, Janine Natoli, Rafael Santiago, Mark Malter, Adam Schwartz, individually and on behalf all others similarly situated v. Morgan Stanley & Co. LLC, f/k/a Morgan Stanley & Co. Incorporated, Morgan Stanley Smith Barney LLC, and Morgan Stanley, In the United States District Court for the Southern District of Florida, deposition testimony July 2015

Virginia Nester and Robert Scott Nester, Individually and As Next Friends of C.N. and S.N., Minors v. Textron, Inc. d/b/a E-Z-Go, United Rentals, Inc. f/k/a RSC Holdings, Inc. and/or RSC Holdings, Inc. and/or RSC Equipment Rental, In the United States District Court for the western District of Texas Austin Division, deposition testimony June 2015

Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes, on behalf of themselves and other similarly situated, v. Gentiva Health Services, Inc., In the United States District Court for the Eastern District of New York, deposition testimony June 2015

Karen Oubre, Individually and o/b/o The Estate of Larry Oubre, Deceased v. Kyle Mezger, M.D.; Christopher Thu, M.D.; and Capitol Anesthesiology Association, In the District Court of Travis County, Texas 126th Judicial District, Texas deposition testimony May 2015

Weird Times, LLC v. Sharon Ma and Doug Ma, In the District Court 353rd Judicial District Travis County, Texas, trial testimony March 2015

Armida Rodriguez and Chea Hill, individually, and on behalf of all other similarly situated and on behalf of the general public, vs. Burlington Coat Factory Warehouse Corporation, a New Jersey Corporation; Burlington Coat Factory of California LLC, a California Limited Liability Company; and Does 1 through 50, inclusive, United States District Court - Central District of California, deposition testimony February 2015

Guang Tian, Yan Nie, Jing Jian Wu, Zhen Sheng Yin, Tie Quan Ma, as individuals, and Ming Fang Tie, Yu Hong Chang, Yi Wu, Bao Jie Zhang, Chao Hui Liu, on Behalf of Themselves and all others similarly situated, and Christopher Cavaliere and Steven Lee, on behalf of themselves and as PAGA representatives v. Ma Laboratories, Inc., Abraham C. Ma, also known as Chih Keng Ma, and Christine Rao, also known as Ruiting C. Rao, Superior Court of the State of California County of Santa Clara Unlimited Jurisdiction, deposition testimony January 2015

Uzoamaka Enezuagu; Yoseph Awlachew; Kiflom Birhane; Desalgne Zema; Simon Gebrekiros; Jacqueline Jackson; Abebech Kassie; Abdou Ouedraogo; Raquel Pryce-King; Ephrem Tessema; Yonas Woldemicael; Shamara Wright; Helen Zegeye; Alemayehu Zeleke; Jekeia Sledge; Ann-Marie Glanville; Alex Garrett; Sara Kebeta; Getnet Retta; Emmanuel Vincent; Tatek Zema v. Board of Trustees of the University and Does 1 through 10 inclusive, Superior Court of the District of Columbia Civil Division, deposition testimony November 2014

Sergio Gutierrez, an individual; Hector Salazar, an individual, both individually on behalf of themselves and on behalf of all other similarly situated current and former employees of Defendant Commerce Casino v. California Commerce Club, Inc. doing business as Commerce Casino, and Does 1 through 50, inclusive, Superior Court of the State of California for the County of Los Angeles, deposition testimony November 2014

Yvette Anderson, et al., v. County of Ventura; and Does 1-10, inclusive, United States District Court, Central District of California, deposition testimony July 2014

Jesus Castro Romo v. The United States of America, United States District Court, District of Arizona, trial testimony July 2014

Ngan Huynh and Tuan M. Nguyen Individually and As Parents, Legal Guardians and Next Friends of Jonathan Nguyen, A Minor v. St. David's Healthcare Partnership, L.P.; LLP Individually and d/b/a St. David's North Austin Medical Center a/k/a North Austin Medical Center; Round Rock Hospital, Inc.,; St. David's Foundation p/k/a St. David's Health Care System, Inc.,; Renaissance Women's Group, P.A.; Tara A. Mills, M.D.; Devin M. Garza, M.D.; Kristen Barkow a/k/a Kristen Calnan, NP, In the District Court Travis County, Texas, 200th Judicial District, deposition testimony July 2014

Veronica Ochoa Valenzuela and Cesar De Viana, husband and wife v. Ford Motor Company, a Foreign Corporation, In the United States District Court for the District of Arizona, trial testimony May 2014

Johnson, et al v. York Claims Service, Inc., Superior Court of the State of California in and for the County of Sacramento, trial testimony May 2014

Michael Mercieca v. Tracey Rummel, and Microsoft Corporation, In the District Court 353rd Judicial District Travis County, Texas, trial testimony May 2014

Johnson, et al v. York Claims Service, Inc., Superior Court of the State of California in and for the County of Sacramento, deposition testimony April 2014

Yadira Hernandez v. R.E.S.A., Inc., d/b/a Keller Williams Realty and Carolina Salcedo Cuevas, In the District Court 131st Judicial District, Bexar County, Texas, trial testimony April 2014

Charles E. Amos, II v. Plan Administrator of Orion Healthcorp, Inc., Employee Benefit Plans, Orion Healthcorp, Inc., Employee Benefit Plans, Orion Healthcorp, Inc., RMI Physician Services Corporation, Chi T. "Cindy" Luu, Kimberly Singleton, RMI Physician Services Corporation Employee Benefit Plans, Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans, In the United States District Court for the Southern District of Texas Houston Division, deposition testimony April 2014

Gerald Bramlett, v. Dimensional Investment LLC before the American Arbitration Association, Austin, Texas, arbitration testimony February 2014

Gerald Bramlett, v. Dimensional Investment LLC before the American Arbitration Association, Austin, Texas, deposition testimony December 2013

Renee M. Hawkins, Individually and on behalf of others similarly situation v. Alorica, Incorporated, United States District Court for the Southern District of Indiana Terre Haute Division, deposition testimony December 2013

Jodi Soukup, Individually, and as Parent, Legal Guardian and Next Friend of Ryan Burford, A Minor v. Methodist Healthcare Ministries of South Texas, Inc. d/b/a Southwest Texas Methodist Hospital, and/or d/b/a or a/k/a/ Methodist Hospital; Columbia/HCA Healthcare Corporation of Central Texas; Methodist Healthcare Ministries of South Texas Inc.; Patricia K. Brougher, M.D. and Patricia K. Brougher, M.D., P.A., In the District Court 45th Judicial District Bexar County, Texas, deposition testimony December 2013

Ben Deason v. Jennifer Newsom, in the 145th District Court in and for the County of Nacogdoches County, Texas, deposition testimony October 2013

Tracy Windrum, Individually, as representative of the Estate of Lancer Windrum, and on behalf of her minor children Bethany Windrum, Jacob Windrum, and Holly Windrum v. Victor Kareh, M.D., Harpaul Gill, M.D., North Cypress Medical Center, North Cypress Medical Center Operating Company, GP, LLC, North Cypress Medical Center Operating Company, LTD and Coresource, Inc., In the District Court of Harris County, Texas, 133rd Judicial District, trial testimony October 2013

Victoria "Anna" Janssen v. O'Reilly Automotive Stores, Inc., In the United States District Court for the Northern District of Texas Wichita Falls Division, Wichita Falls, Texas, trial testimony September 2013

Denise K. Aguilar v. St. David's Healthcare Partnership, LP, LLC d/b/a South Austin Medical Center, American Arbitration Association, Austin, Texas, deposition testimony August 2013

Deann Hojnacki v. Trisun Healthcare, LLC, Arbitration Austin, Texas, deposition testimony August 2013

Yadira Hernandez v. R.E.S.A., Inc., D/B/A Keller Williams Realty and Carolina Salcedo Cuevas, In the District Court 131st Judicial District, Bexar County, Texas, deposition testimony May 2013

Y. Hoang Do, M.D.  v. Texas Health and Human Services Commission, Office of Inspector General, Before the Health and Human Services Commission Appeals Division, Travis County, Texas, trial testimony May 2013

David Meyer, Individually and o/b/o The Estate of Doreen Rae Meyer, Deceased, Sunny Ruud, Brandy Cebula, and Jon Novitsky o/b/o Krystin Novitsky, Minor Child v. Stephen Bodi, P.A. and M.D.'s Cyber Clinic, P.A. D/B/A Northwest Diagnostic Clinic, In the District Court of Williamson County, Texas 368th Judicial District, deposition testimony March 2013

Instant Technology, LLC, an Illinois Limited Liability Company, v. Elizabeth Defazio, Laura Rehn, Megan Marker, Bethany Meek, Erin Bauer, Joel Katz, Andrea Katz, individuals and Connect Search, LLC, a Delaware Limited Liability Company, In the United States District Court for the Northern District of Illinois, Eastern Division, deposition testimony January 2013

United Biologics, LLC, D/B/A United Allergy Labs & Nicolas Hollis v. Texas Allergy, Asthma and Immunology Society; Stuart L. Abramson, MD, PHD; Wesley W. Stafford, MD; Theodore M. Freeman, MD; William R. McKenna, MD and Michael P. Vaughn, MD, PHD, In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony January 2013

Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes, on behalf of themselves and others similarly situated, v. Gentiva Health Services, Inc., In the United States District Court Northern District of Georgia Atlanta Division, deposition testimony January 2013

Jose Luis Alcantar, on behalf of himself and all others similarly situated v. Hobart Service, et al., United States District Court for the Western District of Texas, deposition testimony January 2013

Certain Underwriters at Lloyd's London and Professional Liability Insurance Services, Inc. v. IMA of Kansas, Inc., In the District Court of Travis County, Texas 353rd Judicial District, trial testimony November 2012

Equal Employment Opportunity Commission v. Valero Refining – Texas LP, In the United State District Court for the Southern District of Texas Galveston Division, deposition testimony October 2012

United Biologics, LLC, Formerly d/b/a United Allergy Services, Formerly d/b/a United Allergy Labs & Nicolas Hollis v. Texas Allergy, Asthma and Immunology Society; Stuart L. Abramson, MD, PHD; Wesley W. Stafford, MD; Theodore M. Freeman, MD; William R. McKenna, MD, and Michael P. Vaughn, MD, PHD., In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony October 2012

Y. Hoang Do, M.D. v. Texas Health and Human Services Commission, Office of Inspector General, before the Health and Human Services Commission Appeals Division, Texas, deposition testimony October 2012

Xochitl Segovia, v. Williams Brothers Construction Company, Inc., In the District Court of Harris County, Texas 333 Judicial District, trial testimony August 2012

ADP, Inc., a Delaware Corporation v. National Merchant Alliance, LLC, a Nevada Limited Liability Company, United States District Court for the Western District of Texas, deposition testimony June 2012

Dustin R. Thompson, v. J4 Development, LP, In the District Court of Travis County, Texas 200th Judicial District, deposition testimony June 2012

Certain Underwriters at Lloyd's London and Professional Liability Insurance Services, Inc. v. IMA of Kansas, Inc., In the District Court of Travis County, Texas 353rd Judicial District, deposition testimony May 2012

James R. Irion, III and Veniece M. Irion v. Sunrise Senior Living Management, Inc., D/B/A Brighton Gardens of Austin; and Prime Care Seven, LLC D/B/A Brighton Gardens of Austin, United States District Court Western District of Texas Austin Division, deposition testimony May 2012

Elsa Ortega on behalf of S.L.O. and J.L.O. minors, et al v. United States of America, Jose Vicente Gaytan-Alcaya, et al, v. United States of America; Elsa Ortega and John Doe Ortega, Husband and Wife, In the United States District Court for the District of Arizona, deposition testimony April 2012

William Kierre v. Gerry Lawler, M.D. and Hendrick Anesthesia Network, In the District Court of Taylor County 104th Judicial District, trial testimony April 2012

Dawn Leamon, v. KBR, Inc.; et al, In the United States District Court for the Southern District of Texas Houston Division deposition, testimony April 2012

Wilson Industries, L.P., v. Select Energy Services, LLC; and Bell Supply, LLC; In the District Court of Ector County, Texas 244th Judicial District, deposition testimony March 2012

Debra Nicholas v. San Antonio Water System, In the District Court 57th Judicial District Bexar County, Texas, trial testimony March 2012

Lielonnie R. Lewis v. Save Mart Supermarkets and Does One through Fifty, inclusive, Superior Court of the State of California in and for the County of Alameda, deposition testimony February 2012
Flordeliza Escano, Marila P. Maximo, Joel T. Catublas, and Penny Burney, on behalf of themselves and behalf of all other similarly situated, v. Kindred Healthcare Operating, Inc., a Delaware Corporation, Kindred Healthcare, Inc., a Delaware Corporation, Specialty Hospitals of Southern California, a business form unknown, and Does 1 through 100, United States District Court Central District of California (Western Division – Los Angeles), deposition testimony February 2012

Anthony Stout, on behalf of himself and others similarly situated, v. Universal Ensco, Inc., United States District Court Southern District of Texas Houston Division, deposition testimony November 2011

Lashone Purnell, as an individual and on behalf of all employees similarly situated, v. Sunrise Senior Living Management, Inc., and Does 1 through 50, inclusive, United States District Court Central District of California Southern Division, deposition testimony August 2011

