**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY** | § | |
| **COMMISSION, et. al.** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:17-CV-614** |
| | § | |
| **DENTON COUNTY** | § | |

**DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT**
**ON INTERVENOR DR. STORRIE'S CLAIMS AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Fed. R. Civ. P. 56(b) and Local Rule 56, Defendant **DENTON COUNTY** files

this their Motion for Summary Judgment On Intervenor Dr. Storrie's Claims and Brief

and would show the Court:

**I.**
**INTRODUCTION AND GROUNDS NECESSITATING SUMMARY JUDGMENT**

This is an employment case alleging discrimination based on gender, with a related Equal

Pay Act case.[1]  Intervenor-Plaintiff Dr. Storrie, a female, was a former Primary Care Clinician in the

Denton County Health Department who was terminated for many ongoing policy violations,

culminating in highly inappropriate racially insensitive comments about Hispanic patients, made

during staff meetings and also in her notes in a patient's medical record.  Dr. Storrie was provided

with an exhaustive Notice Of Termination Of Employment detailing the many reasons why she

could no longer work for Denton County.  The Civil Service Commission affirmed Dr. Storrie's

termination, yet she failed to exhaust her administrative remedies by not appealing to a State District

court, which, if she had prevailed, could have reinstated Dr. Storrie with back pay.

---

[1] The Equal Pay Act claims are being made by the EEOC, the original Plaintiff, but Dr. Storrie seeks to make some of the same arguments about pay disparity, couched as a Title VII claim

Despite the clearly legitimate - - and very well documented - - reasons for her termination, Dr. Storrie contends she was discriminated against because of her gender.   Her discrimination claims are essentially three-fold.  First, she avers she was "passed over" for a promotion, which, tellingly, she never even applied for.  Second, parroting the EEOC allegations, she contends she was not paid the same as her male colleagues. Third, she suggests she was treated "less favorably" than her male counterparts, citing a panoply of things like (a) different patient responsibilities and numbers when compared to Dr. Buchanan, (b)  jail access issues/incident, (c) not being provided with "regular (yearly) performance reviews" by Dr. Richardson, (d) lack of support or assistance from the medical staff, and (e) disciplinary issues which described her as "emotional" or "hysterical".

Fired for her clear violations of Denton County's policies and unacceptable attitude about Hispanic patients[2] [who are the majority of patients seen by the Denton County Health Department], Dr. Storrie's ploy is to point to an alleged failed promotion in 2010 [for which she never applied], lawful pay differentials,  and a variety of nebulous examples of being treated "differently", to try to conjure up a "gender discrimination" claim when none exists. Her fears about potential yet never experienced [nor plead] "retaliation" are unsupportable.[3]   Punitive damages are also untenable.

Dr. Storrie was simply not discriminated against nor paid differently because of her gender. Moreover, she was terminated solely because of clearly articulated legitimate, nondiscriminatory reasons - - her many documented policy violations and unacceptable racially insensitive comments. Dr. Storrie's failure to fully exhaust her administrative remedies further bars her Title VII claims. The summary judgment evidence conclusively establishes that the County should be dismissed.

---

[2] Disappointingly, Dr. Storrie still demonstrated her racial animus towards Hispanics at her deposition, glibly relaying that she believed "*roly poly Hispanic female*" is an appropriate way to describe someone in a patient medical record and that her comments about eating tortillas was not discriminatory.

[3] Dr. Storrie's COMPLAINT IN INTERVENTION does not make a specific "retaliation" claim but in her deposition, Dr. Storrie avers that she "feared" retaliation so, although not plead, it is still being addressed.

## II.
## SUMMARY JUDGMENT EVIDENCE

In addition to the pleadings on file with this Court, Defendant Denton County relies upon the

following evidence  in support of their Motion for Summary Judgment:

1.      Deposition excerpts of current Denton County Public Health Director Matt
        Richardson, EXHIBIT No. 1, pages 1-94;

2.      Deposition excerpts of former Denton County Public Health Director Bing Burton,
        EXHIBIT No. 2, pages 1-39;

3.      Deposition excerpts of former Denton County Human Resources Director Amy
        Phillips, EXHIBIT No. 3, pages 1-73;

4.      Deposition excerpts of former Denton County Public Health Authority Dr. Benjamin
        Beall, EXHIBIT No. 4, pages 1-29;

5.      Deposition excerpts of current Denton County Public Health Authority Marty
        Buchanan, EXHIBIT No. 5, pages 1-37;

6.      Deposition excerpts of Dr. Martha Storrie, EXHIBIT No. 6, pages 1-143;

7.      Excerpts from the sworn testimony of Juan Rodriguez from the Denton County Civil
        Service Commission Hearing of May 12, 2016, Exhibit No. 7, pages 1-7;

8.      Excerpts from the sworn testimony of Shannon McKeown from the Denton County
        Civil Service Commission Hearing of May 12, 2016, Exhibit No. 8, pages 1-8;

9.      Excerpts from the sworn testimony of Heather Lee from the Denton County Civil
        Service Commission Hearing of May 12, 2016, Exhibit No. 9, pages 1-6; and

10.     Equal Employment Opportunity Commission DETERMINATION, Ex. 10, pages 1-2.

## III.
## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Local Rule CV-56(a), Defendant Denton County requests that the Court decide

the following issues as presented in their motion for summary judgment:

1.      Whether Dr. Storrie can prevail on her claim of discrimination under Title VII since
        there was no discrimination against her based on gender;

2.      Whether Dr. Storrie can prevail on her claim of discrimination under Title VII since there were clearly articulated legitimate, nondiscriminatory reasons for her termination;

3.      Whether Dr. Storrie can prevail on her claim of discrimination under Title VII since there were clearly articulated legitimate, nondiscriminatory reasons for her salary and differential between a much later hired male colleague, as well as other colleagues;

4.      Whether Dr. Storrie can prevail on her claim of discrimination under Title VII when she failed to exhaust her administrative remedies;

5.      Whether Dr. Storrie has any viable "retaliation" claims, and if so, whether she can prevail on same since she did not identify them in her CHARGE OF DISCRIMINATION, did not plead retaliation, nor did she experience retaliation; and

6.      Whether Dr. Storrie can prevail on her claims for punitive damages under Title VII.

## IV.
## STATEMENT OF MATERIAL FACTS

Pursuant to LOCAL RULE 56(a), Defendant Denton County identifies the following material facts necessitating the entry of summary judgment in its favor:

1.      Intervenor-Plaintiff Dr. Martha Storrie, a female, was employed as a Primary Care Clinician in the Denton County Public Health Department from October 29, 2008, until her termination on April 1, 2016.  (See, generally, COMPLAINT IN INTERVENTION [Doc. 11], hereinafter "COMPLAINT"; Ex. 1, p. 85; Ex. 3, p. 8, 37, 38, 64; Ex. 6, p. 5, 8, 38, 115);

2.      Dr. Storrie, individually, only brings claims under Title VII[4], alleging that Denton County "discriminated against Dr. Storrie because of her gender (female) by paying her wages that were less than male physicians performing the same work." (COMPLAINT, paragraph 1);

3.      She further avers three reasons supporting her discrimination claim:

"(1) failing or refusing to promote her to a position for which she was qualified because of her gender (female), (2) failing or refusing to pay her wages that were equal to male physicians performing the work of a primary care physician because of her gender (female), and (3) treating her less favorably than her male counterparts."