Jamie Leigh Jones v. Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR); Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International Inc.; Kellogg Brown & Root, LLC; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Inc.; Kellogg Brown & Root, S. de R.L.; Kellogg Brown & Root (KBR), Inc.; KBR Technical Services, Inc.; Overseas Administrative Services, Ltd.; Eric Iler, Charles Boartz; Several John Doe Rapists and the United States of America, In the United States District Court for the Southern District of Texas (Houston Division), trial testimony June 2011

Debbie Goodwill, Individually and on Behalf of the Estate of Larry Goodwill, Cody Goodwill, and Wendy Christian v. United Parcel Service, Inc., et al, In the U.S. District Court for The Western District of Texas Austin Division, trial testimony June 2011

Veronica Ochoa Valenzuela and Cesar De Viana, husband and wife v. Ford Motor Company, a Foreign Corporation, In the United States District Court for the District of Arizona, deposition testimony
May 2011

Jamie Leigh Jones v. Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR); Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International Inc.; Kellogg Brown & Root, LLC; Kellogg Brown & Root, Inc.; Kellogg Brown & Root Inc.; Kellogg Brown & Root, S. de R.L.; Kellogg Brown & Root (KBR), Inc.; KBR Technical Services, Inc.; Overseas Administrative Services, Ltd.; Eric Iler, Charles Boartz; Several John Doe Rapists and the United States of America, In the United States District Court for the Southern District of Texas (Houston Division), deposition testimony May 2011

Michael L. Collier, Ph.D. v. Texas Tech University and John Whitmore in his Official Capacity, In the District Court 99th Judicial District Lubbock County, Texas, trial testimony May 2011

Debbie Goodwill, Individually and on Behalf of the Estate of Larry Goodwill, Cody Goodwill, and Wendy Christian Plaintiffs, Cecelia Center, Individually and as Administrator of the Estate of George Reagan Center Intervenors, v. United Parcel Service, Inc., Tire Centers, LLC d/b/a TCI, and The Goodyear Tire & Rubber Company, In the United States District Court for the Western District of Texas Austin Division, deposition testimony March 2011

Albert Kevin Martin, A/K/A Kevin Martin v. City of San Antonio and Its Agent, San Antonio Water System, In the District Court 224th Judicial District, Bexar County, Texas, trial testimony February 2011

Delanie Ney, v. iProfile, LLC, Accord Human Resources, Inc. Virgo Capital Fund I, LP, Hemanth Parasuram, Guhan Swaminathan and Arun Prakash, Arbitration Cause No. 701600042810, Austin, Texas, arbitration testimony January 2011

State of Texas ex rel., Ven-A-Care of the Florida Keys, Inc. v. Alpharma USPD f/k/a Barrenational, Inc., Purepac Pharmaceutical Co., Actavis Mid Atlantic LLC, Actavis Elizabeth LLC, Barr Pharmaceuticals, Inc., Barr Laboratories, Inc., Duramed Pharmaceuticals, Inc., Pliva, Inc. f/k/a Sidmak Laboratories, Inc., Odyssey Pharmaceuticals, Inc., PAR Pharmaceutical, Inc., PAR Pharmaceutical Companies, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceutical, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Andrx Pharmaceuticals, Inc., In the District Court of Travis County, Texas, 419th Judicial District, trial testimony, January 2011

Kevin Blackwell and Amber Blackwell, Individually and As Next Friend of K.B. and S.B., Minors v. Nissan Motor CO., LTD. And Nissan North America, Inc., In the United States District Court for the Eastern District of Texas Beaumont Division, deposition testimony January 2011

Nicholas Tableriou, Individually, and as Administrator of the Estate of Jane Tableriou, Deceased, Nicole Tableriou, and Brett Tableriou v. John Marsden, M.D., Marsden One GP, LLC, Marsden One, LTD., Marsden Management, LLC, and The American Institute of Gastric Banding, LTD., D/B/A True Results, In the District Court Travis County, Texas 261st Judicial District, deposition testimony October 2010

Prudence Adams v. Centex Freight Lines, LLC, In the District Court Travis County, Texas Judicial District, trial testimony October 2010

Jeanette Eberhart; Hamilton Beaux O'Keady-Elicock; Howard Hill; and Philip Marc Orlow v. Frye Claims Consultation and Administration, Inc. a California Corporation, In the Superior Court of the State of California, Alameda County, deposition testimony September 2010

Shaunetta Eddings, individually and on behalf of a class of similarly situation individuals, v. Health Net, Inc., In the United States District Court for the Central District of California, deposition testimony September 2010

Equal Employment Opportunity Commission and Connie Beseda, v. Zachry Industrial, Inc. (San Antonio) F/K/A Zachry Construction Corporation, (San Antonio), In the United States District Court for the Western District of Texas San Antonio Division, deposition testimony September 2010

Candice Warde Rodriguez, Individually and on Behalf of Benjamin Wallace Rodriguez, a Minor, v. The United States of America, In the United States District Court, Eastern District of New York, deposition testimony August 2010

Ronica R. Tabor on behalf of herself and all others similarly situated, Dacia S. Gray on behalf of herself and all others similarly situated, v. Hilti, Inc. a Domestic For Profit Business Corporation, and Hilti of America, Inc., a Foreign For Profit Business Corporation, In the United States District Court for the Northern District of Oklahoma, deposition testimony August 2010

State of Texas ex rel., Ven-A-Care of the Florida Keys, Inc. v. Alpharma USPD f/k/a Barrenational, Inc., Purepac Pharmaceutical Co., Actavis Mid Atlantic LLC, Actavis Elizabeth LLC, Barr Pharmaceuticals, Inc., Barr Laboratories, Inc., Duramed Pharmaceuticals, Inc., Pliva, Inc. f/k/a Sidmak Laboratories, Inc., Odyssey Pharmaceuticals, Inc., PAR Pharmaceutical, Inc., PAR Pharmaceutical Companies, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc. f/k/a Schein Pharmaceutical, Inc., Rugby Laboratories, Inc., Oclassen Pharmaceuticals, Inc., Marsam Pharmaceuticals, Inc., and Andrx Pharmaceuticals, Inc., In the District Court of Travis County, Texas, 419th Judicial District, deposition testimony July 2010

Randall Barnett v. City of Austin, et al.; 353rd Judicial District Court, Travis County, Texas, hearing testimony May 2010

Lugo, et al., v. Farmers Pride, In the United States District Court for the District of Pennsylvania, deposition testimony May 2010

William Kierre v. Gary Lawler, M.D. and Hendrick Anesthesia Network, In the District Court, Taylor County, Texas, 104th Judicial District, deposition testimony April 2010

Ann Otsuka, an individual and on behalf of all others similarly situated; Janis Keefe, an individual; Corinne Phipps, and individual; Justin Kiser, an individual; and Renee Davis v. Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing Business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc., United States District Court Northern District of California, trial testimony March 2010

Wai Chan, On behalf of herself and all others similarly situated v. Wells Fargo Financial, Inc., In the United States District Court for the Western District of Missouri, deposition testimony February 2010

Billy Petty, Edward Petty and Amanda Stewart v. Devesh Ramnath, M.D., In the District Court Administratively transferred to the 95th Judicial District Dallas County, Texas, deposition testimony February 2010

Luna v. Weddington, In the District Court of Harris County, Texas Judicial District 234, trial testimony January 2010

Ann Otsuka, an individual and on behalf of all others similarly situated; Janis Keefe, an individual; Corinne Phipps, and individual; Justin Kiser, an individual; and Renee Davis v. Polo Ralph Lauren Corporation; Polo Retail, LLC; Polo Ralph Lauren Corporation, doing Business in California as Polo Retail Corporation; and Fashions Outlet of America, Inc., United States District Court Northern District of California, deposition testimony December 2009

Mark Scherer, Doug Paslay and Hazel Bailey, individually, and on behalf of all other similarly situated v. Duke Energy Fossil-Hydro California Inc., a Delaware Corporation, and Wood Group Power Operations, Inc. A Nevada Corporation and Does 1 to 50, in the Superior Court of the State of California, County of Los Angeles, deposition testimony December 2009

Michael K. McLennan, v. Applied Materials, Inc., United States District Court Western District of Texas Austin Division, deposition testimony December 2009

Wilfredo Cruz, Matthew Allbee, Guadalupe Varela, Raul Torres, and Ken Joseph, individually and on behalf of a class of similarly situation persons, v. Unilock Chicago, Inc., an Illinois Corporation, In the Circuit Court of the Sixteenth Judicial District Kane County, Illinois, deposition testimony December 2009

Daniel Friedenbach, Individually and on behalf of all survivors of the Estate of Lorie Frazier Friedenbach, v. Gary A. Croll, in the District Court of Dallas County, Texas, 14th Judicial District, deposition testimony November 2009

Fermin Cortez, et al., v. Nebraska Beef, Inc., and Nebraska Beef, LTD., David Chuol, et al., v. Nebraska Beef, LTD., The United States District  Court For The District of Nebraska, deposition testimony November 2009

Jeff Gebenus and Wesley Chong, individuals, on behalf of themselves and others similarly situated v. Rite Aid Corporation, a Delaware corporation, and Thrifty Payless, Inc., a California Corporation, in the Superior Court Of Washington For King County, deposition testimony November 2009

Margaret A. Guerra v. San Antonio Water System; Pending in the 73rd Judicial District Court, Bexar County, Texas, deposition testimony September 2009

David and Esther Luna v. Lloyd Damon Weddington, M.D. and Diabetes Center of America, In The District Court Of Harris County, Texas, 234Th Judicial District, deposition testimony September 2009

Wilfredo Cruz, Matthew Albee, Guadalupe Varela And Raul Torres, Individually and on behalf of a class of similarly situated persons, v. Unilock Chicago, Inc., An Illinois Corporation, and Jonathon Harn, An Individual, In the Circuit Court Of Sixteenth Judicial District, Kane County, Illinois, deposition testimony September 2009

Kent Schmidt, v. KMS Retail-Ben White, LPKMS Retail Euless, LA, Kent Stainback, d/b/a The Stainback Organization, Pete Becerra, Jimmy Evans Company, Ltd., In The District Court, 345th Judicial District, Travis  County, Texas, deposition testimony August 2009

Howard Hopkins et al, v. The First American Corporation And First American Real Estate Tax Service, In The United States District Court Of Texas, Fort Worth Division, deposition testimony July 2009

Westin Casuarina Las Vegas, Hotel, Casino & Spa v. The Coaching Center, LLC, Before The American Arbitration Association, Arbitration meeting June 2009

Billy Ray Tratree v. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United States District Court for the Southern District of Texas, deposition testimony June 2009

Kent Schmidt, v. KMS Retail-Ben White, LPKMS Retail Euless, LA, Kent Stainback, d/b/a The Stainback Organization, Pete Becerra, Jimmy Evans Company, Ltd., In The District Court, 345th Judicial District, Travis  County, Texas, deposition testimony May 2009

Juan Manual Lopez-Verduzco, v. CTNA, et al Arizona Superior Court, County Of Maricopa, deposition testimony April 2009

James J. Byerlotzer v. Key Energy Services, Inc., In The District Court Of Harris County, Texas 55Th Judicial District, deposition testimony March 2009

David Liszt and Karen Liszt v. Richard B. Stovall, MD.; Luis Mignucci, MD., Individually and d/b/a Luis Mignucci, MD., P.A., and d/b/a NeuroSpine Surgical Consultants; and Medical Center of Plano; In the 219th District Court of Collin County, Texas, deposition testimony March 2009

Marie Popek, Individually and on Behalf of Those Similarly Situated, v. Allied Barton Security Services LLC, a Delaware Limited Liability Company; Allied Barton Security Services LP, a Delaware Limited Partnership; and Does 1 through 30, inclusive, Superior Court of the State of California for the County of San Francisco, CA., deposition testimony December 2008

Charles Heath Leiber v. IE Miller Service L.P., IE Miller-Fowler L.L.C., and Noah Charles Lawson, In the District Court 12th Judicial District of Grimes County, Texas, deposition testimony November 2008

Billy Ray Tratree v. B.P. Pipelines, Inc., Kelley Gleason and Roy Bowden, in the United States District Court for the Southern District of Texas, deposition testimony November 2008
Doris H. Gray, a married woman, v. Motorola, Inc., a Delaware Corporation, In the Superior Court in and for Maricopa County in the State of Arizona, deposition testimony November 2008

Fred Klecka v. Allstate Insurance Company and Kathleen Abed, In The District Court 37th Judicial District, Bexar County, Texas, trial testimony November 2008

Esteban Barron v. Larry Paul Hatter, Jr., And Estes Express Lines d/b/a Estes Express Lines, Inc., In The District Court, 146Th Judicial District, Bell County, Texas, deposition testimony October, 2008

UNIVAR USA, Inc., v. Stacey B. Blanton, In The District Court Harris County, Texas 61st Judicial District, deposition testimony August 2008

Pedro Gonzalez  v. City Of San Antonio, Acting By And  Through Its Agent, City Public Service Board d/b/a CPS Energy, In The District Court 225th Judicial District Bexar County, trial testimony, San Antonio, Texas August 2008

Charles Young v. Brand Scaffold Services, LLC, In the Eastern District Court for the Eastern District of Texas, Beaumont Division, deposition testimony June 2008.