(COMPLAINT, paragraph 20; see also paragraph 11; Ex. 6, p. 18, 19);

---

[4] Dr. Storrie does not make any claims under the Equal Pay Act. (See, generally, COMPLAINT)

4.      In her deposition, Dr. Storrie amplified what she contends was the "less favorable treatment", to include alleged:

      (a)      different patient responsibilities/numbers when compared to Dr. Buchanan;
      (b)      jail access issue/incident;
      (c)      not being provided with her "regular (yearly) performance reviews" by her supervisor, Dr. Richardson,
      (d)      lack of support or assistance from the medical staff such as "hiding" her supplies by the nursing staff, and
      (e)      disciplinary memorandums which described her as "emotional" or "hysterical"

(See, i.e., Ex. 6, p.17, 18, 19, 24, 26-30, 35-37, 46, 63, 68, 80-84, 121, 129);

5.      For damages, she seeks injunctive relief, "appropriate backpay", "front pay", retirement benefits, "reinstatement to the position to which she would have been placed absent discrimination", and "punitive damages". (COMPLAINT, Prayer for Relief, paragraphs 1-6);

6.      Regarding her obligation to exhaust administrative remedies prior to filing suit, Dr. Storrie notes that more than thirty (30) days prior to the institution of her lawsuit, she filed a charge with the Equal Employment Opportunity Commission alleging violations of Title VII by Defendant. (COMPLAINT, paragraph 6);

7.      Dr. Storrie did indeed file a CHARGE OF DISCRIMINATION with the EEOC on April 4, 2016. (Ex. 1, p. 11, 92; Ex. 3, p. 50, 71; Ex. 6, p. 103);

8.      Under heading "Discrimination Statement", Dr. Storrie wrote that "I believe I have been discriminated against because of my sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended".  (Ex 1, p. 92; Ex. 3, p. 71);

9.      But when providing information about this allegation, she narrowly limits the scope of her claim, and specifically, under heading "Dates Discrimination Took Place", lists the earliest being "08-12-2015" and the latest "04-01-2016". (Ex 1, p. 92, Ex. 3, p. 71; Ex. 6, p. 143);

10.     Regarding "Personal Harm" she describes only that "From approximately June 2015 until April 1, 2016 I was paid less than Marty Buchanan, Primary Care Clinician."  (Ex 1, p. 92; Ex. 3, p. 71; Ex. 6, p. 143);

11.     Under "Respondent's Reason For Adverse Action" she notes "I was told by Matt Richardson, Director that Dr. Buchanan was worth more."  (Ex 1, p. 92; Ex. 3, p. 71; Ex. 6, p. 143);

12.     There are no allegations regarding failure to promote or workplace conditions anywhere in Dr. Storrie's CHARGE OF DISCRIMINATION.  (Ex 1, p. 92; Ex. 3, p. 71; Ex. 6, p. 143);

13.     The box on the CHARGE OF DISCRIMINATION for "retaliation" is not checked nor is there any discussion of "retaliation." (Ex 1, p. 92; Ex. 3, p. 71; Ex. 6, p. 143);

14.   The EEOC's investigation of Dr. Storrie's CHARGE OF DISCRIMINATION was limited to only allegations of pay discrepancy and the subsequent DETERMINATION issued June 8, 2017, [which Denton County disputes], summarizes, in part, Dr. Storrie's allegations as:

Charging Party, a Primary Care Clinician (PCC), alleged that she was discriminated against by the Respondent's payment of unequal wages to her because of her sex (female). Specifically, she complains that she was denied equal pay because of her gender.  (Ex. 10, p. 1);

15.   The DETERMINATION found the alleged discrimination was "because of her gender (female) by paying her wages that were less than male physicians performing work of Primary Care Clinician" and "by paying Charging party unequal wages for work that required the same skill, effort and responsibility as male employees who were paid more."  (Ex. 10, p. 2);

16.   There was no EEOC investigation nor DETERMINATION regarding failure to promote, workplace conditions, or retaliation.  (Ex. 10, p. 1-2);

17.   The facts surrounding Dr. Storrie's employment, decisions about her salary, and her eventual termination, are well documented, but only those pertinent to her Title VII claim being brought by Dr. Storrie will be discussed herein, although all the relevant facts and evidence contained in DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF are incorporated herein as if fully set forth and for all purposes;

18.   With respect to Dr. Storrie's claim that the County failed or refused "to promote her to a position for which she was qualified because of her gender (female)", this allegation is based on an open position [which would have been a promotion] for the Health Authority/Medical Director in 2010. (Ex. 1, p. 53, 54, 69, 75; Ex. 2, p. 7, 20, 34, 35, 36, 37; Ex. 4, p. 17, 29; (Ex. 6, p. 18, 19);

19.   It is mandatory that an active application be submitted before a person can be considered to be an eligible candidate for employment with Denton County. (Ex. 1, p. 53; Ex. 2, p. 20, 36; Ex. 3, p. 35, 63; Ex. 5, p. 24);

20.   This is true even for promotions.  (Ex. 1, p. 61, 62; Ex. 2, p. 20, 36; Ex. 3, p. 35, 63; Ex. 4, p. 18);

21.   Denton County uses an electronic program known as "NEOGOV" for its job applications. (Ex. 1, p. 61; Ex. 2, p. 20, 34, 35, ; Ex. 3, p. 9, 35, 72; Ex. 4, p. 17, 29);

22.   The open position in 2010 for the Health Authority/Medical Director was publicly posted. (Ex. 3, p. 72);

23.   The County also posts job openings on its own website and the Internet on sites such as governmentjob.com and Indeed.com and other sites.  (Ex. 1, p. 61; Ex. 2, p. 7, ; Ex. 3, p. 15, 62; Ex. 5, p. 57; Ex. 6, p. 22);

24.     Anybody can go onto the County website and indicate jobs they want to be notified about if they open up; the interested person then gets an email if that happens. (Ex. 3, p. 56-57);

25.     Dr. Storrie never applied for the publicly posted Health Authority/Medical Director position, and thus, could not have been an eligible candidate. (Ex. 1, p. 75; Ex. 2, p. 7, 20, 34, 35, 36, 37; Ex. 3, p. 51, 72; Ex. 4, p. 17, 18, 29; Ex. 6, p. 24, 26);

26.     Dr. Burton recalls that Dr. Storrie never even expressed an interest in the job. (Ex. 2, p. 8);

27.     The County did not fail or refuse "to promote her to a position for which she was qualified because of her gender (female)" when she never even applied for the position. (Ex. 1, p. 75; Ex. 2, p. 7, 20, 34, 35, 36, 37; Ex. 3, p. 51, 72; Ex. 4, p. 17, 18, 29; Ex. 6, p. 24, 26);

28.     Regarding her allegations that Denton County failed or refused to "pay her wages that were equal to male physicians performing the work of a primary care physician because of her gender (female)", the facts and evidence surrounding the initial determination and ongoing payment of Dr. Storrie's salary throughout her tenure with the County are contained in DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF, Statement of Material Fact, Paragraph IV(20)-(198), and incorporated herein.

29.     Essentially, Dr. Storrie's salary was determined after consideration of a variety of gender neutral factors and her compensation [annual percentage raises] throughout her tenure were the same as every other County employee.  Dr. Storrie was not paid less because of her gender.  (*Id*);

30.     Dr. Storrie's belief that she was given "less favorable treatment" when compared to the work performed by other male colleagues is incorrect. (Ex. 1, p. 32, 33, 34, 36, 69, 76, 77, 78; Ex. 3, p. 10-12, 17, 18, 23-24, Ex. 5, p. 4-6, 25-30; Ex. 6, p. 17, 35, 37, 68; Ex. 8, p. 5, 6; Ex. 9, p. 6, 8);

31.     According to the Health Department electronic recording keeping system"EClinical Works"[5], Dr. Buchanan actually saw more patients that did Dr. Storrie during the same time periods. (Ex. 1, p. 76, 77, 78, 93-94; Ex. 5, p. 5, 6, 28, 30);

32.     Dr. Storrie's belief that Dr. Buchanan did not treat children is also without any factual basis. (Ex. 1, p. 8, 77, 93-94; Ex. 5, p. 4, 25, 26; Ex. 6, p. 35, 36, 37);

33.     Dr. Storrie conceded that she had no personal knowledge that Dr. Buchanan was not seeing or examining children. (Ex. 6, p. 37);

34.     Dr. Buchanan confirmed that he examined and treated children. (Ex. 5, p. 4, 5, 25, 26);

35.     So too did Dr. Richardson, as evidenced by the patient records. (Ex. 1, p. 77, 78, 93-94);

---

[5] This may not take into account some of the patients Dr. Storrie saw at the jail.