Al Scott, Individually And As Administrator Of The Estate Of Dottie Scott, Deceased, And  Susan Scott And Sherri Scott  v. Sandip V.Mathur, M.D. and Abilene Regional Medical Center In The 42nd Judicial District Court of Taylor County Texas, deposition testimony April 2008

International Association Of  Firefighters, LOCAL 629 AFL-CIO, et al v. City Of Monroe, in the United States District Court, Western District Of Louisiana, Monroe Division, deposition testimony March 2008

Jennifer Jarmon and, Cassius Jarmon, Individually and as Co-Administrators of the estate of Cassidy Jarmon, Deceased, and as Next Friends to Callie Jarmon, a minor child v. Delbert J. Davison, Old American County Mutual, Prine Towing and Recovery, Inc. COPART, Inc., and Daimler Chrysler

Corporation, In the District Court, 412th Judicial District, Johnson County, Texas, deposition testimony February 2008

Veronica Ramirez Aguilar, Individually, as representative of the estate of Mario Islas Minero, and on behalf of all wrongful death beneficiaries v. Heart Employee Leasing, Inc. D/B/A and Heart HR, and S and D Plumbing- Taylor LLC, In the District Court of Travis County, Texas, 353rd Judicial District, deposition testimony January 2008

Rolando Garcia v. Design Werks, Inc., In the District Court of Travis County, 98th Judicial District, deposition testimony January 2008

Wilford Vogt, James P. Gauthier, and Humberto Reyna, Jr., for themselves and all others similarly-situated United States District Court, for the Northern District Of Texas Dallas, Dallas Division v. Texas Instruments Incorporated, deposition testimony November 2007

Randall Barnett, In The District Court, 353RD Judicial District v. City Of Austin, Powell Austin Properties, Ltd., Powell Holdings, Inc., Makota, Inc., and Alejandro Herrera, Travis County, Texas, deposition testimony November 2007

Cynthia S. Escamilla v. United Services Automobile Association, a Reciprocal, and Michael Barry, arbitration November 2007

Cynthia S. Escamilla v. United Services Automobile Association, a Reciprocal, and Michael Barry, deposition testimony October 2007

Jesus F. Diaz, Individually, as next friend of Marco A. Montoya and Racquel A. Diaz, minors and as dependent Co-Administrator of the Estate of Maria E. Diaz; James L. Caldwell, as dependent Co-Administrator of the Estate of Maria E. Diaz; Alejandro E. Diaz' and Isidora Gonzales v. General Motors Company, Autonation USA d/b/a Champion Chevrolet, H. E. Butt Grocery Company and Gilbert E. Delgado III in the Probate Court, Travis County Texas, deposition testimony August 2007

Angela Kay Warden, and husband, Brent Warden v. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, trial testimony May 2007

Angela Kay Warden, and husband, Brent Warden v. Wendell B. Ashby, MD, In The 108th District Court, Potter County, Texas, deposition testimony May 2007

William Montano and Doris Lucero v. Christmas By Krebs Corp., In The United States District Court For The District Of New Mexico, deposition testimony March 2007

Daniel J. Davis, III and Yvonne Davis v. Worthy Warnack, M.D., Britt T. Daniel, M.D. and Margaret Hollar, D.O.; In the District Court Dallas County, Texas 95th Judicial District, deposition testimony February 2007

Julian James, Individually, Daphne Bates Harrison, et al. v. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, trial testimony January 2007

Sheila K. Robinson, Plaintiff, in the District Court of Brazos County, Texas v. Texas A&M University, Defendant in the 85th Judicial District, College Station, Texas, trial testimony January 2007

Viridiana Mata, Individually and Alejandro Rodriguez Individually, and all on Behalf of Genoveva Rodriguez, a Minor v. Mission Hospital and Heather A. Daley, M.D. 370th Judicial District in the District Court of Hidalgo County, Texas, deposition testimony December 2006

Billy Ray Tratree v. B.P. Pipelines, Inc.; In the United States District Court for the Southern District of Texas Houston Division, trial testimony October 2006

Julian James, Individually; Daphne Bates Harrison, Individually, et al. v. Harris County Sheriff's Department and William Wilkinson; In the United States District Court for the Southern District of Texas Houston Division, deposition October 2006

Texas Health and Human Services Commission, Medicaid and other Health and Human Services Fraud and Abuse Program Integrity - Legal Action Relating to Dr. Turner Lewis, M.D., administrative hearing September 2006

Billy Ray Tratree v. B.P. Pipelines, Inc.; In the United States District Court for the Southern District of Texas Houston Division, trial testimony August 2006

Julian James, Individually, Daphne Bates Harrison, et al., v. Harris County Sheriff's Department, et al, In the United States Court for the Southern District of Texas, Houston Division, testimony deposition March 2006

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company In the United States District Court for the Southern District of Texas, Houston Division, trial testimony February 2006

Frederick L. Risker v. Mahnaz Naveed Shah, M.D., Kelsey –Seybold Medical Group, P.A., and Gramercy Surgery Center, Ltd. D/B/A Gramercy Outpatient Surgery Center, deposition testimony November 2005

Larry Butler and Cathy Butler, Individually and on Behalf of Brittany Butler, a minor, and Erin Ferguson v. Kyle Kennedy, Russell Kennedy, Randi K. Kennedy, and Dana Harris, deposition testimony September 2005

Cheryl Smith, Individually and as Guardian and Next Friend of Michelle Smith, an Incapacitated Person v. Reyna Jean Noble, Ross Road Boring, Co., and Bobby L. Lambright, and Mark Huber, Individually and on Behalf of Jessica Huber, A Minor v. Ross Road Boring, Co., and Bobby L. Lambright, deposition and trial testimony August 2005

Amy Adkins v. Futurion Associates, Inc., deposition testimony August 2005

Jennifer Passi, Individually and a/n/f of Gracelyn Ann and Grant Michael Passi, Minor Children and as Representative of the Estate of Michael Vincent Passi, deceased v. Dr. Emery W. Dilling and Dr. Staton L. Awtrey; In Travis County, Texas, deposition testimony August 2005

Tanya Valdez, as next friend of Alejandro Ruben Pando, a minor and Lelia Alvarez, Individually and as representative of the estate of Ruben Pando, Jr., deceased v. Brinker Texas, L.P. D/B/A On The Border Mexican Grill & Cantina, Brinker Chili's Texas, Inc. D/B/A On The Border Mexican Café, Brinker International, Inc, Chili's Beverage Company, Inc., and Marlene Muniz as independent administrative and personal representative of the estate of Felipe Ornelas, Jr., deposition testimony 2005

Vanessa Sinegaure, Individually and as a Representative of the Estate of Darnell Eugene Sineguare v. Bally Total Fitness Corporation, et al; In the 334th Judicial District Court, Harris County, Texas, deposition and trial testimony 2005

Jerry L. Bigelow, Individually and as Next Friend of B.B., J.N.B., J.T.B. and S.B., Minors v. Living Picture AG, Living Picture Ltd., Living Picture GmbH and New York Lighter Co., Inc.; U.S. District Court, Western District of Texas, Austin Division, deposition testimony 2005

Suresh Dutta v. David Pistenmaa, In the United States District Court for the Northern District of Texas, Dallas Division, deposition and trial testimony 2005

Carrie Bennett, Individually as Representative of the Estate of Roy Edward Bennett, Deceased, and as Next Friend of Lane Edward Bennett, Cody Lee Bennett and April Anne Bennett v. Stephens Martin Paving, LP, Mobile Products, Inc. D/B/A Lay-Mor ; In the District Court, Taylor County, Texas, 42nd Judicial District, deposition testimony 2005

Robert Edwin Wills v. Sysco Food Services of Austin, L.P. and Rickey Charles Green In the 82nd Judicial District Court of Robertson County, Texas, deposition testimony 2005

Michael Gibson v. Ondeo Nalco Energy Services, Inc. and Ondeo Nalco Company; In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2005

Regina Kelly, et al. v. John Paschall et al.; In the United States District Court for the Western District of Texas; Waco Division, deposition testimony 2004 and 2005

Charles White v. Technip USA Corporation and Technip, Inc.; In the 11th Judicial District Court of Harris County, Texas, deposition testimony 2005

Mike Arismendez and Elva Arismendez v. Covenant Health Systems d/b/a Covenant Medical Center; In the 237th District Court of Lubbock County, Texas, deposition testimony 2005

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-Rm class certification 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, class certification 2004

Margia Blankenship, et al. v. Marathon Oil, In the District Court of Harris County 281st Judicial District, deposition testimony 2004

Janet Herdman, et al. v. El Paso Energy Corporation et al., In the District Court of Harris County, Texas 234 Judicial District, deposition testimony 2004

Sylvia Garcia and Rachel Garcia, Individually and on Behalf of the Estate of Richard Garcia, Deceased v. Ted L. Phipps, M.D. and The Lubbock Digestive Disease Associates, P.A. and Covenant Health Systems d/b/a Covenant Medical Center In The 237th District Court of Lubbock County, Texas, deposition testimony 2004

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2004

Jason Malone v. D.R. Horton – Emerald, Ltd.; In the 129th Judicial District Court of Harris County, Texas, deposition testimony 2003

Donald Castleberry and Mary Castleberry v. R. Douglas Mills, M.D., Nurse Jane Doe, St. David's Healthcare System, L.P. d/b/a North Austin Medical Center and Capital Emergency Associates; In The 353rd Judicial District Court of Travis County, Texas, deposition testimony 2003

Hammer Trucking, Inc. v. St. Paul Fire and Marine Insurance Company, et al.; In the 271st Judicial District Court of Wise County, Texas, deposition testimony 2003

Rodney Wayne Hurt, M.D. v. Southwest Lincoln Mercury, deposition testimony 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, deposition testimony 2003

John McKelvey and Lawanda McKelvey v. Arctic Pipe Inspection, Inc.; In the 333rd Judicial District Court, Harris County, Texas, deposition testimony 2003

Gwendolyn Mason v. American Electric Power/Central Power and Light Company, In the United States District Court, Western District, deposition testimony 2003

Linda Webb, Individually and on behalf of others similarly situated, v. Barnes Group Inc States District Court, Northern District of Texas, Dallas Division; Consolidated Case No. 3-02CV2716-R deposition testimony 2003

Clawson v. Michael Landess and Covert Ford; In the district court of Travis County, Texas, 345th judicial district, deposition testimony 2003

Juan T. Gonzales v. S & B Engineers and Contractors, Ltd.; In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2003

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, trial testimony 2003

Gwendolyn Mason v. American Electric Power/Central Power and Light Company, In the United States District Court, Western District, trial testimony 2003

Appendix  00133

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, deposition testimony 2002

Nicole Terry, et al. v. Qwest Communications, Inc., Santos Ruiz Castillo, and Hertz Equipment Rental, Inc.; In the 82nd District Court of Robertson County, Texas, deposition testimony 2002

Maria Hilda Rodriguez v. Emerson Electric Co et al., In the United States District Court for the Southern District of Texas, McAllen Division, deposition testimony 2002

In Re: Ambrocio Suarez, Jr., Deceased; In the Probate Court #2 of Harris County, Texas, deposition testimony 2002

Robert L. Hunt and Lisa S. Hunt v. Century 21 Ripley Realty, Robert H. Carroll and Sylvia K. Carroll; in the District Court Williamson County, Texas, 26th Judicial District, deposition testimony 2002

Marcelyn K. Boone, Individually, and on behalf of similarly situated persons, Plaintiff v. Union Carbide Corporation, Defendant; United States District Court, Southern District of Texas, Galveston Division, deposition testimony 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, deposition testimony 2002

Tranquilino C. Munoz v. Newtron, Inc. and John Grant, In the District Court, Jefferson County, Texas 60th Judicial District, deposition testimony 2002

Kirk Chi v. Dell Computer Corporation; In the United States District Court, Western District of Texas, deposition testimony 2002

Pablo Reyes v. Glesby Marks Corporation; Atlas Air Conditioning Company, L.P.; Comfort Systems U.S.A., Inc.; Atlas-Accurate Holdings, L.L.C. and John Bolan; In the District Court of Harris County, Texas, 189th Judicial District, deposition testimony 2002

Gwendolyn Mason v. American Electric Power/Central Power and Light Company; In the Southern District of Texas, Corpus Christi Division, deposition and trial testimony 2002

Dario Ibarra v. Pat Haas, d/b/a Patrick Haas Construction and Barton Creek Lakeside, LLC, in the 345th Judicial District Court of Travis County, Texas, Personal Injury, deposition testimony 2002

Benavides v. Cushman et al, In the District Court of Harris County, Texas; 280th Judicial District, deposition testimony 2002

Alcatel USA, Inc. v. Cisco Systems, Inc., In the United States District Court for the Eastern District of Texas, Sherman Division, deposition testimony 2002

Thomas J. Galland v. David L. Winn; In the District Court of Williamson County, Texas, 368th Judicial District, trial testimony 2002

Mandy De Leon v. Ivan Melendez, M.D et al., In the District Court, Hidalgo County, Texas, 332nd Judicial District, trial testimony 2002

Juanita Fletcher v. City of Houston, In the 189th Judicial District Court, Harris County, Texas, trial testimony 2002

Keith Ferrell and Tracey Ware v Robert Robinson and the City of Houston, In the County Civil Court at Law Number One, Harris County, Texas, deposition testimony 2001