36.     Dr. Buchanan treats both men and women, as do all Primary Care Clinicians. (Ex. 1, p.  9; Ex. 5, p. 4, 26, 27);

37.     All doctors, male and female, can be and are assigned to the jail. (Ex. I, p. 69, Ex. 6, p. 17);

38.     Dr. Burton retired in June of 2014 and Dr. Matt Richardson began on July of 2014, as the new Director of the Denton County Health Department. (Ex. 1, p. 2, 3, 59);

39.     Although unrelated to Dr. Richardson's arrival, about a year later, in 2015, Dr. Storrie, began experiencing disciplinary issues when her conduct did not meet the expectations required of professionals in the medical field nor comport with Denton County policies. (Ex. 1, p. 86);

40.     Her first disciplinary issue under Dr. Richardson was verbal counseling on March 27, 2015. (Ex. 1, p. 24, 25, 26, 27, 28, 55, 85, 86; Ex. 6, p. 38, 39, 40, 41);

41.     This arose from reports by the female staff at the Lewisville Public Health Clinic that there had been several "outbursts" and slamming doors by Dr. Storrie.  (Ex. 1, p. 24, 25, 26, 27, 38, 85, 86; Ex. 3, p. 20, 22;  Ex. 6, p. 39, 40, 41, 45, Ex. 9, p. 3, 6);

42.     She was also refusing to close the examination room doors, which was a HIPAA violation. (Ex. 1, p. 27, 39, 85, 86;  Ex. 6, p. 41; Ex. 9, p. 3);

43.     Dr. Richardson told Dr. Storrie, in no uncertain terms, that "everybody expected privacy, including the federal government." (Ex. 1, p. 27, lines 19-20);

44.     Dr. Storrie was "throwing tantrums" in the Lewisville Clinic which resulted in "an overall negative affect."  (Ex. 1, p. 26, 85, 86);

45.     Dr. Richardson actually traveled to the Lewisville Public Health Clinic on March 27, 2015, to personally meet with Dr. Storrie and discuss her disturbing behavior.  (Ex. 1, p. 27-29, 85, 86; Ex. 6, p. 41, 42);

46.     At the end of the verbal counseling, Dr. Richardson advised Dr. Storrie that she had to make improvements or she could be subject to further disciplinary actions. (Ex. 1, p. 28-29, 86);

47.     Dr. Richardson contemporaneously made detailed notes about his March 27, 2015, meeting. (Ex 1, p. 86; Ex. 3, p. 22, 23;  Ex. 6, p. 42);

48.     The next disciplinary issue was June 9, 2015, when Dr. Storrie had a meltdown at the jail. (Ex. 1, p. 29; Ex. 6, p. 46, 121, 129-130);

49.     Dr. Storrie believed one of the female Detention Officers at the security entry unnecessarily prolonged her admittance into the secured area of the jail. (Ex. 1, p. 29, 30, 31, 85; 87, 88; Ex. 3, p. 10, 11, 17, 26; Ex. 4, p. 12, 13;  Ex. 6, p. 46, 121, 129-130; Ex. 8, p. 3, 4, 8);

50.     Dr. Storrie's belief that she was being "treated differently" involving access to the jail apparently arises from this June 9, 2015 incident. (Ex. 6, p. 46, 121, 129-130);

51.     Dr. Richardson learned of the incident when he got a phone call from Jail medical staff that Dr. Storrie had an "emotional outburst" regarding access into the jail and that she "was in the hallway weeping, crying." (Ex. 1, p. 29, lines 13-15);

52.     Because this was now the second reported very public emotional outburst by Dr. Storrie, Human Resources Department was alerted and the HR Director [Amy Phillips] accompanied Dr. Richardson to a face-to-face meeting with Dr. Storrie.  (Ex. 1, p. 29, 30, 31, 34; Ex. 3, p. 10, 14, 17, 26, 27; Ex. 6, p. 29-30, 46, 47, 121);

53.     Dr. Richardson described a "strange" conversation with Dr. Storrie about the alleged lack of access to the jail which had caused Dr. Storrie to:

> "go into this emotional state where she went inside the jail, she leaned against the wall, according to statement, and was sobbing.  And that was disturbing to the detention officers walking by. They called medical, and I think medical officers accompanied her to medical."

(Ex. 1, p. 30, lines 16-21);

54.     When Jail Medical Clinic Supervisor and staff asked Dr. Storrie about  fitness for duty that day, she flippantly replied she "was having a bad hair day." (Ex. 1, p. 30, lines 24-25);

55.     Dr. Storrie's allegations about the female Detention Officer prolonging access into the jail were investigated by Dr. Richardson and also evaluated by Human Resources, but there was nothing to confirm it or suggest that the incident was discriminatory. (Ex. 1, p. 32, 33, 34, 36; Ex. 3, p. 10, 11, 12, 17, 18, 23; Ex. 8, p. 5);

56.     Other Nurse Practitioners and Primary Care Clinicians who worked at the Jail did not report any access problems. (Ex. 1, p. 36; Ex. 8, p. 6);

57.     The Jail Health Supervisor Shannon McKeown also contacted Sheriff's Office Staff to correct any possible access problems. (Ex. 8, p. 6, 8);

58.     Ms. McKeown confirmed there were never any further reported instances. (Ex. 8, p. 6, 8);

59.     Dr. Storrie was given a written REPRIMAND NOTICE for this quite unprofessional incident. (Ex. 1, p. 55, 85; Ex. 3, p. 14, 22;  Ex. 6, p. 54, 56, 121, 129);

60.     On July 1, 2015, Dr. Richardson completed his sole[6] DENTON COUNTY EMPLOYEE APPRAISAL REPORT of Dr. Storrie for the time period of July 1, 2014, through June 20, 2015. (Ex. 1, p. 17, 18, 19, 20, 21, 57, 65, 85;  Ex. 6, p. 53, 125-128, 132-134);

---

[6] Because Dr. Storrie was terminated on April 1, 2016, there would not have been another APPRAISAL REPORT; they are done annually. (Ex. 6, p. 64-70)

61.     Dr. Richardson was critical of many of Dr. Storrie's work attributes. (Ex. 1, p. 17, 65; Ex. 6, p. 125-128, 132-134);

62.     Due to his busy schedule, Dr. Richardson was unable to immediately meet with Dr. Storrie to go over the performance review, although he did so later [see below paragraphs];

63.     On August 3, 2015, Dr. Marty Buchanan started with the County as a full time Primary Care Clinician. (Ex. 5, p. 2, 3, 7, 17);

64.     By happenstance, about a week later, on August 12, 2015 the Denton Record Chronicle Newspaper ran an article entitled "TOP COUNTY SALARIES."  (Ex. 3, p. 13, 40, 41, 66; Ex. 4, p. 5; Ex. 5, p. 30; Ex. 6, p. 34, 49, 124);

65.     The newspaper article listed the Top Ten highest paid elected officials and Top Ten highest paid employees.  (Ex. 1, p. 64; Ex. 3, p. 13, 41, 66; Ex. 4, p. 5;  Ex. 6, p. 49, 124);

66.     Dr. Buchanan was listed as the 3rd highest paid Denton County employee and Dr. Storrie was listed as the 10th highest paid Denton County employee. (Ex. 1, p. 53; Ex. 3, p. 13, 41, 66; Ex. 6, p. 34, 49, 50, 124);

67.     Dr. Storrie read the newspaper article but did not say anything about it when it was first published nor did she immediately contact Dr. Richardson. (Ex. 1, p. 64; Ex. 6, p. 51, 52);

68.     Three weeks later, on August 28, 2015, Dr. Richardson and Dr. Storrie did meet and go over her DENTON COUNTY EMPLOYEE APPRAISAL REPORT.  (Ex. 1, p. 18, 19, 20, 22, 37, 41, 57, 89;  Ex. 6, p. 57, 58, 59, 125-128, 132-134, 135);

69.     It was only after the less than favorable review that Dr. Storrie, for the  first time - - and some 2 weeks after it had been published - - brought up the newspaper article to Dr. Richardson. (Ex. 1, p. 11, 1, 22, 64, 65, 89;  Ex. 6, p. 51, 52, 60, 61, 62, 63, 135);

70.     Dr. Richardson had not seen nor was he aware of the newspaper article before the appraisal review meeting with Dr. Storrie. (Ex. 1, p. 12);

71.     At the end of the appraisal review meeting, Dr. Storrie told Dr. Richardson that "she just wanted more money but was glad she had her job." (Ex 1, p. 89; Ex. 6, p. 135);

72.     In her deposition, Dr. Storrie relays "I never said I want more money." (Ex. 6, p. 64,  line 1);

73.     In both her lawsuit and deposition, Dr. Storrie claims that Dr. Richardson made the comment "*Let's face it, doc, he's just worth more*" when explaining why she was being paid less than Dr. Buchanan. (COMPLAINT, paragraph 15; Ex. 1, p. 14, 15;  Ex. 6, p. 34);

74.     Dr. Richardson has a different recollection of their conversation, recalling his comment was to the effect that differences in Dr. Storrie and Dr. Buchanan's salary "wouldn't surprise me and that I negotiated his salary based on education and experience and  other factors." Ex. 1, p. 14, lines 17-19; see also p. 41, 42; Ex. 6, p. 135);

75.     When asked by the EEOC lawyer about this purported comment, Dr. Richardson answered:

> "I think I communicated that he [Dr. Buchanan] had some
> preferred education, and that the job classification and
> the lack of a grade accommodated that."