Barbara LaRoche v. Daughters of Charity Health Services of Austin, et al, In the 126th Judicial District Court of Travis County, Texas deposition testimony 2001

Brandenburg v. Georgetown Independent School District, United States District Court, Western District of Texas, trial testimony 2001

EEOC v. BP Amoco et al., In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2000

Gomez v. United Parcel Service, United States District Court, Western District of Texas, deposition testimony 2000

Pineda v. The City of Houston, In the United States District Court for the Southern District of Texas, Houston Division, deposition testimony 2000

McDonald v. Dr. Sophia Burns, M.D., 268th District Court Fort Bend County, Texas, deposition testimony 2000

Michelle Toussaint v. Sonic Restaurant, In the 136th District Court of Jefferson County, Texas, deposition testimony 2000

Woolf v. Vincent, M.D., 9th District Court, Polk County Texas, deposition testimony 2000

Isaac Robinson as Next Friend of Chasity Amanda Robinson, Arizona Jackson and Earlean Murray, as Executive of the Estate of Ruby McDonald v. Dr. Sophia Burns, M.D. 268th District Court Fort Bend County, Texas, deposition testimony 2000

Olen Lovell III v. Texas Health Resources, Herman Methodist System, Arbitration Cause No. 1310010565, Dallas, Texas, arbitration 1999

Walker et al v. Facility Insurance Corporation, et al, In the District Court of Travis County, Texas 98th Judicial District, deposition testimony 1999

Milton Santiago v. American Airlines, Inc., In the 191st Judicial District Court, Dallas County, Texas, deposition testimony 1999

Brown v. Sysco, Inc., United States District Court, Western District of Texas, deposition testimony 1999

Walker et al v. Facility Insurance Corporation, et al, In the District Court of Travis County, Texas 98th Judicial District, Robinson/Daubert hearing testimony 1999

Mato v. Dr. Jack Baldauf, et.al, United States District Court, Western District of Texas, Austin, trial testimony 1999

Goode v. City of Austin and Fine Host Corp, United States District Court, Western District of Texas, deposition testimony 1998

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, deposition testimony 1998

Chambers v. Texas A&M et al., United States District Court, Western District of Texas, trial testimony 1998

Appendix  00136

## INVITED PRESENTATIONS AND PUBLIC SPEAKING ENGAGEMENTS

Eastern Economics Association Conference, "Risk Shifting by Employee Terminations and Layoffs", Discussant, New York City February 2017

American Economics Association Annual Meeting, "Pitfalls of Forensic Economic Analysis: Employment", San Francisco, California, January 3, 2016.

Eastern Economics Association Conference, "Extending the Econometric Model of Worklife Expectancy", New York, New York, February 27, 2015.

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", San Francisco, California,
March 6, 2014

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", Oakland, California, March 5, 2014

Employment Law CLE, "What is wrong with this paycheck? Investigating allegations of FSLA and wage and hour violations using payroll, time and personnel records", Century City, California, January 30, 2014

Fulbright & Jaworski LLP, "Use of Economic Experts in Employment Litigation", Houston, Texas, April 18, 2013

Southern Economic Association Conference, "Economic Damage Valuations in South Africa", New Orleans, Louisiana, November 17, 2012

Houston Bar Association, Employment Section "Back Pay and Front Pay Calculations in Employment Termination", Houston, Texas, March 12, 2012

Allied Social Science Association Conference, Forensic Economics II "Household Services Production in Mexico", Chicago, Illinois, January 7, 2012

Texas Labor & Employee Relations Consortium hosted by CenterPoint Energy, "Employee Labor Unions and EEO Compliance", Houston, Texas, June 9, 2011

Allied Social Science Association Conference, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", Chicago, Illinois, April 2011

Employment Law CLE, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", San Francisco, California, March 4, 2011

Southern Economic Association Conference, "Calculating Economic Damages for Previously Incarcerated Individuals", Atlanta, Georgia, November 21, 2010

Employment Law CLE, "Using Economic, Statistical and Time Clock Evidence in Wage and Hour and Employment Lawsuits", Houston, Texas, October 21, 2010

Dallas Bar Association's Friday Clinic, "Valuing Economic Damages in Injury, Wrongful Death and Employment Cases", Dallas, Texas, September 10, 2010

American Association of Justice Annual Convention, "Evaluating Damages for the Incarcerated", Vancouver, Canada, July 2010

Academy of Economics and Finance, 37th Annual Meetings, "Valuing Employee Stock Options in a Breach of Contract Case", Houston, Texas, February 2010

American Economic Association Meetings, "Valuing Employee Stock Options in a Breach of Contract Case", Atlanta, Georgia, January 2010

Capital Area Paralegal Association CLE, "Valuing Economic Damages in Injury, Wrongful Death and Employment Cases", Austin, Texas, October 28, 2009

UT CLE, The 15th Annual Labor and Employment Law Conference, Austin, Texas, May 29 - 30, 2008

NAACP 71st Texas Annual meeting, "Police Use of Force and Racial Profiling Panel Discussion", McAllen, Texas, October 12, 2007

Western Economic Association International, Chairperson of Employment Discrimination and Wage and Hour Analysis Sessions, Seattle, Washington, June 29 – July 1, 2007

UT School of Law 14th Annual Employment Law CLE, Presented with Stephanie Botello, "Calculating, Proving, and Mitigating Damages Involving Re-employment", Austin, Texas, May 17, 2007

Iowa Economic Alumni Workshop, Tippie College of Business, "How Long do Mexican Migrants Work in the U.S.?", Iowa City, Iowa, April 21, 2007

Trialsmith CLE webinar series, "Calculating Economic Damages in Injury and Death Cases", February 8, 2007

American Economic Association Annual Meeting, Session Chairperson, "Economic Issues in Estimating Damages in Commercial and Personal Injury Cases", Chicago, Illinois, January 6, 2007

MADD National Diversity Forum II, speaker for "Profiling to Behavior" a moderated panel discussion, Dallas, Texas, May 16 – 18, 2006

Academy of Economics and Finance Meeting, "Valuing Employee Stock Option Grants in Litigation", Houston, Texas, February 10, 2006

American Economic Association Annual Meeting, "Estimating the Work Life Expectancy of Undocumented Mexican Migrant Workers", Boston, Massachusetts, January 2006

DRI 2005 Annual Meeting, speaker for employment law "Lies, Damn Lies, and Employment Statistics", Chicago, Illinois, October 21, 2005

Labor and Employment Roundtable, sponsored by Texas Lawyer, August 31, 2005

Austin Business District Roundtable, 'Economic Roundtable on the Future of the Austin and Texas Economy", July, 2005

Iowa Alumni Workshop, Department of Economics, Tippie College of Business: "Economics and Economists in the U.S. Legal System: A View from the Trenches", University of Iowa, April, 2005

Police Executive Research Forum: "Data Analysis Guidelines for Poststop Analyses", Las Vegas and Kansas City; 2004

Texas State Capitol Media Press Conference – Study Release, "An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", Austin, Texas, 2005

Police Executive Research Forum, Racial Profiling Meeting: Denominator Conference, "Use of Census Data to Measure Racial Disparities in Traffic Stops", Las Vegas, Nevada, 2004

Austin City Council Meeting, West University Area Rezoning, "Rezoning Austin's West Campus, A Unique Opportunity for Smart Growth", Austin, Texas, 2004

African-American Economic Legislative Forum, Hosted by Representative Senfronia Thompson, Roundtable Speaker, Texas State Capitol, Austin, Texas, 2004

North Texas Police Racial Profiling Conference, The University of Texas at Arlington, Center for Mexican American Studies, "The 2002 Racial Profiling Data Revisited: A Look to the Future", Arlington, Texas 2004

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial

Profiling Statistics in Fort Worth, Fort Worth, Texas, 2004

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Beaumont, Beaumont, Texas, 2004

NAACP and LULAC Police - Community Town Hall Meeting, "A Look at Police Racial Profiling Statistics in Houston, Houston, Texas, 2004

Texas State Capitol, Senator Royce West Legislative Roundtable of Police Racial Profiling Data Collection and SB 1074, Roundtable Speaker, Austin, Texas, 2004

Police - Community Relation Forum, "A Preliminary Look at Racial Profiling in Texas and the Huntsville Area", Huntsville, Texas, 2003

Economic Issues in the African-American Forum, "The Roots of African-American Economic Progress", Radio Program, KAZI, Austin, Texas 2003

Texas State Bar Advanced Employment Law CLE Seminar, "Lies, Damn Lies, and Statistics", Houston, Texas, 2003

Haynes and Boone, LLP, "Use and [Misuse] of Economics in Economic Damage Calculations", Austin, Texas, 2002

Texas Police Chief Forum on Racial Profiling, "Using Search Data and Stop Data to Measure Racial Profiling", University of Texas at Austin, Austin, Texas, 2002

Texas State Capitol Press Conference - Study Release, "Selecting Racially Balanced Texas Juries", Austin, Texas, 2003

Texas State Capitol, Press Conference-Study Release, "Cost savings and Efficiency in the Texas State Criminal Justice System", Austin, Texas, 2003

PowerCenter, "Drug treatment programs and Cost Savings in Texas", Houston, Texas, 2003

Texas State Senate Chambers, "Statistical Analysis of Police Racial Profiling Data", Austin, Texas 2001

This Week with Senator West, Television show, Roundtable Discussion, Topic: "Detecting Racial Profiling", Austin, Texas 2001

Texas State Capitol, Media Press Conference, "Release of NAACP Police Racial Profiling Study", Austin, Texas, 2000

College of Business Administration, Sam Houston State University, "Lending Discrimination", Huntsville, Texas 1998

Federal Reserve Bank of Chicago; Moderator, "Detecting Lending Discrimination in Credit Markets", Chicago, Illinois, 1997

Federal Reserve Board, "Bank Mergers and Managerial Efficiency", Washington D.C, 1995

Appendix  00141

## PUBLIC TECHNICAL REPORTS, PUBLICATIONS AND WORKING PAPERS

"Statistical Analysis of Employment Data in Discrimination Lawsuits and EEO Audits: A statistical guide for attorneys, human resource professionals and EEO compliance personnel", Econometrics Publishing, February 2010

"Back Pay and Front Pay Calculations in Employment Termination Cases: Accounting for re-employment and mitigation efforts" (Joint with Stephanie Botello, Ph.D.), 2008, available at Social Science Research Network

"Economic Damages Primer for Attorneys: The building blocks for valuing economic damages in personal injury, wrongful death, medical malpractice, and products liability cases", (Joint with Charles Mahla, Ph.D., Michael Sadler, Ph.D., Chad Shirley, Ph.D., Doug Berg, Ph.D., et al.), Econ One Research, Inc., September 2007

"How Long do Mexican Migrants Work in the U.S.?" (Joint with Amy Raub and Jeannie Elliott), Journal of Forensic Economics, Volume XIX No. 2

"Evaluating the Statistical and Economic Significance of Statistical Evidence in Employment Discrimination Cases, Expert Evidence Report", The Bureau of National Affairs, Inc., Vol. 5, No. 5; p. 117-119; March 7, 2005 and March 23, 2005

"Racial Differences in Interest Rates", Midwestern Business and Economic Review, p. 9 – 24, Number 34, Fall 2004

"Lies, Damn Lies, and Statistics: A View from a Statistical Expert", Texas State Bar Advanced Employment Law CLE Chapter 13.1, 2003

"Evaluating Statistical Evidence in Employment Discrimination Cases", Expert Evidence Report, Bureau of National Affairs, p. 117-119.

"An Examination of Consent Searches and Contraband Hit Rates at Texas Traffic Stops", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition 2005

"Racial Profiling: Texas Traffic Stops and Searches; A first look at the nation's most comprehensive racial profiling dataset", (Co-Authored) Technical Report Prepared for NAACP, LULAC, and Texas Criminal Justice Reform Coalition, 2004

"Re-Zoning Austin's West Campus: A Unique Opportunity for Smart Growth", Technical Report Prepared for the University Area Partners, 2004

"Drug Treatment Programs and Cost Savings in the Texas State Criminal Justice System", Technical Report Prepared for Justice Policy Institute and NAACP Voter Fund, 2003

"A Statistical Methodology to Help Courts Select Racially Balanced Texas Juries", Technical Report Prepared for the NAACP, 2003

"A5/2/2012Re-examination of Police Racial Profiling Using the Becker Model of Discrimination", co-authors Doug Berg and John Maroney, Working paper, 2002

"A Fixed-Effects Discrete Choice Model of Racial Profiling in Police Vehicle Searches", Working Paper, 2002

"A Preliminary Examination of Racial Profiling in Texas: A look at Police Search Rates in Texas", (Co-Authored), Technical Report Prepared for the NAACP, 2000

"A Note: Bootstrap Standard Errors and Confidence Intervals for Weak Axiom of Cost Minimization (WACM) Based Managerial Efficiency Estimates", Published Applied Economics Letters V.2., 1998

"Bank Mergers and Cost Efficiency", Ph.D. Dissertation, University of Iowa, 1995

"Racial Differences in Interest Rates: A Cluster Analysis Approach", Co-authors Doug Berg and Donald Bumpass (SHSU) (2002), Paper accepted for presentation at Economics and Finance Association, February 2003 meeting in Savannah, Georgia.