Ex. 1, p. 15, lines 7-9; see also Ex. 6, p. 135);

76.     Dr. Richardson was careful to document this appraisal review meeting with Dr. Storrie and he made detailed contemporaneous notes. (Ex. 1, p. 15, 65, 66, 67, 89; Ex. 6, p. 135);

77.     This August 28, 2015, performance evaluation review meeting was the sole time that Dr. Storrie ever mentioned her salary question to Dr. Richardson. (Ex. 1, p. 66, 69;  Ex. 6, p. 63);

78.     Dr. Storrie's continuing failure to request a raise or allege "discrimination", make any further reports to her supervisor, contact Human Resources, and the inapplicability of any "equity adjustment" or job "reclassification" is detailed in DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF, paragraphs IV(162)-(189), and incorporated herein for all purposes;

79.     Because Dr. Storrie was terminated on April 1, 2016, there would not be another DENTON COUNTY EMPLOYEE APPRAISAL REPORT prepared for her by Dr. Richardson - - she had been fired before the next review period.  (Ex. 6, p. 69-70);

80.     Concerning her allegation about a lack of support or assistance from the other [female] medical staff, Dr. Storrie explained that she felt they were "hiding" her supplies and that her office was not being cleaned as thoroughly as it should be. (Ex. 6, p. 80, 81, 82, 83, 84);

81.     Dr. Storrie, in her deposition, gave rambling examples of when she could not locate supplies. (Ex. 6, p. 80-82);

82.     Dr. Richardson recalled Dr. Storrie had mentioned to him she felt like the staff was hiding medical supplies from her, that the cleaning staff [facilities] had purposefully killed some of the flowers Dr. Storrie had planted, and that they refused to clean her office. (Ex. 1, p. 36);

83.     Dr. Richardson investigated these complaints but there was no evidence to support them. (Ex. 1, p. 39-40, 47);

84.     For the next seven months after her performance review in August of 2015, things were mostly quiet and fine with Dr. Storrie. (Ex. 1, p. 85);

85.     But on March 16, 2016, Dr. Storrie was highly disruptive during a staff meeting.  (Ex. 1, p. 43, 44, 45; Ex. 3, p. 67; Ex. 5, p. 13, 14, 34; Ex. 6, p. 79, 80; Ex. 7, p. 4, 6; Ex. 9, p. 4. 5. );

86.     Dr. Richardson described her demeanor as "volatile". (Ex. 1, p. 48, line 2);

87.     During the March 16, 2016, staff meeting, Dr. Storrie made some particularly inappropriate comments about Hispanic patients and the kind of medical testing that should - - or really, in her opinion, shouldn't - - be done for them. (Ex. 1, p. 43, 44, 45; Ex. 3, p. 67; Ex. 5, p. 13, 14, 34; Ex. 6, p. 136; Ex. 7, p. 4, 6; Ex. 9, p. 4);

88.     Dr. Storrie, when sharply criticizing other doctors' protocol and testing done for diabetes, stated "*why would we do that test*" and then "*They will just go eat more tortillas and meat*." (Ex. 1, p. 45, 46; Ex. 3, p. 67; Ex. 5, p. 34, 35;  Ex. 6, p. 40, 136; Ex. 7, p. 4, 6; Ex. 9, p. 4);

89.     This was the "*they will just go out and eat more tortillas and meat*" incident. (Ex. 1, p. 45, 46; Ex. 3, p. 67; Ex. 5, p. 34, 35;  Ex. 6, p. 40, 136; Ex. 7, p. 6);

90.     The consensus of all present was that Dr. Storrie was advocating withholding certain kinds of diabetes testing because Hispanic patients were not compliant with guidance about diet. (Ex. 1, p. 46, 49, 50, 52, 53; Ex. 3, p. 67; Ex. 5, p. 13, 14, 34, 35; Ex. 7, p. 6, 7);

91.     Dr. Storrie's "*tortilla*" comments were particularly egregious because the prevailing demographic of patients who seek treatment at Denton County Public Health Clinics are "low socioeconomic status Hispanics." (Ex. 7, p. 5-7);

92.     When Dr. Storrie made this "*tortilla*" comment, Dr. Richardson relayed that "We called her on that as a group." (Ex. 1, p. 46, line 2);

93.     Dr. Buchanan was asked about Dr. Storrie's "*they just go eat more tortillas and meat*" comments, and he discretely answered as follows:

```
Q.   Do you think that's appropriate for someone who has
     been hired to provide indigent healthcare to the
     lowest, poorest people in our community to make
     disparaging comments about them ?

          *    *    *    *    *

Q.   You can go ahead and answer.

A.   It's not very doctor-like.
```

        (Ex. 5, p. 35, lines 16-24);

94.     There were many eyewitnesses[7] who clearly overheard Dr. Storrie's inappropriate comments. (Ex. 6, p. 77, 78; Ex. 7, p. 4, 7; Ex. 9, p. 4);

95.     Dr. Storrie, to to this day, does not believe it was a discriminatory statement. (Ex. 6, p. 79);

---

        [7] Three of these employees provided sworn testimony at the Civil Service Commission hearing that they heard the statement.   Dr. Storrie labels them all as liars.  (Ex. 6, p. 77, 78, 87)

96.    Dr. Richardson's looming issue became Dr. Storrie's propensity for discrimination, noting: "And her disagreement [withholding the test] seemed to go to the ethnicity of the patient. And we can't do that." (Ex. 1, p. 50, lines 11-12; see also, Ex. 6, p. 136);

97.    Dr. Richardson was very concerned that Dr. Storrie was discriminating against Hispanic patients, explaining: "I mean, she [Dr. Storrie] was wilfully withholding testing that was part of the protocol based on their [patient's] ethnicity." (Ex. 1, p. 52, lines 16-17);

98.    Given Dr. Storrie's stated intent to discriminate, Dr. Richardson did not think "we [Health Department] could take the risk of further discrimination." (Ex. 1, p. 53, lines 7-9);

99.    Just two days later, March 18, 2016, Dr. Storrie had another outburst during a staff meeting. (Ex. 1, p. 50; Ex. 3, p. 67-68; Ex. 6, p. 136-137; Ex. 9, p. 5);

100.   In front of about 30-40 people, Dr. Storrie essentially wanted to argue and fight about a certain program, again dealing with diabetes case management. (Ex. 1, p. 50-51; Ex. 3, p. 67-68; Ex. 6, p. 136; Ex. 9, p. 5);

101.   Dr. Storrie was behaving in a really "confrontational way" and in "an unprofessional manner", to the point that at least four employees reported it to Dr. Richardson. (Ex. 1, p. 51; Ex. 3, p. 67-68; Ex. 6, p. 135-136);

102.   In light of these two recent incidents, medical staff was becoming increasingly concerned about Dr. Storrie's volatility and especially her discriminatory attitude towards patients, particularly Hispanics, who are the majority of the persons treated at the Denton County Health Department clinics. (Ex. 3, p. 67-68; Ex. 7, p. 5-7);

103.   This legitimate concern was worsened when one of the reviewing nurses stumbled across comments Dr. Storrie had written in a Hispanic patient's medical records. (Ex. 1, p. 70; Ex. 3, p. 68, 69; Ex. 6, p. 138; Ex. 9, p. 5);