Appendix  00143



## employstats

Employment | Wage and Hour | Economic Damages

## Fee Schedule

| Personnel | Hourly Rate |
|---|---|
| D. Steward | $595 |
| Economists (Ph.D. level) | $275 - $325 |
| Senior Analysts (experienced BA and MA/MS level) | $250 |
| Analysts | $195 |
| Clerical and General Research Assistance | $50 - $75 |

www.employstats.com

Effective November 7, 2017

## Denton County Employee Appraisal

| | |
|---|---|
| Name: | Storrie, Martha ( Primary Care Clinician ) |
| Department: | Health |
| Supervisor: | Burton, Bing |
| Review Period: | ANNUAL ( 07/01/2008 - 06/30/2009 ) |
| Manual: | Management / Professional |
| Score: | 4.70 |

| | | Burton, Bing | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 1 | Budget Development | 3 | 5 | 15 |
| 2 | Budget Control | 5 | 4 | 20 |
| 3 | Purchasing Policy | 5 | 4 | 20 |
| 4 | Developing Policy | 3 | 5 | 15 |
| 5 | Material Resources | 2 | 5 | 10 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 5 | 20 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 4 | 16 |
| 11 | Problem Solving | 4 | 5 | 20 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | 4 | 4 | 16 |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 5 | 15 |
| 17 | Performance Under Pressure | 3 | 5 | 15 |
| 18 | Keeping Current | 3 | 5 | 15 |
| 19 | Goals and Objectives | 4 | 4 | 16 |
| 20 | Acceptance of Responsibility | 4 | 5 | 20 |
| 21 | Decision Making | 4 | 4 | 16 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 4 | 12 |
| 24 | Employee Selection | 5 | 5 | 25 |
| 25 | Evaluating Subordinates | 5 | 5 | 25 |
| 26 | Personnel Training | 3 | 5 | 15 |
| 27 | Conducting Meetings | 4 | 5 | 20 |
| 28 | Relations with Superiors | 4 | 5 | 20 |
| 29 | External Communications | 5 | 4 | 20 |
| 30 | Cooperation With Other Departments | 4 | 4 | 16 |
| 31 | Team Work | 3 | 5 | 15 |
| 32 | Oral Communication | 4 | 5 | 20 |
| 33 | Written Communication | 4 | 5 | 20 |
| 34 | Personal Appearance | 0 | 3 | 0 |
| 35 | Attendance | 0 | 3 | 0 |
| 36 | Punctuality | 0 | 3 | 0 |
| 37 | Compliance with Policies and Procedures | 0 | 3 | 0 |
| | Total : | 125 | 168 | 587 |

### Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing | 100.00% | 125 | 587 | 4.70 |
| | 100.00% | | | 4.70 |

EMPLOYEE SIGNATURE                    DATE

Denton County Employee Appraisal

| Name: | Storris, Martha ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Burton, Bing |
| Review Period: | ANNUAL ( 07/01/2009 - 06/30/2010 ) |
| Manual: | Management / Professional |
| Score: | 4.18 |

| No. | Title | Burton, Bing | | |
|---|---|---|---|---|
| | | Weight | Score | Total |
| 1 | Budget Development | N/A | N/A | N/A |
| 2 | Budget Control | N/A | N/A | N/A |
| 3 | Purchasing Policy | N/A | N/A | N/A |
| 4 | Developing Policy | N/A | N/A | N/A |
| 5 | Material Resources | 2 | 4 | 8 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 4 | 16 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 4 | 16 |
| 11 | Problem Solving | 4 | 4 | 16 |
| 12 | Organization | 4 | 4 | 16 |
| 13 | Work Flow | 4 | 4 | 16 |
| 14 | Completion of Work | 4 | 4 | 16 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 4 | 12 |
| 17 | Performance Under Pressure | 3 | 4 | 12 |
| 18 | Keeping Current | 3 | 4 | 12 |
| 19 | Goals and Objectives | 4 | 4 | 16 |
| 20 | Acceptance of Responsibility | 4 | 4 | 16 |
| 21 | Decision Making | 4 | 4 | 16 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 4 | 12 |
| 24 | Employee Selection | N/A | N/A | N/A |
| 25 | Evaluating Subordinates | N/A | N/A | N/A |
| 26 | Personnel Training | 3 | 4 | 12 |
| 27 | Conducting Meetings | 4 | 4 | 16 |
| 28 | Relations with Superiors | 4 | 4 | 16 |
| 29 | External Communications | 5 | 4 | 20 |
| 30 | Cooperation With Other Departments | 4 | 4 | 16 |
| 31 | Team Work | 3 | 4 | 12 |
| 32 | Oral Communication | 4 | 4 | 16 |
| 33 | Written Communication | 4 | 4 | 16 |
| 34 | Personal Appearance | 0 | 3 | 0 |
| 35 | Attendance | 0 | 3 | 0 |
| 36 | Punctuality | 0 | 3 | 0 |
| 37 | Compliance with Policies and Procedures | 0 | 3 | 0 |
| | Total : | 99 | 125 | 414 |

Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing | 100.00% | 99 | 414 | 4.18 |
| | 100.00% | | | 4.18 |

_____          _____
EMPLOYEE SIGNATURE                         DATE

Denton County Employee Appraisal

| Name: | Storrie, Martha ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Burton, Bing |
| Review Period: | ANNUAL ( 07/01/2010 - 06/30/2011 ) |
| Manual: | Management / Professional |
| Score: | 4.50 |

| | | Burton, Bing | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 1 | Budget Development | 3 | 4 | 12 |
| 2 | Budget Control | 5 | 4 | 20 |
| 3 | Purchasing Policy | 5 | 4 | 20 |
| 4 | Developing Policy | 3 | 5 | 15 |
| 5 | Material Resources | 2 | 5 | 10 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 4 | 16 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 4 | 16 |
| 11 | Problem Solving | 4 | 4 | 16 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | 4 | 5 | 20 |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 5 | 15 |
| 17 | Performance Under Pressure | 3 | 4 | 12 |
| 18 | Keeping Current | 3 | 5 | 15 |
| 19 | Goals and Objectives | 4 | 4 | 16 |
| 20 | Acceptance of Responsibility | 4 | 4 | 16 |
| 21 | Decision Making | 4 | 5 | 20 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 4 | 12 |
| 24 | Employee Selection | N/A | N/A | N/A |
| 25 | Evaluating Subordinates | N/A | N/A | N/A |
| 26 | Personnel Training | 3 | 5 | 15 |
| 27 | Conducting Meetings | N/A | N/A | N/A |
| 28 | Relations with Superiors | 4 | 4 | 16 |
| 29 | External Communications | 5 | 4 | 20 |
| 30 | Cooperation With Other Departments | 4 | 4 | 16 |
| 31 | Team Work | 3 | 4 | 12 |
| 32 | Oral Communication | 4 | 5 | 20 |
| 33 | Written Communication | 4 | 5 | 20 |
| 34 | Personal Appearance | 0 | 3 | 0 |
| 35 | Attendance | 0 | 3 | 0 |
| 36 | Punctuality | 0 | 3 | 0 |
| 37 | Compliance with Policies and Procedures | 0 | 3 | 0 |
| | Total : | 111 | 148 | 500 |

Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing | 100.00% | 111 | 500 | 4.50 |
| | 100.00% | | | 4.50 |

_____           _____

EMPLOYEE SIGNATURE                                         DATE

Denton County Employee Appraisal

| Name: | Storrie, Martha ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Burton, Bing |
| Review Period: | ANNUAL ( 07/01/2011 - 06/30/2012 ) |
| Manual: | Management / Professional |
| Score: | 4.78 |

| | | Burton, Bing | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 1 | Budget Development | 3 | 4 | 12 |
| 2 | Budget Control | 5 | 4 | 20 |
| 3 | Purchasing Policy | 5 | 4 | 20 |
| 4 | Developing Policy | 3 | 4 | 12 |
| 5 | Material Resources | 2 | 4 | 8 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 5 | 20 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 5 | 20 |
| 11 | Problem Solving | 4 | 5 | 20 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | 4 | 5 | 20 |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 5 | 15 |
| 17 | Performance Under Pressure | 3 | 5 | 15 |
| 18 | Keeping Current | 3 | 5 | 15 |
| 19 | Goals and Objectives | 4 | 5 | 20 |
| 20 | Acceptance of Responsibility | 4 | 5 | 20 |
| 21 | Decision Making | 4 | 4 | 16 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 5 | 15 |
| 24 | Employee Selection | N/A | N/A | N/A |
| 25 | Evaluating Subordinates | N/A | N/A | N/A |
| 26 | Personnel Training | 3 | 5 | 15 |
| 27 | Conducting Meetings | 4 | 5 | 20 |
| 28 | Relations with Superiors | 4 | 5 | 20 |
| 29 | External Communications | 5 | 5 | 25 |
| 30 | Cooperation With Other Departments | 4 | 5 | 20 |
| 31 | Team Work | 3 | 4 | 12 |
| 32 | Oral Communication | 4 | 5 | 20 |
| 33 | Written Communication | 4 | 5 | 20 |
| 34 | Personal Appearance | 0 | 3 | 0 |
| 35 | Attendance | 0 | 3 | 0 |
| 36 | Punctuality | 0 | 3 | 0 |
| 37 | Compliance with Policies and Procedures | 0 | 3 | 0 |
| | Total : | 115 | 160 | 550 |

Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing | 100.00% | 115 | 550 | 4.78 |
| | 100.00% | | | 4.78 |

_____     _____

EMPLOYEE SIGNATURE                          DATE

Denton County Employee Appraisal

| Name: | Storrie, Martha ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Burton, Bing |
| Review Period: | ANNUAL ( 07/01/2012 - 06/30/2013 ) |
| Manual: | Management / Professional |
| Score: | 4.84 |

| | | Burton, Bing | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 1 | Budget Development | 3 | 5 | 15 |
| 2 | Budget Control | 5 | 5 | 25 |
| 3 | Purchasing Policy | 5 | 5 | 25 |
| 4 | Developing Policy | 3 | 5 | 15 |
| 5 | Material Resources | 2 | 5 | 10 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 4 | 16 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 4 | 16 |
| 11 | Problem Solving | 4 | 5 | 20 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | N/A | N/A | N/A |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 5 | 15 |
| 17 | Performance Under Pressure | 3 | 5 | 15 |
| 18 | Keeping Current | 3 | 5 | 15 |
| 19 | Goals and Objectives | 4 | 5 | 20 |
| 20 | Acceptance of Responsibility | 4 | 5 | 20 |
| 21 | Decision Making | 4 | 5 | 20 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 5 | 15 |
| 24 | Employee Selection | N/A | N/A | N/A |
| 25 | Evaluating Subordinates | 5 | 5 | 25 |
| 26 | Personnel Training | 3 | 5 | 15 |
| 27 | Conducting Meetings | 4 | 5 | 20 |
| 28 | Relations with Superiors | 4 | 5 | 20 |
| 29 | External Communications | 5 | 5 | 25 |
| 30 | Cooperation With Other Departments | 4 | 4 | 16 |
| 31 | Team Work | 3 | 4 | 12 |
| 32 | Oral Communication | 4 | 4 | 16 |
| 33 | Written Communication | 4 | 5 | 20 |
| 34 | Personal Appearance | N/A | N/A | N/A |
| 35 | Attendance | 0 | 3 | 0 |
| 36 | Punctuality | 0 | 3 | 0 |
| 37 | Compliance with Policies and Procedures | 0 | 3 | 0 |
| | Total : | 116 | 159 | 561 |

Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing | 100.00% | 116 | 561 | 4.84 |
| | 100.00% | | | 4.84 |

EMPLOYEE SIGNATURE

DATE

Denton County Employee Appraisal

| Name: | Starrie, Martha C. ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Burton, Bing E. |
| Review Period: | ANNUAL ( 07/01/2013 - 06/30/2014 ) |
| Manual: | Management / Professional |
| Score: | 4.87 |

| No. | Title | Burton, Bing E. | | |
|---|---|---|---|---|
| | | Weight | Score | Total |
| 1 | Budget Development | 3 | 5 | 15 |
| 2 | Budget Control | 5 | 4 | 20 |
| 3 | Purchasing Policy | 5 | 5 | 25 |
| 4 | Developing Policy | 3 | 5 | 15 |
| 5 | Material Resources | 2 | 5 | 10 |
| 6 | Professional Resources | 3 | 5 | 15 |
| 7 | Contingency Planning | 4 | 5 | 20 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 4 | 16 |
| 11 | Problem Solving | 4 | 5 | 20 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | 4 | 5 | 20 |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 5 | 15 |
| 17 | Performance Under Pressure | 3 | 5 | 15 |
| 18 | Keeping Current | 3 | 5 | 15 |
| 19 | Goals and Objectives | 4 | 5 | 20 |
| 20 | Acceptance of Responsibility | 4 | 5 | 20 |
| 21 | Decision Making | 4 | 5 | 20 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 5 | 15 |
| 24 | Employee Selection | 5 | 5 | 25 |
| 25 | Evaluating Subordinates | 5 | 5 | 25 |
| 26 | Personnel Training | 3 | 5 | 15 |
| 27 | Conducting Meetings | 4 | 5 | 20 |
| 28 | Relations with Superiors | 4 | 5 | 20 |
| 29 | External Communications | 5 | 5 | 25 |
| 30 | Cooperation With Other Departments | 4 | 5 | 20 |
| 31 | Team Work | 3 | 5 | 15 |
| 32 | Oral Communication | 4 | 5 | 20 |
| 33 | Written Communication | 4 | 5 | 20 |
| 34 | Personal Appearance | 1 | 3 | 3 |
| 35 | Attendance | 1 | 3 | 3 |
| 36 | Punctuality | 1 | 3 | 3 |
| 37 | Compliance with Policies and Procedures | 1 | 3 | 3 |
| | Total : | 129 | 175 | 628 |