104.   Specifically, on March 29, 2016, it was discovered that Dr. Storrie had described a patient as a "*roly poly  HF [Hispanic Female]*" in one of Health Department's official patient medical records.  (Ex. 1, p. 70, 80, 90; Ex. 3, p. 44, 58, 68, 69; Ex. 4, p. 11; Ex. 6, p. 72, 73, 74, 108, 109, 138; Ex. 9, p. 5);

105.   The Clinical Supervisor at the Lewisville Public Health Clinic [Kristine Sledge] promptly called Dr. Richardson and then emailed this patient record to him. (Ex. 1, p. 70, 71, 89, 90);

106.   It is self-evident that this type comment is highly inappropriate and should never be written by a doctor when describing an apparently overweight Hispanic female patient [or for that matter, any patient]. (Ex. 1, p. 72, 79, 80, 81, 90;   Ex. 2, p. 34; Ex. 3, p. 45, 58, 59, 68, 69; Ex. 9, p. 5);

107.   Human Resources Director Phillips stated bluntly: "I think it [term "*roly poly*"] would be offensive to most people." (Ex. 3, p. 59, lines 16-16);

108.   There are objective clinical descriptions for describing obesity in medical records[8], and as HR Director Phillips underscored "But terms like roly poly or she's fat or something like that, that's not professional." (Ex. 3, p. 58, lines 23-24; see also p. 59);

109.   This patient note further confirmed Dr. Richardson's real concerns about Dr. Storrie's troubling and increasingly obvious discriminatory attitude towards Hispanics and the risk of racism that her continued employment with Denton County presented.  (Ex. 1, p. 72, 73, 79, 81; Ex. 3, p. 67-68, 69);

110.   Disturbingly, during her very recent deposition, Dr. Storrie staunchly stood by her comments about a "*roly poly Hispanic female*" and refused to accept that they are offensive, inappropriate and just plain wrong. (Ex. 6, p. 10, 11, 12, 74, 109);

111.   Dr. Storrie - - even after being fired for discrimination - -still does not believe her comments and conduct were disrespectful, improper, negative, or egregious. (Ex. 6, p. 11, 74, 109);

112.   Her attitude is unrepentant:

```
Q.   Do you believe that describing someone as a roly
     poly Hispanic female in their official medical
     records complied with these [Denton County's]
     ethical principles ?

A.   I do.
```

(Ex. 6, p. 10, lines 22-25);

113.   Arrogantly, Dr. Storrie's tried to defend her discriminatory comments - -"Ya'll don't get it" because "you're not trained to do a physical exam . . ." (Ex. 6, p. 74, lines 23-24);

114.   When employees begin employment with Denton County, they are required to review the DENTON COUNTY EMPLOYEE HANDBOOK and sign an acknowledgment. (Ex. 6, p. 8, 116);

115.   Dr. Storrie received a copy of the DENTON COUNTY EMPLOYEE HANDBOOK and signed the acknowledgment on October 29, 2008.  Ex. 6, p. 8, 9, 12, 13, 116);

116.   Dr. Storrie also received a copy of the Denton County ETHICAL PRINCIPLES and signed the acknowledgment for it the same date.  (Ex. 6, p. 9, 117);

117.   She pledged that she would abide[9] by these County policies and the ETHICAL PRINCIPLES. (Ex. 6, p. 9, 10, 11, 12, 13, 14, 117);

---

[8] Dr. Storrie knew "morbidly obese" is the medical term for a body-mass index of 40-45 (Ex. 6, p. 74-75).

[9] At her deposition, Dr. Storrie try to quibble about whether she agreed to actually comply with the policies, saying that she just signed the acknowledgments but she did not agree to follow them. (Ex. 6, p. 12-13).

118.    Dr. Storrie was required to "actively promote public confidence in county government" and "maintain a respectful attitude towards employees and other public officials, colleagues and associates." (Ex. 6, p. 10, 117);

119.    Denton County policy prohibiting discrimination is set forth in the HANDBOOK in the section entitled "ANTI-HARASSMENT." (Ex. 1, p. 71; Ex. 6, p. 12, 118);

120.    It quite clearly provides that harassment on the basis of "national origin" is "discrimination and, as such, a violation of federal law.  Harassment of any individual in the workplace is a violation of Denton County Policy which will not be tolerated." (Ex. 6, p. 13-14, 118);

121.    Dr. Storrie's notes were clear violations of Denton County's policy against discrimination. (Ex. 1, p. 71, 79, 90; Ex. 3, p. 46, Ex. 3, p. 68);

122.    Even without her history of prior serious disciplinary issues, Dr. Storrie's discriminatory note in the patient file could have been grounds for immediate termination. (Ex. 1, p. 71-72, 90);

123.    Given the increasingly problematic behaviors demonstrated by Dr. Storrie, particularly those with very inappropriate racial overtones and accompanying risk of racism, on March 29, 2016, Dr. Richardson served Dr. Storrie with a NOTICE OF INTENT TO TERMINATE outlining the various series of policy violations and requested her written response. (Ex. 1, p. 53, 54, 85; Ex. 6, p. 71, 72, 136-137);

124.    The NOTICE OF INTENT TO TERMINATE detailed the many violations of County policy concerning appropriate workplace behavior, ethical principles, and racial discrimination. (Ex. 1, p. 53, 54, 69, 70; Ex. 6, p. 71, 72, 76, 136-137);

125.    Dr. Storrie provided a tepid response on March 31, 2016, but offered no legitimate reasons why she should not be terminated as forewarned. (Ex. 3, p. 68; Ex. 6, p. 88, 89, 95; 139);

126.    Dr. Storrie did not dispute any of the statements that were attributed to her nor dispute any of the detailed allegations that were made against her. (Ex. 6, p. 95-96; 139);

127.    She did not offer any arguments or mitigating circumstances for her comments or actions. (Ex. 6, p. 98, 139);

128.    Even more surprising, when Dr. Storrie was asked in her deposition about her vague apology, she flippantly responded "I just made this stuff up.  I was trying to keep my job." (Ex. 6, p. 93, lines 22-23; see also p, 94, 139);

129.    On April 1, 2016, Dr. Storrie was fired, given a NOTICE OF TERMINATION OF EMPLOYMENT. (Ex 1, p. 85; Ex. 3, p. 67-68; Ex. 4, p. 10; Ex. 6, p. 97, 98, 99, 140-141);

130.    Dr. Richardson specifically wrote "you have been verbally and formally counseled on several occasions regarding your lack of professionalism, courtesy and respect of team members." (Ex 1, p. 85; Ex. 3, p. 67; Ex. 6, p. 97, 140);

131.    He also noted that "Your negativity and lack of teamwork continues to erode morale and efforts for building a positive culture." (Ex. 3, p. 67; Ex. 6, p. 141);

132.    Dr. Richardson continued in the NOTICE to explain why Dr. Storrie could no longer work for Denton County. (Ex. 3, p. 67-68; Ex. 6, p. 14-141);

133.    Most importantly, the NOTICE details the highly inappropriate racially derogatory comments that Dr. Storrie not only made, but also wrote in patient records, concerning Hispanic patients and inmates she evaluated and treated.   For example:

    *    "In the same meeting, you made an inappropriate comment about patient care regarding lab tests and denying them based on assumption of patient compliance. Your comment, witnessed by all, was "why would we do that test? What does it matter when they won't change their behavior? They just go eat more tortillas and meat." When pressed, you continued to assert that the test was not helpful with "this population that won't change, so why bother?" This concerns me regarding your clinical practice and treatment of vulnerable populations, particularly with a discriminatory comment like this." (Ex. 3, p. 67; Ex. 6, p. 140);

    *    "Finally, you referred to a patient, in the electronic medical record on 3-28-16, as a "roly-poly HF (Hispanic female)". This type of derogatory and discriminatory comment is completely inappropriate and unacceptable and, unfortunately, remains in a permanent clinical record. We have a zero tolerance for discrimination and this comment, combined with the comment regarding the patient care, calls your clinical priorities/motivations into question."  (Ex. 3, p. 67; Ex. 6, p. 141;