Evaluation Summary

| Evaluator | % of Total | Weight | Total | Score |
|---|---|---|---|---|
| Burton, Bing E. | 100.00% | 129 | 628 | 4.87 |
| | 100.00% | | | 4.87 |

_____          _____
EMPLOYEE SIGNATURE                              DATE

Denton County Employee Appraisal

| Name: | Storrie, Martha C. ( Primary Care Clinician ) |
|---|---|
| Department: | Health |
| Supervisor: | Richardson, Matt M. |
| Review Period: | ANNUAL ( 07/01/2014 - 06/30/2015 ) |
| Manual: | Management / Professional |
| Score: | 3.58 |

| | | Richardson, Matt M. | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 1 | Budget Development | N/A | N/A | N/A |
| 2 | Budget Control | N/A | N/A | N/A |
| 3 | Purchasing Policy | 5 | 4 | 20 |
| 4 | Developing Policy | 3 | 3 | 9 |
| 5 | Material Resources | 2 | 4 | 8 |
| 6 | Professional Resources | 3 | 4 | 12 |
| 7 | Contingency Planning | 4 | 3 | 12 |
| 8 | Knowledge of Law | 3 | 5 | 15 |
| 9 | Job Knowledge | 4 | 5 | 20 |
| 10 | Adaptability | 4 | 3 | 12 |
| 11 | Problem Solving | 4 | 4 | 16 |
| 12 | Organization | 4 | 5 | 20 |
| 13 | Work Flow | 4 | 4 | 16 |
| 14 | Completion of Work | 4 | 5 | 20 |
| 15 | Work Quality | 5 | 5 | 25 |
| 16 | Productivity | 3 | 4 | 12 |
| 17 | Performance Under Pressure | 3 | 3 | 9 |
| 18 | Keeping Current | 3 | 4 | 12 |
| 19 | Goals and Objectives | 4 | 4 | 16 |
| 20 | Acceptance of Responsibility | 4 | 3 | 12 |
| 21 | Decision Making | 4 | 3 | 12 |
| 22 | Ethics | 3 | 5 | 15 |
| 23 | Initiative | 3 | 3 | 9 |
| 24 | Employee Selection | N/A | N/A | N/A |
| 25 | Evaluating Subordinates | N/A | N/A | N/A |
| 26 | Personnel Training | 3 | 4 | 12 |
| 27 | Conducting Meetings | N/A | N/A | N/A |
| 28 | Relations with Superiors | 4 | 2 | 8 |
| 29 | External Communications | 5 | 1 | 5 |
| 30 | Cooperation With Other Departments | 4 | 1 | 4 |
| 31 | Team Work | 3 | 2 | 6 |
| 32 | Oral Communication | 4 | 4 | 16 |
| 33 | Written Communication | 4 | 4 | 16 |
| | Total : | 103 | 101 | 309 |

| | Compliance Factors | Richardson, Matt M. | | |
|---|---|---|---|---|
| No. | Title | Weight | Score | Total |
| 34 | Personal Appearance | 1 | 5 | 5 |
| 35 | Attendance | 1 | 5 | 5 |
| 36 | Punctuality | 1 | 5 | 5 |
| 37 | Compliance with Policies and Procedures | 1 | 5 | 5 |
| | Total : | 4 | 20 | 20 |

Evaluation Summary

| Evaluator | % of Total | Raw Score | Compliance Deduction | Final Score |
|---|---|---|---|---|
| Richardson, Matt M. | 100.00% | 3.58 | 0.00 | 3.58 |
| | 100.00% | | | 3.58 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY | § | |
| COMMISSION | § | |
| | § | |
| v. | § | **CASE NO. 4:17-CV-614** |
| | § | |
| DENTON COUNTY | § | |

## DEFENDANT DENTON COUNTY'S OBJECTIONS
## AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

TO:    Plaintiff Equal Employment Opportunity Commission, by and through its attorney of record, Devika Seth, 207 S. Houston Street, 3rd Floor, Dallas, Texas 75202.

PURSUANT to Rule 33 of the FEDERAL RULES OF CIVIL PROCEDURE, Defendant DENTON COUNTY makes this its OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES.

Respectfully submitted,

By:    _/s/ Robert J. Davis_____
**ROBERT J. DAVIS**
State Bar No. 05543500
**MATTHEWS, SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2017, I sent a copy of the foregoing to the Plaintiff's counsel by hand delivery and Intervenor's counsel via certified mail. I then electronically filed the NOTICE OF DISCOVERY with the clerk of the Court for the Eastern District, Sherman Division, using the electronic case filing system of the Court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Devika Seth, Suzanne Anderson, Robert Canino, Brandi McKay and Shelby Douglas.

_/s/ Robert J. Davis_____
**ROBERT J. DAVIS**

Appendix  00152

**INTERROGATORY NO. 1:**

Identify (see "Definitions") each and every person whom you know or believe to have knowledge of facts relevant to any claim or defense involved in this lawsuit, including but not limited to, the EEOC's claims, the Charge of Discrimination filed by Martha C. Storrie, M.D., and the Defendant's denials as pled in its Answer to the EEOC's Complaint in this cause of action, and state the facts of which each person identified has knowledge.

**RESPONSE:**

Denton County objects to this interrogatory to the extent is seeks the County to identify "each and every person whom you know or believe to have knowledge of facts relevant to any claim or defense involved in this lawsuit, including but not limited to, the EEOC's claims, the Charge of Discrimination filed by Martha C. Storrie, M.D., and the Defendant's denials as pled in its Answer to the EEOC's Complaint in this cause of action, and state the facts of which each person identified has knowledge" as it is overly broad and unduly burdensome since many persons may have knowledge of facts about Dr. Storrie's employment with and termination from Denton County since 2008 and it forces Denton County to speculate at its peril as to what the EEOC and/or Dr. Storrie deem to be "relevant" to any claim or defense involved in this lawsuit and then limit it to a narrative in an interrogatory answer. Denton County further objects to this interrogatory for the reason it invades the attorney-client privilege and seeks confidential attorney work product. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to and without waiving this objection, see the names and synopsis for each person identified in Denton County's responses to disclosures, and any amendments thereto, as well as the disclosure responses provided by the EEOC and Dr. Storrie. See also the names of persons contained in the documents which have already been provided to the EEOC during its investigation and which have again been provided by Denton County in its response to disclosures and production. Further, the depositions in this case will likely provide more information responsive to this interrogatory.

**INTERROGATORY NO. 2:**

Please furnish the full name, home address and telephone number, date of hire, salary history, resignation or termination date and reason(s), for all individuals who were selected by Defendant to occupy the position of Primary Care Clinician from January 1, 1998, to the present, and identify by name, job title, department, and, if no longer employed by Defendant, last known address and telephone number of all individuals responsible for each selection decision.

**RESPONSE:**

Denton County objects to this interrogatory to the extent is seeks the home address and telephone number of current or former County employees because information about a governmental entity's employee's personal information is not subject to Public Disclosure, particularly when the employee has elected in writing not to allow the release of such information. See, i.e., TEX. GOV. CODE §552.102 [information in a personnel file], §552.117 [home address, home telephone number, or social security number], and §552.024 [electing not to disclose information].

Subject to and without waiving these objections, Denton County would answer as follows:

Primary Care Clinicians hired by Bing Burton, Denton County Health Department Director 4/2/1992 – 6/30/2014:

**Sukanya Ambavaram, MD (F)**
Full Time employment 08/18/10 – 06/25/13
Salary: $100,000 – $104,551 (county-wide annual increases only)
Reason for separation: Accepted other employment

**James Rampoldi, MD (M) Retired**
Full Time employment 01/21/98 – 11/30/09
Salary: $84,999 – $151,848 (county-wide annual increases only)
Reason for separation: Retiring

**Admerle Hall-Hoskins, DO (F)**
Part Time employment 08/15/07 - 12/27/07
Salary: $54,000
Reason for separation: Did not complete probationary period

**Victor Alvarez, MD (M) (Deceased) Retired**
Part Time employment 08-04/10 – 05/01/14
Salary: $78,000 – $84,811 (county-wide annual increases only)
Reason for separation: Retiring

    Other positions held:
    Health Authority: 07/29/92 – 06/01/08
    Salary: $49,999 – $192,377

**Javed Akram, MD (M)**
Part Time employment 07-30-14 – 9/30/3014
Salary: $63,000
Classified as Full Time employment 10/1/2014 – 11/11/2014
Budgeted Salary: $142,800 (county-wide  annual increases only)
Part Time employment 11/12/2014 – Present
Salary: $71,400 - $82,655 (county-wide annual increases only)

**Martha Storrie, MD (F)**
Part Time employment 10/29/08 – 11/30/09
Salary: $56,265
Full Time employment 12/01/09 – 04/01/16
Salary: $120,000 - $142,480 (county-wide annual increases only)
SS#: 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
Home Address: 229 Merriman Dr., Highland Village, TX 75077 (last known)
Home Telephone: 972-965-2126 (last known)
Reason for separation: Termination for violation of County policies

**Benjamin Beall, DO (M)**
Full Time employment 01/13/10 – 08/03/10 (promoted to Health Authority 8/4/10)
Salary: $120,000

> Other positions held:
> Health Authority: 08/04/10 – 12/31/2017
> Salary:  $160,000 – $199,480

Reason for separation: Retiring effective 12/31/2017

**Randall Kesseler, DO (M)**
Part Time employment 3/5/2003 – 4/6/2004
Salary: $60,000 – $61,199 (county-wide annual increases only)
Full Time employment 4/7/2004 – 5/31/2005
Salary: $101,999 – $106,080 (county-wide annual increases only)
Part Time employment  6/1/2005 – 1/19/06
Salary: $63,648 – $64,921 (county-wide annual increases only)
Party Time employment 1/20/2006 – 9/30/2006
Salary: $47,092 – $45,012 (Bioterrorism Prep Grant) (county-wide annual increases only)
Part Time employment  10/1/2006 -  10/24/06
Salary: $45,012 (Public Health Prep Grant)
Reason for separation: Personal

> Other positions held:
> Health Services Specialist II: 10/25/2006 – 2/13/2009
> Salary $40,245 – $43,538)

**Francis Mascarenhas, MD (F)**
Part Time 8/16/2006 – 10/12/2006
Salary: $50,000
Reason for separation: Accepted other (full-time) employment

**Nimisha Metha, MD (F)**
Part Time  2/1/2006 – 3/28/2006
Salary: $43,281
Reason for separation: Hours – too busy with private practice

Primary Care Clinicians hired by Matt Richardson, Denton County Health Department Director
7/1/2014 – present:

**Judith Graves, MD (F)**
Full Time 07/20/16 – Present
Starting Salary: $160,000 – $168,000 (county-wide annual increases only);
Current salary as of October 1, 2017 is $176,401

**Marty Buchanan, MD (M)**
Full Time  08-03-2015 – Present
Starting salary: $170,000 – $178,499 (county-wide annual increases only)
Current salary as of October 1, 2017 is $187,425

DENTON COUNTY'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          PAGE 4
T:\233\S\S010\68093\Discovery County Responses\Denton County AnswerEEOC Rogs.wpd

Appendix  00155

**INTERROGATORY NO. 3:**
What was the reason or reasons for determining that Martha C. Storrie, M.D.'s starting salary as a full-time Primary Care Clinician with Defendant was $120,000 ?

**RESPONSE:**

Denton County objects to this interrogatory to the extent is seeks the County to detail a personnel decision which was made nearly nine years ago by the now retired Public Health Director in conjunction with imput/information from the former Human Resources Director, and thus, such interrogatory is unduly burdensome. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to and without waiving this objection, Denton County would answer that the minutiae underlying the specific reason(s) for determining Dr. Storrie's starting salary with Denton County in October of 2008, and then full time salary in December of 2009, are unknown at this time, but the procedure for making her initial salary determination and recommendation would have been an interactive process between the Denton County Human Resources Department and the Denton County Public Health Director Bing Burton, and then at some later point, the Denton County Commissioners, as follows. Pursuant to §152.011 of the TEXAS LOCAL GOVERNMENT CODE, the Denton County Commissioners Court sets the amount of the compensation for county employees who are paid wholly from county funds. The Commissioners Court has elected to assign a pre-set salary range for most, but not all county employee positions. Denton County does not assign a pre-set salary range for the position of Primary Care Clinician. Because physicians are highly-trained professionals whose services directly impact the life and health of their human patients, the capability and competence of the individual physician is of utmost importance. To place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents. Physician salaries, which are high and wide-ranging, must therefore be negotiable on a case-by-case basis. After the Primary Care Clinician position is posted, applicants are screened an interviewed. If the Health Department Director is interested in offering the position to an applicant, he must determine what salary to offer. Because all salaries must be set by Commissioners Court, the Director cannot make a binding offer of employment until after the salary he proposes has been submitted to and approved by the Court.