134.    The disciplinary issues which described her "emotional outbursts" were gender neutral descriptions which accurately described what had actually occurred. (Ex. 6, p. 121, 129);

135.    Dr. Storrie was terminated solely because of clearly articulated legitimate, nondiscriminatory reasons - - her many documented policy violations and completely unacceptable racially insensitive comments. (Ex. 1, p. 53, 54, 69, 70, 79, 85, 90; Ex. 3, p. 67-68; 69; Ex. 6, p. 77, 78, 140-141);

136.    In accordance with the Denton County's Civil Service Rules and State law, Dr. Storrie, represented by experienced and competent counsel [Attorney William Trantham][10] appealed her termination to the Denton County Civil Service Commission. (Ex. 1, p. 73, 91; Ex. 3, p. 46; Ex. 6, p. 99, 100, 102);

137.    On May 16, 2016, the Civil Service Commission, after a lengthy and somewhat contentious hearing and listening to numerous witnesses, affirmed Dr. Storrie's termination.  (Ex. 1, p. 73, 74, 91; Ex. 3, p. 48, 49, 70; Ex. 6, p. 100, 101, 142);

---

[10] Counsel Trantham has been licensed since 1970 and is believed to have appeared before courts in the Eastern District. See, i.e., *Boldware v. Denton County*, Cause No. 4:09-cv-591

138.    Dr. Storrie failed to exhaust her administrative remedies by failing to appeal the Civil Service Commission's decision to State District Court. (Ex. 1, p. 74; Ex. 3, p. 49; Ex. 6, p. 101, 102);

139.    If she had done so and prevailed, a State District Court could have reinstated her back into her position, awarded her back pay, and/or given her any other type of "appropriate relief." (See, TEXAS LOCAL GOVERNMENT CODE Section 158.012);

140.    Dr. Storrie was not treated any differently, discriminated against, nor paid less because of her gender. (Ex. 1, p. 52, 66, 75; Ex. 2, p. 6, 15, 16, 17, 22, 23, 28, 29, 32, 37, 38; Ex. 3, p. 4, 10, 29, 31, 32, 33, 36, 38, 39, 40, 43, 53, 55, 67-68; Ex. 4, p. 8, 16, 19, 20, 21, 22, 23, 27, 28; Ex. 5, p. 10, 18, 20, 33, 34; Ex. 6, p. 140-141); and

141.    Dr. Storrie was certainly not "retaliated" against. (Ex. 6, p. 105-111).


# V.
# ARGUMENT AND AUTHORITIES


## A.    PLAINTIFF CANNOT PREVAIL ON HER TITLE VII DISCRIMINATION CLAIM

Dr. Storrie's belief that she was somehow discriminated against because of her gender is not supported by the undisputed evidence, particularly since many of the alleged examples of discriminatory practices are legally insignificant or, if they even happened, far time-barred. Moreover, she cannot show any pay differential or adverse employment action based on her gender. Dr. Storrie's termination [which she never fully appealed] was based on clearly articulated neutral reasons wholly unrelated to her gender.  She was never retaliated against.


### 1.    Applicable law and burden-shifting *McDonnell Douglas* Framework

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove Title VII discrimination through direct evidence or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572,

578 (5th Cir.2003); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000). Where there is no direct evidence of discrimination, a plaintiff may prove a case of sex discrimination with circumstantial evidence, using the burden shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). *See also, Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir.2001).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of sex discrimination. *Wallace*, 271 F.3d at 219. To establish a prima facie case, a plaintiff must demonstrate that (1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir.2001); see also, *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 593 (5th Cir. 2007).

A claim of unequal pay brought under Title VII is also analyzed using the burden shifting framework common to employment discrimination cases. "To establish a prima facie case of wage discrimination under Title VII, 'a plaintiff must show that [s]he was a member of a protected class and that [s]he was paid less than a non-member for work requiring substantially the same responsibility.'" *Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 831 (5th Cir.2015)(quoting *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). A "plaintiff claiming disparate treatment in pay under Title VII must show that [her] circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id*. (quoting *Taylor*, 554 at 523 (citation omitted)).

If Plaintiff establishes a prima facie case of sex discrimination, the employer then bears the burden of producing a legitimate, non-discriminatory reason for its actions. *Wallace*, 271 F.3d at 219. The employer is not required to convince the Court that it was actually motivated by this reason; it need only raise a genuine issue of fact as to whether or not it discriminated against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Similarly, with respect to a wage discrimination claim "'[O]nce shown, a plaintiff's prima facie case creates an inference of ... discrimination, which the employer is required to rebut with a legitimate non-discriminatory reason" for the pay disparity.'" *Taylor*, 554 at 521 (quoting *Ross v. University of Tex. at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998)). "Disparities allowed by these exceptions [29 U.S.C. § 206(d)(1) of Equal Pay Act] are not illegal under Title VII, and if an employer's actions fit within one of these exceptions, the employer has a good defense to a Title VII suite alleging unequal pay for equal work." *Plemer v. Parsons-Gilbane*, 713 F. 2d 1127, 1136 (5th Cir. 1983).

Once the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumptions of the *McDonnell Douglas* framework dissipate, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination. *Wallace*, 271 F.3d at 219; *Russell*, 235 F.3d at 222. To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination. *Wallace*, 271 F.3d at 220.  A plaintiff can establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.' " *Laxton*, 333 F.3d at 578 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

To survive summary judgment, the Plaintiff's evidence must amount to more than her own subjective belief.  See, e.g., *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 435 (5th Cir. 1995)("bald assertions of discrimination are inadequate to permit a finding that proscribed discrimination motivated [defendant's] actions."); *Grizzle v. Travelers Health Network, Inc.*, 14 F. 3d 261, 268 (5th Cir. 1994). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Pfeil v. Intecom Telecomms.*, 90 F. Supp.2d 742, 746 (N.D. Tex. 2000).  In deciding whether discrimination was a determinative factor in an adverse action, the role of the court is not to "second guess" employment decisions or act a personnel managers. *Deines v. Texas Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999).

> 2.     **Dr. Storrie cannot establish prima facie case since alleged grounds of discriminatory treatment are time barred, legally insignificant, were not based on gender, or were simply not adverse employment actions**

Dr. Storrie cannot meet her threshold initial burden to establish a prima facie case since her subjective beliefs and unsubstantiated assertions about discriminatory treatment are time barred, legally insignificant, were not based on gender, or were simply not an "adverse employment action."

> A.     **"Passed over for Promotion" in 2010**

As her first example of alleged discrimination, Dr. Storrie complains about a job opening in 2010 [for which she never even applied] and then contends she was "passed over" for the position. This allegation is clearly time barred.  Title VII claimants, in Texas, "have 300 days from the date of the alleged discriminatory act to file their claim with the EEOC." *Burrell v. Crown Cent. Petroleum, Inc.,*, 225 F. Supp. 2d 591, 604 (E.D. Tex. 2003)(citing *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998)). If a plaintiff does not file a claim within 300 days, that claim is barred. *Id.* However, "any act occurring more than [300] days prior to filing 'may constitute relevant background evidence in a

proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.'" *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 604 (5th Cir. 1986) (quoting *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977)).

The sole claim articulated by Dr. Storrie in her CHARGE OF DISCRIMINATION is pay disparity. She does not mention at all any "failure to promote." Nor did the EEOC investigate nor make a determination about Denton County's promotional practices. The sole "current practice" at issue is alleged pay differential, so Dr. Storrie's failure to apply for a job in 2010 is exactly the "unfortunate event in history which has no present legal consequences." Her alleged "failure to promote" cannot, as a matter of law, support her claims of gender discrimination under Title VII.

Equally important, even if such allegation were timely or true, which it is not, Dr. Storrie conceded she never made an application for the promotion [an open position for the Health Authority and Medical Director in 2010] about which she now complains. Applying for a job is a fundamental prerequisite under Denton County policies, and her failure to do so rendered Dr. Storrie ineligible to even be considered for any promotion. Thus, this allegation is also legally and factually insignificant because she was not, by her own admission, a qualified candidate for the promotion.