The Director of Public Health, in consultation with Human Resources, has discretion to recommend the amount of starting salary for a Primary Care Clinician [such as Dr. Storrie] based on a variety of factors [other than sex] which included job performance-related experience and expertise, current market conditions, the requested salary of the applicant, and the County's obligation to be a good steward of public funds and obtain qualified physicians while maximizing tax resources. Also, in determining what salary to offer a particular applicant, the Director must necessarily consider the salaries of physicians providing similar services. The salaries of physicians in private practice are considered, as well as those of physicians employed by other public entities (other public health departments, hospital districts). Additional factors that the Director may consider include: (1) the length and degree of applicant's experience as a physician generally; (2) the length and degree of applicant's experience as a primary care physician and/or in the treatment of infectious disease; (3) Applicant's board certification in a primary care specialty (e.g. family practice, pediatrics, internal medicine) and/or in the specialty of infectious disease; (4) the length and degree

of the applicant's experience with clients of all ages; (5) the length and degree of the applicant's experience with low-income clients; (6) Impact on Department's budget; (7)  Likelihood that Commissioners Court will approve the amount; (8) Whether the applicant is currently employed or unemployed; (9) The applicant's salary history; (10) The salary amount the applicant is seeking; (11) The salary amount the applicant is willing to accept; and (12) for some applicants, whether there have been other interactions/relationships such as a prior independent contractor relationship.

Based on the totality of those factors, and other budgetary considerations of the County, a proposed starting salary for part time employment of $56,265 was recommended by Dr. Burton and approved by the Denton County Commissioner's Court. Dr. Storrie accepted this amount and began her employment with Denton County on October 29, 2008.  When she was promoted to full time on December 1, 2009, her part time salary was more than doubled, to the amount of $120,000. Dr. Storrie's full time salary of $120,000 is exactly what her male counterpart, Dr. Beall was offered and paid when he began employment with Denton County approximately a month later, on January 13, 2010.

See also the documents which have already been provided to the EEOC during its investigation as well as the documents provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto, for more information responsive to this interrogatory.

**INTERROGATORY NO. 4:**
What was the reason or reasons for determining that Marty Buchanan, M.D.'s starting salary as a full-time Primary Care Clinician with Defendant was $170,000?

**RESPONSE:**

Denton County objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to and without waiving this objection, Denton County would answer that the minutiae underlying the specific reason(s) for determining Dr. Buchanan's starting full-time salary with Denton County are unknown at this time, but the procedure for making his salary determination and recommendation would have been an interactive process between the Denton County Human Resources Department and the Denton County Public Health Director Matt Richardson, and then at some later point, the Denton County Commissioners, as follows.  Pursuant to § 152.011 of the TEXAS LOCAL GOVERNMENT CODE, the Denton County Commissioners Court sets the amount of the compensation for county employees who are paid wholly from county funds. The Commissioners Court has elected to assign a pre-set salary range for most, but not all county employee positions. Denton County does not assign a pre-set salary range for the position of Primary Care Clinician. Because physicians are highly-trained professionals whose services directly impact the life and health of their human patients, the capability and competence of the individual physician is of utmost importance. To place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents. Physician salaries, which are high and wide-ranging, must therefore be negotiable on a case-by-case basis. After the Primary Care Clinician

position is posted, applicants are screened an interviewed.  If the Health Department Director is interested in offering the position to an applicant, he must determine what salary to offer. Because all salaries must be set by Commissioners Court, the Director cannot make a binding offer of employment until after the salary he proposes has been submitted to and approved by the Court.

The Director of Public Health has discretion to recommend the amount of starting salary for a Primary Care Clinician [such as Dr. Buchanan] based on a variety of factors [other than sex] which included job performance-related experience and expertise, current market conditions, the requested salary of the applicant, and the County's obligation to be a good steward of public funds and obtain qualified physicians while maximizing tax resources.  Also, in determining what salary to offer a particular applicant, the Director must necessarily consider the salaries of physicians providing similar services. The salaries of physicians in private practice are considered, as well as those of physicians employed by other public entities (other public health departments, hospital districts). Additional factors that the Director may consider include: (1) the length and degree of applicant's experience as a physician generally; (2) the length and degree of applicant's experience as a primary care physician and/or in the treatment of infectious disease; (3) Applicant's board certification in a primary care specialty (e.g. family practice, pediatrics, internal medicine) and/or in the specialty of infectious disease; (4) the length and degree of the applicant's experience with clients of all ages; (5) the length and degree of the applicant's experience with low-income clients; (6) Impact on Department's budget; (7)  Likelihood that Commissioners Court will approve the amount; (8) Whether the applicant is currently employed or unemployed; (9) The applicant's salary history; (10) The salary amount the applicant is seeking; (11) The salary amount the applicant is willing to accept; and (12) for some applicants, whether there have been other interactions/relationships such as a prior independent contractor relationship.

For the process involving Dr. Buchanan, it is known that in March of 2015 there were communications between then-Human Resources Director Amy Phillips and Public Health Director Matt Richardson regarding market studies/salary surveys as well as salary information provided by some other comparable counties. For example, on March 18, 2015, then-Human Resources Director Phillips sent Matt Richardson an email with the following links to resources regarding salaries:

http://www.medscape.com/features/slideshow/compensation/2013/hiv

http://swz.salary.com/SalaryWizard/Physician-Infectious-Disease-Salary-Details-Denton-TX.aspx

http://www.healthcare-salaries.com/physicians/infectious-disease-physician-salary

http://www.kevinmd.com/blog/2014/05/compensation-infectious-disease-specialists.html

Ms. Phillips also sent Matt Richardson an email on March 19, 2015, providing information about Fort Bend County and Collin County positions/salaries.  Based on the totality of the above-described factors, and other budgetary considerations of the County, a proposed starting salary of $170,000 was recommended by Mr. Richardson and then approved by the Denton County Commissioner's Court. Dr. Buchanan accepted this amount and began employment with Denton County on August 5, 2015.

See also the documents which have already been provided to the EEOC during its investigation as well as the documents provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto, for more information responsive to this interrogatory.

**INTERROGATORY NO. 5:**
If Defendant, Defendant's representative or any agent of Defendant or Defendant's representative interviewed or obtained any statements, either written or recorded, from anyone presently or formerly employed by Defendant with regard to the claims alleged in the Complaint, identify each person contacted, indicate which statements were recorded and which were written, and attach copies of all written statements taken and typewritten transcriptions of all recorded statements.

**RESPONSE:**

Denton County objects to this interrogatory for the reason it invades the attorney-client privilege and seeks confidential attorney work product. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to these objections, see the statements, if any, which have already been provided to the EEOC during its investigation as well as the statements, if any, provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto.

**INTERROGATORY NO. 6:**
As to each denial and affirmative defense in Defendant's Answer, Affirmative Defenses and Jury Demand in this cause, state every reason and all facts supporting each denial and each affirmative defense.

**RESPONSE:**

Denton County objects to this interrogatory for the reason it invades the attorney-client privilege and seeks confidential attorney work product. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to and without waiving this objection, see the documents which have already been provided to the EEOC during its investigation as well as the documents provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto, for more information responsive to this interrogatory.  Further, the depositions in this case will likely provide more information responsive to this interrogatory.

**INTERROGATORY NO. 7:**
Describe all facts and identify all witnesses with knowledge regarding the decision to pay Martha C. Storrie, M.D. a starting salary of $120,000 in the position of Primary Care Clinician.

**RESPONSE:**

Denton County objects to this interrogatory to the extent is seeks the County to detail a personnel decision which was made nearly nine years ago by the now retired Public Health Director in conjunction with imput/information from the former Human Resources Director, and thus, such interrogatory is unduly burdensome. Defendant objects to this request to the extent is seeks Defendant to "identify all witnesses with knowledge regarding the decision to pay Martha C. Storrie, M.D. a starting salary of $120,000 in the position of Primary Care Clinician" as it is overly broad and unduly burdensome since many persons may have provided information, albeit indirectly, about the decision surrounding Dr. Storrie's salary, and thus identifying them at this point is not feasible. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under Fed. R. Civ. P. 26(a)(1).

Subject to and without waiving this objection, Denton County would answer that Dr. Storrie was not paid "a starting salary of $120,000 in the position of Primary Care Clinician". When Dr. Storrie began her employment with Denton County on October 29, 2008, her starting salary for part time employment was $56,265. When she was promoted to full time on December 1, 2009, her part time salary was more than doubled, to the amount of $120,000. The person(s) most directly involved in the process underlying the decision to pay Martha C. Storrie, M.D. a starting salary of $56,265 and then increasing that salary to $120,000 when Dr. Storrie began full time in the position of Primary Care Clinician would have been the Director of Public Heath at the time Bing Burton and the Director of Human Resources at the time Amy Phillips. Such decision(s) were approved by the majority vote of the duly elected Denton County Commissioners serving on the Denton County Commissioner's Court at the time.

The minutiae underlying the specific reason(s) for determining Dr. Storrie's initial starting part-time salary with Denton County in October of 2008 and full time salary in December of 2009 are unknown at this time, but the procedure for making her salary determination and recommendation would have been an interactive process between the Denton County Human Resources Department and the Denton County Public Health Director Bing Burton, and then at some later point, the Denton County Commissioners, as follows. Pursuant to §152.011 of the Texas Local Government Code, the Denton County Commissioners Court sets the amount of the compensation for county employees who are paid wholly from county funds. The Commissioners Court has elected to assign a pre-set salary range for most, but not all county employee positions. Denton County does not assign a pre-set salary range for the position of Primary Care Clinician. Because physicians are highly-trained professionals whose services directly impact the life and health of their human patients, the capability and competence of the individual physician is of utmost importance. To place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents. Physician salaries, which are high and wide-ranging, must therefore be negotiable on a case-by-case basis. After the Primary Care Clinician position is posted, applicants are screened an interviewed. If the Health Department Director is interested in offering the position to an applicant, he must determine what salary to offer. Because all salaries must be set by Commissioners Court, the Director cannot make a binding offer of employment until after the salary he proposes has been submitted to and approved by the Court.

DENTON COUNTY'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES     PAGE 9
T.\233\3\50 I 0\68093\Discovery County Responses\Denton County AnswerEEOC Rogs.wpd

Appendix  00160

The Director of Public Health has discretion to recommend the amount of starting salary for a Primary Care Clinician [such as Dr. Storrie] based on a variety of factors [other than sex] which included job performance-related experience and expertise, current market conditions, the requested salary of the applicant, and the County's obligation to be a good steward of public funds and obtain qualified physicians while maximizing tax resources.  Also, in determining what salary to offer a particular applicant, the Director must necessarily consider the salaries of physicians providing similar services. The salaries of physicians in private practice are considered, as well as those of physicians employed by other public entities (other public health departments, hospital districts). Additional factors that the Director may consider include: (1) the length and degree of applicant's experience as a physician generally; (2) the length and degree of applicant's experience as a primary care physician and/or in the treatment of infectious disease; (3) Applicant's board certification in a primary care specialty (e.g. family practice, pediatrics, internal medicine) and/or in the specialty of infectious disease; (4) the length and degree of the applicant's experience with clients of all ages; (5) the length and degree of the applicant's experience with low-income clients; (6) Impact on Department's budget; (7)  Likelihood that Commissioners Court will approve the amount; (8) Whether the applicant is currently employed or unemployed; (9) The applicant's salary history; (10) The salary amount the applicant is seeking; (11) The salary amount the applicant is willing to accept; and (12) for some applicants, whether there have been other interactions/relationships such as a prior independent contractor relationship.

Based on the totality of those factors, and other budgetary considerations of the County, a proposed part-time starting salary of $56,265 was recommended by Dr. Burton and approved by the Denton County Commissioner's Court. Dr. Storrie accepted this amount and began her employment with Denton County on October 29, 2008. When Dr. Storrie was promoted to full time on December 1, 2009, her part time salary was more than doubled, to the amount of $120,000.  Dr. Storrie's full time salary of $120,000 is exactly what her male counterpart, Dr. Beall was offered and paid when he began employment with Denton County approximately a month later, on January 13, 2010. See also the documents which have already been provided to the EEOC during its investigation as well as the documents provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto, for more information responsive to this interrogatory.

**INTERROGATORY NO. 8:**
Describe all facts and identify all witnesses with knowledge regarding the decision to pay Mary [sic] Buchanan, M.D. a starting salary of $170,000 in the position of Primary Care Clinician.

**RESPONSE:**

Denton County objects to this interrogatory to the extent is seeks the County to detail a personnel decision which was made in conjunction with imput/information from the former Human Resources Director, and thus, such interrogatory is unduly burdensome. Defendant objects to this request to the extent it seeks Defendant to "identify all witnesses with knowledge regarding the decision to pay Mary [sic] Buchanan, M.D. a starting salary of $170,000 in the position of Primary Care Clinician" as it is overly broad and unduly burdensome since many persons may have provided information, albeit indirectly, about the decisions surrounding Dr. Buchanan's salary, and thus identifying all of them at this point is not feasible. Denton County further objects to this interrogatory as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

DENTON COUNTY'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES     PAGE 10
T:\233\5\5010\68093\Discovery County Responses\Denton County AnswerEEOC Rogs.wpd

Appendix  00161

Subject to and without waiving this objection, Denton County would answer that the person(s) most directly involved in the process underlying the decision to pay Marty Buchanan, M.D. a starting salary of $170,000 in the position of Primary Care Clinician would have been the Director of Public Heath at the time Matt Richardson and the Director of Human Resources at the time Amy Phillips. Such decision was approved by the majority vote of the duly elected Denton County Commissioners serving on the Denton County Commissioner's Court at the time.