## B.      Paid Differently that Male Counterparts

The numerous legitimate non-discriminatory gender neutral reasons for Dr. Storrie's salary, and pay difference between her and Dr. Buchanan [and also Dr. Beall, Dr. Alvarez, and Dr. Akram], are exhaustively detailed in DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF and are incorporated herein by reference as if fully set forth.[11] As the undisputed facts conclusively establish, Dr. Storrie was not "nearly identical" to any of her peers.

---

[11] See, DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF, paragraph IV(11)-(198)

## C.      Treated less favorably

Dr. Storrie's examples about her subjective belief that she was somehow "treated differently" are unsupportable, or even if they did occur, legally insignificant, were not based on gender, or were simply not adverse employment actions.

### (1)      Dr. Storrie likely saw less, not more, patients than Dr. Buchanan

Dr. Storrie speculates that she was somehow treating more and different kinds of patients than Dr. Buchanan.  Dr. Storrie and Dr. Buchanan were seeing the same number of patients.  In fact, Dr. Buchanan, it appears from the electronic patient records, was seeing more. Regarding Dr. Buchanan not seeing children, again, Dr. Storrie is guessing - - and is just wrong.  Dr. Storrie admitted she had no personal knowledge of this allegation and Dr. Buchanan expressly rebukes it, as do the patient records. Comparing the County's treatment of Dr. Buchanan to that of the Dr. Storrie, it becomes immediately evident that with respect to the number and kind of patients, she was treated exactly as her male counterparts were treated. But even if Dr. Storrie were seeing more patients or examining children more frequently, this is not an adverse employment action.  A core function of a Primary Care Clinician in the Denton County Health Department is to treat low income citizens who cannot afford but need health care. Dr. Storrie's assumption that she was working harder than her male co-employee - - which turns out is not correct - - is just not an adverse employment action. It is exactly the type "unsupported speculation" which will not negate dismissal.

### (2)      Working in the jail can be and is required of all doctors

Regarding her work in the Jail, all Primary Care Clinicians are obligated and required, as needed, to work in the Jail.  It is clearly listed in the JOB DESCRIPTION  a core function of the job.

Being assigned to work the jail cannot be characterized as "adverse employment action".  Dr. Storrie agreed in her deposition that she did not believe her assignment to work in the jail was discriminatory nor based on her gender.  Her work in the jail wholly fails to suggest discrimination.

### (3)      Jail Access

Dr. Storrie's belief that she was not promptly allowed into the secured area of the jail - - on one occasion - - is legally insignificant.  Dr. Storrie does not, because she cannot, point to any evidence that this sole incident [if it even happened] was in any way related to her gender.  Ironically, the person who she claims denied her access was also female.

### (4)      Annual Review

During the time of Dr. Richardson's supervision over Dr. Storrie [July 2014, to April 2016] he only needed to provide one DENTON COUNTY EMPLOYEE APPRAISAL REPORT, which he  did.  There was no need for another DENTON COUNTY EMPLOYEE APPRAISAL REPORT because Dr. Storrie was terminated on April 1, 2016;  she was already gone.  Dr. Storrie's unsupported assertion about Dr. Richardson not giving her annual review is groundless.

### (5)      Lack of support or assistance from the medical staff or satisfactory cleaning of her office

The absurdity of these allegations is reflected in the several examples provided by Dr. Storrie.  She believes that the nursing staff "hid" her supplies and that her office was "dirty" and not cleaned.  However, even if true, these examples are not remotely probative of her being discriminated against based on gender.  Even assuming the worst - - female nurses hiding a female doctor's supplies [which the County vehemently denies] or the janitorial staff not cleaning her office to her satisfaction - -  is just not gender based discrimination.

**(6)     Describing her as "emotional" or "hysterical"**.

Dr. Storrie obviously does not like the fact that disciplinary memos accurately describe her as having emotional outbursts and being hysterical.  But these descriptions are true, corroborated by many witnesses.  The fact that Dr. Storrie is correctly described as "emotional" or "hysterical" is not an adverse employment action nor based on her gender.  It is just a gender neutral fact.

**3.     Legitimate, non-discriminatory reason for Plaintiff's termination**

Even if Dr. Storrie survives step one of the *McDonnell Douglas* burden-shifting framework, however, Denton County had many non-discriminatory reasons for her termination which are detailed in the foregoing STATEMENT OF MATERIAL FACTS.  Her "*roly poly Hispanic Female*" patient note encapsulates the discriminatory demeanor of Dr. Storrie which Denton County will not tolerate. Remember, too, that the conduct which compelled Dr. Storrie's termination stem solely from her inappropriate actions and behaviors.  While Dr. Storrie may still be proud of her own comments, Denton  County certainly is not.

**4.     Dr. Storrie cannot establish that County's legitimate reason for paying her agreed upon salary in 2009 or terminating her seven years later for well-documented policy violations is a pretext for Gender Discrimination**

Assuming *arguendo* that Dr. Storrie even gets to the third *McDonnell Douglas* step, the pretext phase, the "ultimate question" is whether Denton County intentionally discriminated against her because of her gender.  Dr. Storrie cannot carry her burden on this because there is no evidence that the gender neutral explanations offered by Denton County for her salary determinations in 2008 and 2009 [and differential with Dr. Buchanan hired 6 ½ years later] or termination in 2016 were false or "unworthy of credence."

**A.** **Gender neutral reasons for Salary Determinations in 2008-2009, ongoing salary increases, and differential between Dr. Storrie and Dr. Buchanan [and other colleagues] are not pretexts**

The gender neutral reasons for the pay differentials between Dr. Storrie and Dr. Buchanan [and other colleagues] are fully detailed in DENTON COUNTY'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF EEOC'S CLAIMS AND BRIEF and are incorporated herein, but summarized as follows.

Unlike other jobs at Denton County, there is no set "salary range" or "pay grades" for Primary Care Clinicians. The County's policies regarding initial pay and salary increases are simple. Once you start at a certain salary, you only get an annual pay increase in the percentage amount voted upon by the County Commissioners. Dr. Storrie's annual percentage raises were exactly in the same amount as everyone else in the County - - male and female. The admitted difference in salary between Dr. Storrie and Dr. Buchanan [and some others] had nothing to do with gender, but everything to do with the County salary policy and timing. Recall that Dr. Storrie was hired during the midst of one of America's worst recessions and her salary [which she agreed to] was fair based on the many factors which were considered at the time of her hiring. Remember, too, that just six weeks after Dr. Storrie was hired, Dr. Beall was hired for the exact same salary. The fact that nearly 6 ½ years later in a booming economy, when a much more experienced Dr. Buchanan was hired - - and admittedly paid more - - does not mean that Dr. Storrie was being treated differently, i.e. discriminated against, because of her gender.

Dr. Storrie's Title VII discrimination claim, to the extent founded on the belief that she was not paid the same as her male colleagues, cannot survive summary judgment. It must not be forgotten that Dr. Storrie was still one of the "Top Ten" highest paid employees in Denton County, underscoring that Denton County does not have a practice or habit of not paying women the same as men. The [female] County Judge and Human Resources Director would not tolerate such.

### B.        Reasons for Termination are not pretexts

The reasons for Dr. Storrie's termination all stem from her very own actions and comments. Dr. Storrie - - not Denton County - - is the one who, for example, decried that Hispanics " . . . *just go eat more tortillas and meat*" and described a patient as a "*roly poly*" Hispanic female in a Public Health Clinic medical record.  Dr. Storrie's demise was the product of her own unfortunate racial animus which she repeatedly and very publicly expressed orally and in writing.  Attempting to blame the County for her own unacceptable behavior must be recognized for what it is - - an attempt to foist responsibility onto the County for her own discriminatory behavior which mandated termination. Dr. Storrie had the chance to rebut the many grounds for her termination yet she failed to do so. Instead,  her approach was to offer a hollow apology, which she now crows she "just made up."


### B.        Dr. STORRIE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

Under Section 706(c) of Title VII, a plaintiff must exhaust her administrative remedies prior to instituting a judicial action alleging employment discrimination. Section706(c) provides, in pertinent part:

> In the case of an alleged unlawful employment practice occurring in a State . . . which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice . . . no charge may be filed . . . by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated.