The minutiae underlying the specific reason(s) for determining Dr. Buchanan's starting full-time salary with Denton County are unknown at this time, but the procedure for making his salary determination and recommendation would have been an interactive process between the Denton County Human Resources Department and the Denton County Public Health Director Matt Richardson, and then at some later point, the Denton County Commissioners, as follows. Pursuant to §152.011 of the TEXAS LOCAL GOVERNMENT CODE, the Denton County Commissioners Court sets the amount of the compensation for county employees who are paid wholly from county funds. The Commissioners Court has elected to assign a pre-set salary range for most, but not all county employee positions. Denton County does not assign a pre-set salary range for the position of Primary Care Clinician. Because physicians are highly-trained professionals whose services directly impact the life and health of their human patients, the capability and competence of the individual physician is of utmost importance. To place a pre-set salary range on this position too greatly limits the candidate pool, potentially excluding all desirable candidates, and causing an extended shortage of physicians to treat county jail inmates and other low-income county residents. Physician salaries, which are high and wide-ranging, must therefore be negotiable on a case-by-case basis. After the Primary Care Clinician position is posted, applicants are screened an interviewed. If the Health Department Director is interested in offering the position to an applicant, he must determine what salary to offer. Because all salaries must be set by Commissioners Court, the Director cannot make a binding offer of employment until after the salary he proposes has been submitted to and approved by the Court.

The Director of Public Health has discretion to recommend the amount of starting salary for a Primary Care Clinician [such as Dr. Buchanan] based on a variety of factors [other than sex] which included job performance-related experience and expertise, current market conditions, the requested salary of the applicant, and the County's obligation to be a good steward of public funds and obtain qualified physicians while maximizing tax resources. Also, in determining what salary to offer a particular applicant, the Director must necessarily consider the salaries of physicians providing similar services. The salaries of physicians in private practice are considered, as well as those of physicians employed by other public entities (other public health departments, hospital districts). Additional factors that the Director may consider include: (1) the length and degree of applicant's experience as a physician generally; (2) the length and degree of applicant's experience as a primary care physician and/or in the treatment of infectious disease; (3) Applicant's board certification in a primary care specialty (e.g. family practice, pediatrics, internal medicine) and/or in the specialty of infectious disease; (4) the length and degree of the applicant's experience with clients of all ages; (5) the length and degree of the applicant's experience with low-income clients; (6) Impact on Department's budget; (7)  Likelihood that Commissioners Court will approve the amount; (8) Whether the applicant is currently employed or unemployed; (9) The applicant's salary history; (10) The salary amount the applicant is seeking; (11) The salary amount the applicant is willing to accept; and (12) for some applicants, whether there have been other interactions/relationships such as a prior independent contractor relationship.

DENTON COUNTY'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES        PAGE 11
T:\233\S\5010\68093\Discovery\County\Responses\Denton County AnswerEEOC Rogs.wpd

Appendix  00162

For the process involving Dr. Buchanan, it is known that in March of 2015 there were communications between then-Human Resources Director Amy Phillips and Public Health Director Matt Richardson regarding market studies/salary surveys as well as salary information provided by some other comparable counties. For example, on March 18, 2015, then-Human Resources Director Phillips sent Matt Richardson an email with the following links to resources regarding salaries:

http://www.medscape.com/features/slideshow/compensation/2013/hiv

http://swz.salary.com/SalaryWizard/Physician-Infectious-Disease-Salary-Details-Denton-TX.aspx

http://www.healthcare-salaries.com/physicians/infectious-disease-physician-salary

http://www.kevinmd.com/blog/2014/05/compensation-infectious-disease-specialists.html

Ms. Phillips also sent Matt Richardson an email on March 19, 2015, providing information about Fort Bend County and Collin County positions/salaries. Based on the totality of those factors, and other budgetary considerations of the County, a proposed starting salary of $170,000 was recommended by Mr. Richardson and then approved by the Denton County Commissioner's Court. Dr. Buchanan accepted this amount and began employment with Denton County on August 5, 2015.

See also the documents which have already been provided to the EEOC during its investigation as well as the documents provided by Denton County in their INITIAL DISCLOSURES and their RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS, and any supplementations thereto, for more information responsive to this interrogatory.

**INTERROGATORY NO. 9:**
State with specificity all duties and responsibilities, with dates, performed by Martha C. Storrie, M.D. and Marty Buchanan, M.D. when they occupied the position of Primary Care Clinician with Defendant.

**RESPONSE:**

Denton County objects to this request as it seeks to impose upon the County duties and obligations greater than, in addition to or beyond those required under the Federal Rules of Civil Procedure and applicable law, particularly when viewed in light of the parties' obligations and responses under FED. R. CIV. P. 26(a)(1).

Subject to and without waiving this objection, the core duties and responsibilities the position of Primary Care Clinician with Denton County are set forth in the Job Description for a Primary Care Clinician which has previously been provided to the EEOC in response to its investigation as well as provided with the documents contained on the flash drive sent along with Denton County's Denton County INITIAL DISCLOSURES. The Job Description is again being provided as part of Denton County's RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS. Dr. Storrie and Dr. Buchanan's general duties and obligations as Denton County employees are set forth in the Denton County Employee Handbooks which are being provided as part of Denton County's RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS. The depositions of Dr. Storrie and others will also likely provide more information responsive to this interrogatory.

## VERIFICATION

STATE OF TEXAS                                  {
                                                {
COUNTY OF DENTON                                {

    BEFORE ME,  a Notary Public in and for the State of Texas, personally appeared
**GUSTAVO HERNANDEZ**, and after being by me first duly sworn, upon oath states that he has
read the foregoing Answers and that such are true and correct based upon the composite knowledge
of the Denton County and information available to it.  The information supplied in these Answers
is not based solely on the knowledge of the executing party, but includes knowledge of the party, its
agents, representatives and attorneys, unless privileged, and possibly other parties.  The word usage
and sentence structure may be that of the attorney assisting in the preparation of the Answers and
thus, does not necessarily purport to be the precise language of the executing party.  Legal objections
to interrogatories are prepared by Denton County's attorney.

                                                _____
                                                Gustavo Hernandez


    SWORN TO AND SUBSCRIBED BEFORE ME, by *Gustavo Hernandez* on this the _20_ day
of December, 2017, which witness my hand and seal of office.


    **TONY LUTON II**
    Notary Public-State of Texas
    Notary ID-#12898986-1
    Commission Exp. MAY 19, 2020

                                                _____
                                                NOTARY PUBLIC
                                                IN AND FOR THE STATE OF TEXAS


DENTON COUNTY'S OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES          PAGE 13
T:\233\5150\046X093\Discovery\County\Responses\Denton County Answer\EEOC Rogs.wpd

Appendix  00164

# DENTON COUNTY

**Akram, Javed M.**

082403

## SALARY HISTORY

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Annual | 10/01/2016 | PUBLIC HEALTH-CLINICAL DIV | NG108 | 036-HD | Primary Care Clinician | OFF | $78,719.00 |
| Annual Increase | 10/01/2015 | Public Health - Clinical | NG108 | 036-HD | Primary Care Clinican | OFF | $74,971.00 |
| FT to PT status | 11/12/2014 | Public Health - Clinical | NG108 | 036-HD | Primary Care Clinican | OFF | $71,400.00 |
| Annual Increase | 10/01/2014 | Public Health - Clinical | NG108 | 036-HD | Primary Care Clinican | OFF | $142,800.00 |
| PT to FT status | 10/01/2014 | Public Health - Clinical | NG108 | 036-HD | Primary Care Clinican | OFF | $126,000.00 |
| New Hire | 07/30/2014 | Public Health - Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $63,000.00 |



EXHIBIT Burton
42
LP 3-16-18

Appendix  00165



EXHIBIT
Burton
38
LP  3-16-18

# DENTON COUNTY



## Alvarez, Victor R.

**SALARY HISTORY**

056037

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Retirement | 4/30/2014 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $84,811.00 |
| Annual Increase | 10/1/2013 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $84,811.00 |
| Annual Increase | 10/1/2012 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $81,549.00 |
| Annual Increase | 10/1/2011 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $79,560.08 |
| No Increase | 10/1/2010 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $78,000.00 |
| Rehire | 8/4/2010 | Public Health-Clinical | NG108 | 036-HD | Primary Care Clinician | OFF | $78,000.00 |
| Retirement | 6/1/2008 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $192,377.00 |
| Retirement | 5/30/2008 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $192,377.00 |
| Annual Increase | 10/1/2007 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $192,377.00 |
| Annual Increase | 10/1/2006 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $184,978.00 |
| Annual Increase | 10/1/2005 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $177,863.01 |
| Annual Increase | 10/1/2004 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $174,375.01 |
| Annual Increase | 10/1/2003 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $167,668.02 |
| Annual Increase | 10/1/2002 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $164,379.80 |
| Annual Increase | 10/1/2001 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $161,157.88 |
| Annual Increase | 10/1/2000 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $141,366.94 |
| Annual Increase | 10/1/1999 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $135,929.82 |
| Annual Increase | 10/1/1998 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $128,235.90 |
| Annual Increase | 10/1/1997 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $118,736.80 |
| Annual Increase | 10/1/1996 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $113,082.58 |
| Annual Increase | 10/1/1995 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $109,788.64 |
| Reclassification | 3/1/1995 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $106,589.60 |
| Annual Increase | 10/1/1994 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $53,295.84 |
| Annual Increase | 10/1/1993 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $51,509.12 |
| Six Month Probation | 3/8/1993 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $50,498.24 |
| New Hire | 7/29/1992 | Public Health-Clinical | 3802 | 009-HD | Health Authority | | $49,999.04 |

Appendix  00166

# DENTON COUNTY



## Ambavaram, Sukanya

**SALARY HISTORY**

081551

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Resignation | 6/25/2013 | Public Health-Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $104,551.00 |
| Annual Increase | 10/1/2012 | Public Health-Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $104,551.00 |
| Annual Increase | 10/1/2011 | Public Health-Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $102,001.00 |
| No Increase | 10/1/2010 | Public Health-Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $100,000.00 |
| New Hire | 8/18/2010 | Public Health-Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $100,000.00 |



Appendix  00167



*Devah Cut 7*

# DENTON COUNTY

## Beall II, Benjamin R.
081442

### SALARY HISTORY

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALAR00 |
|---|---|---|---|---|---|---|---|
| Annual | 10/01/2016 | PUBLIC HEALTH-CLINICAL DIV | NG106 | 009-HD | Health Authority | OFF | $199,480.00 |
| Annual Increase | 10/01/2015 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $189,981.00 |
| Annual Increase | 10/01/2014 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $180,933.00 |
| Annual Increase | 10/01/2013 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $173,973.00 |
| Annual Increase | 10/01/2012 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $167,282.00 |
| Annual Increase | 10/01/2011 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $163,201.00 |
| No Increase | 10/01/2010 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $160,000.00 |
| Promotion | 08/04/2010 | Public Health - Clinical | NG106 | 009-HD | Health Authority | OFF | $160,000.00 |
| New Hire | 01/13/2010 | Public Health - Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | $120,000.00 |



EXHIBIT
1
Beall 3/13/18

Appendix  00168

# DENTON COUNTY



**Buchanan, Marty J.**

082741

## SALARY HISTORY

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | FLSA | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|---|
| Annual Increase | 10/01/2017 | PUBLIC HEALTH-CLINICAL DIV | NG108 | 031-HD | Primary Care Clinician | OFF | E | $187,425.00 |
| Annual Increase | 10/01/2016 | PUBLIC HEALTH-CLINICAL DIV | NG108 | 031-HD | Primary Care Clinician | OFF | E | $178,499.00 |
| New Hire | 08/03/2015 | Public Health - Clinical | NG108 | 031-HD | Primary Care Clinician | OFF | E | $170,000.00 |



EXHIBIT 6
WIT: Buchanan
DATE: 3/5/18
KAREN USHER, CSR

Appendix  00169

# DENTON COUNTY

**Graves, Judith**

182290

### SALARY HISTORY

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Annual | 10/01/2016 | PUBLIC HEALTH-CLINICAL DIV | NG108 | 010-HD | Primary Care Clinician | OFF | $168,000.00 |
| New Hire | 07/20/2016 | Public Health - Clinical | NG108 | 010-HD | Primary Care Clinician | OFF | $160,000.00 |



EXHIBIT
43

Appendix  00170

# DENTON COUNTY



## Hall-Hoskins, Admerle J.

### SALARY HISTORY

080918

| REASON | EFFECTIVE DATE | DEPARTMENT | JOB CODE | SLOT NUMBER | JOB TITLE | GRADE | ANNUAL SALARY |
|---|---|---|---|---|---|---|---|
| Termination | 12/27/2007 | Public Health-Clinical | 3813 | 031-HD | Primary Care Clinician | | 54,000.00 |
| New Hire | 8/15/2007 | Public Health-Clinical | 3813 | 031-HD | Primary Care Clinician | | 54,000.00 |



EXHIBIT
Burton
40
LP  3-16-18

Appendix  00171