42 U.S.C. § 2000e-5(c) (emphasis added).

Here, Dr. Storrie's failure to exhaust her administrative remedies is two-fold.  First, her CHARGE OF DISCRIMINATION is limited to pay disparity.  There are no failure to promote or retaliations claims.  Second, she did not appeal her termination to a State District Court.  Had she done so, and won, she might be still employed at Denton County.

1.    **CHARGE OF DISCRIMINATION and subsequent EEOC investigation and determination were limited to sole issue of pay disparity**.

Before an individual can pursue a Title VII claim in federal court, she must exhaust her available administrative remedies by filing a charge with the EEOC. *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378-79 (5th Cir. 2002). If a plaintiff files a charge with the EEOC, the scope of a subsequent judicial complaint is limited to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Sanchez v. Standard Brands Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be "like or related to" allegations made in the EEOC charge. See *Vuyanich v. Republic Nat'l Bank of Dallas*, 723 F.2d 1195, 1201 (5th Cir.1984); see also *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 118 (5th Cir. 2005).

The CHARGE OF DISCRIMINATION, the subsequent EEOC investigation, and the resulting EEOC Determination solely and exclusively focused on alleged pay disparity.  There is never a mention, investigation or determination of failure to promote or any other alleged discriminatory conduct.  While the County reasonably expected that the EEOC would bring an Equal Pay Act Claim, which it did, there was nothing to foreshadow that Dr. Storrie would delve back into years of other alleged but time-barred incidents to try to conjure up a full-blown Title VII claim.  At best, Dr. Storrie's live discrimination claim under Title VII must be limited to the single issue of alleged pay disparity between her and Dr. Buchanan.

2.    **Failure to appeal termination**.

It is clear that Texas statutes prohibit unlawful discrimination and afford employees rights. It is also undisputed that Denton County employment is governed by the Civil Service statute applicable to Texas Counties, which has an exhaustion of administrative remedies provision.

Specifically, TEXAS LOCAL GOVERNMENT CODE Section 158.012, entitled "Appeals" provides, in pertinent parts, as follows:

"(a)   A county employee who, on a final decision by the commission, is demoted, suspended, or removed from the employee's position may appeal the decision by filing a petition in a district court in the county within 30 days after the date of the decision.

(b)   An appeal under this section is under the substantial evidence rule, and the judgment of the district court is appealable as in other civil cases.

(c)   If the district court renders judgment for the petitioner, the court may order reinstatement of the employee, payment of back pay, or other appropriate relief."

Dr. Storrie had the statutory right to appeal her termination to a State District court in Denton County within thirty days of the Civil Service Commission's decision affirming her determination. If she prevailed, the State District Court could have reinstated her to her position, awarded her back pay, and/or granted "other appropriate relief", which is some of the very same relief she now seeks from this Federal Court.  By failing to fully exhaust her State law administrative remedies - - which afforded some of the exact same relief requested from this Court - - she is now barred from requesting that relief herein.   At minimum, any claims for damages in the nature of reinstatement, back pay, front pay, or "other appropriate relief" should be summarily dismissed.


## C.   DR. STORRIE CANNOT PREVAIL ON ANY "RETALIATION" THEORY

Even if it can be liberally construed that she has adequately plead a viable retaliation claim, Dr. Storrie failed to exhaust her administrative remedies with respect to any such claim. Indisputably, Dr. Storrie only checked the box for "sex" discrimination on her CHARGE OF DISCRIMINATION form, and wholly failed to make any allegations related to "retaliation", which is another clearly available box that could have been checked.  Because the facts alleged in her complaint related to only to a

specific allegation based on gender, an investigation reasonably expected to grow out of that charge would not encompass retaliation, nor did it.  Thus, to the extent Dr. Storrie is seeking to assert retaliation claims, she has failed to exhaust her administrative remedies, and those claims should be dismissed. See, i.e., *Trevino v. Pecan Deluxe Candy Co.*, 2016 U.S. Dist. LEXIS 172022 (N.D. Tex. 2016)(holding that Plaintiff's failure to check box for anything besides "gender" i.e. "sex" precluded any other claims).

Even if she had checked "retaliation" on her CHARGE OF DISCRIMINATION form, which she did not, Dr. Storrie still cannot prove any retaliation by Denton County.  To establish a retaliation claim, the Plaintiff must establish: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Mattern v.Eastman Kodak, 104 F.3d 702, 705 (5th Cir. 1997); Thomas v. Texas Dep't of Criminal Justice,* 220 F.3d 389, 394 (5th Cir. 2000).  The ultimate question in an unlawful retaliation case is whether the defendant discriminated against that plaintiff because she engaged in conduct protected by Title VII. *Long v. Eastfield College, 88 F.3d 300, 304 n.4 (5th Cir. 1996); Thomas, id.*

Again, Dr. Storrie did not exhaust her administrative remedies for any retaliation claim nor does she adequately plead a retaliation claim, yet she danced around such theory in her discovery answers and deposition.  Thus, this specter of a retaliation claim should be addressed and summarily dismissed as well.   The questioning of Dr. Storrie in her deposition about her beliefs of "retaliation" is telling [and dispositive] as she could not point to who, why or when she was retaliated against. Frustrated by the pursuit of facts and not conjecture, Dr. Storrie finally capitulated and admitted that the only example she had was the cleanliness of her office.[12]   Such is not retaliation.

---

[12]See, Ex. 6, p. 114

When Dr. Storrie had the opportunity to fully challenge all the grounds for her termination in the lengthy civil service hearing [wherein she was represented by counsel], neither she nor her counsel ever once uttered the word "retaliation." Her CHARGE OF DISCRIMINATION is equally silent on any alleged retaliation. Dr. Storrie's deposition testimony, likewise, does not evidence retaliation.

Equally compelling is that a causal connection does not exist between any alleged protected activity and the adverse employment action. Dr. Storrie' sole comment to Dr. Richardson about pay [the presumed protected activity] was made on August 28, 2015, yet she was not terminated until April 1, 2016, and even then, for discriminatory statements and comments made by Dr. Storrie. There is not, nor could there be, any causal connection between the lone comment Dr. Storrie made about her pay [but then never brought up again] and her ultimate termination more than a half-year later for well-documented violations of the County policies on anti-discriminatory behavior. Recall, too, that Dr. Storrie had been disciplined for policy violations well before she ever made her comment to Dr. Richardson about the newspaper article. Dr. Storrie's chosen the path to termination was taken well before she ever knew that Dr. Buchanan was [lawfully] making more money than her.

The wholesale absence of any evidence of retaliatory conduct on the part of the County, combined with the complete lack of any causal connection, mandates dismissal on this whispered yet never plead "retaliation" theory.

## D.   DR. STORRIE CANNOT PREVAIL ON HER CLAIMS FOR PUNITIVE DAMAGES

It is well established that punitive damages are not available against a governmental entity under Title VII. 42 U.S.C. § 1981a(b)(1);  See also *Oden v. Oktibbeha, County, Miss*., 246 F.3d 458, 466 (5th Cir.), cert. denied, 534 U.S. 948, 122 S. Ct. 341, 151 L. Ed. 2d 258 (2001).  Thus, as a matter of law, Dr. Storrie's claims for "punitive damages" must be summarily dismissed.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant **DENTON COUNTY** prays that its MOTION FOR SUMMARY JUDGMENT ON INTERVENOR DR. STORRIE'S CLAIMS be granted; that they recover their reasonable attorney's fees and costs of suit; and that they have such other and further relief, at law or in equity, to which they may show themselves entitled.

Respectfully submitted,

By: /s/ Robert J. Davis
      **ROBERT J. DAVIS**
      State Bar No. 05543500
      Bdavis@mssattorneys.com
      **MATTHEWS, SHIELS, KNOTT,**
      **EDEN, DAVIS & BEANLAND, L.L.P.**
      8131 LBJ Freeway, Suite 700
      Dallas, Texas 75251
      972/234-3400 (office)
      972/234-1750 (telecopier)

      **ATTORNEYS FOR DEFENDANT**
      **DENTON COUNTY**

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:  Suzanne Anderson, Robert Canino, Brandi McKay and Shelby Douglas.

/s/ Robert J. Davis
**ROBERT J. DAVIS**